## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA ALLEN, MELISSA ARAI,
MARC BRANNON, KIRK BROWN,
STACEY BUC, NANCY CALLOW,
MARIE CHAPMAN, DAZHIA CHAVEZ,
TERESA DEMERELL, DEBRA DUVALL,
DAVID EDWARDS, DEBORAH FRY,
GINA GANGNIER, MOLLY GORNIEWICZ,                    Case No.
MICHELLE HAMILTON, CHRISTINE HASKIN,
DANA HATFIELD, KATHLEEN HAWLEY,                     Hon.
DIANE HICKOX, THOMAS HOWARD,
BREANNE HUNTER, MICHELE IGRAM,
ROSE IRISH, ROSEMARY JONES,
JARED KOPYDLOWSKI, CHERIE LACKOWSKI,
MARY LEMERISE, HEATHER LIPKOWITZ,
SHELBY MCPHERSON, SHANDA MIDDLETON,
RACHEL MOORE, LYNN MORRISON,
KAREN MUNSON, LUKE MYERS, CHERRIE NEES,
COLLEEN NITSCHKE, KATHLEEN NUGENT,
SCOTT OBERTEIN, RENEE OSTRANDER,
MICHELLE OWEN, JULIE POTERACKI,
CODY REED, MICHELLE ROSSIE,
DEBORAH ROSZATYCKI,
KAITLYN RUSSCHER, PETER SAGMOE,
JENNIFER SEALS, THERESA SHAW,
DAWN SPENCER, ANDREA STROBEL,
MARIA SYJUD, DOROTHY THOMPSON,
EMMY TUTTLE, ROBERT TWOREK,
KIMBERLY TYLENDA, CAMERON VANDER STEL,
SCOTT WALKER, LAURA WALTZ,
LISA WILCZAK, CINDIA WONG,
CHERYL ZABARONI, SARAH ZUZIAK,
on behalf of themselves and others similarly situated,

       Plaintiffs,

v.

ASCENSION MICHIGAN, ASCENSION PROVIDENCE,
ASCENSION BORGESS ALLEGAN HOSPITAL,
ASCENSION BORGESS HOSPITAL, ASCENSION
BORGESS-LEE HOSPITAL, ASCENSION BORGESS-PIPP
HOSPITAL, ASCENSION BRIGHTON CENTER FOR

1

RECOVERY, ASCENSION GENESYS HOSPITAL,
ASCENSION MACOMB-OAKLAND HOSPITAL,
ASCENSION PROVIDENCE HOSPITAL,
ASCENSION PROVIDENCE ROCHESTER HOSPITAL,
ASCENSION RIVER DISTRICT HOSPITAL,
ASCENSION ST. JOHN HOSPITAL,
ASCENSION ST. JOSEPH HOSPITAL,
ASCENSION ST. MARY'S HOSPITAL, and
ASCENSION STANDISH HOSPITAL

     Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

James A. Thomas (P80931)
JIMMY THOMAS LAW
Attorneys for Plaintiffs
1925 Breton Rd SE Ste 250
Grand Rapids, MI 49506
(616) 747-1188
jimmy@jimmythomaslaw.com

---

## **COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs Lisa Allen, Melissa Arai, Marc Brannon, Kirk Brown, Stacey Buc,

Nancy Callow, Marie Chapman, Dazhia Chavez, Teresa DeMerell, Debra Duvall, David Edwards,

Deborah Fry, Gina Gangnier, Molly Gorniewicz, Michelle Hamilton, Christine Haskin, Dana

Hatfield, Kathleen Hawley, Diane Hickox, Thomas Howard, Breanne Hunter, Michele Igram,

Rose Irish, Rosemary Jones, Jared Kopydlowski, Cherie Lackowski, Mary LeMerise, Heather

Lipkowitz, Shelby McPherson, Shanda Middleton, Rachel Moore, Lynn Morrison, Karen Munson,

Luke Myers, Carrie Nees, Colleen Nitschke, Kathleen Nugent, Scott Obertein, Renee Ostrander, Michelle Owen, Julie Poteracki, Cody Reed, Michelle Rossie, Deborah Roszatycki, Kaitlyn Russcher, Peter Sagmoe, Jennifer Seals, Theresa Shaw, Dawn Spencer, Andrea Strobel, Maria Myjud, Dorothy Thompson, Emmy Tuttle, Robert Tworek, Kimberly Tylenda, Cameron Vander Stel, Scott Walker, Laura Waltz, Lisa Wilczak, Cindia Wong, Cheryl Zabaroni, and Sarah Zuziak ("Plaintiffs" or "Class Representatives"), on behalf of themselves and others similarly situated, by and through the undersigned attorneys, and state the following:

## INTRODUCTION

1.      There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Ascension Michigan, et al ("Defendants") deliberately flouted both laws by blanketly denying religious exemptions from its mandatory COVID-19 policy, telling employees that it would "not grant exemptions, except under extreme circumstances."  Consequently, over 500 hundred healthcare workers who bravely served the public during the worst days of the pandemic were placed on an involuntary, indefinite, unpaid leave of absence in November 2021.  In December 2021, Defendants acknowledged the illegality of its actions and recalled the wrongfully disciplined employees back to work due to "legal challenges" and "staffing challenges."  However, Defendants refuse to pay Plaintiffs backpay for the time period they were unlawfully denied wages. Accordingly, this class action lawsuit seeks compensatory damages, punitive damages, and reasonable attorney's fees for all of Defendants' employees who were temporarily denied a religious accommodation from the COVID-19 vaccine and suspended without pay.

## PARTIES, JURISDICTION, AND VENUE

2.      Lisa Allen resides in Waterford, Michigan

3

3.      Ms. Allen received a Right to Sue letter from the EEOC on June 1, 2022.

4.      Melissa Arai resides in Livonia, Michigan.

5.      Ms. Arai received a Right to Sue letter from the EEOC on June 8, 2022.

6.      Marc Brannon resides in Davison, Michigan.

7.      Mr. Brannon received a Right to Sue letter from the EEOC on June 28, 2022.

8.      Kirk Brown resides in Fenton, Michigan.

9.      Mr. Brown received a Right to Sue letter from the EEOC on June 28, 2022.

10.     Stacey Buc resides in Warren, Michigan.

11.     Ms. Buc received a Right to Sue letter from the EEOC on May 9, 2022.

12.     Nancy Callow resides in Livonia, Michigan.

13.     Ms. Callow received a Right to Sue letter from the EEOC on June 2, 2022.

14.     Marie Chapman resides in Shelby Township, Michigan.

15.     Ms. Chapman received a Right to Sue letter from the EEOC on May 25, 2022.

16.     Dahzia Chavez resides in VanBuren Township, Michigan.

17.     Ms. Chavez received a Right to Sue letter from the EEOC on April 26, 2022.

18.     Teresa DeMerell resides in Portage, Michigan.

19.     Ms. DeMerell received a Right to Sue letter from the EEOC on June 22, 2022.

20.     Debra Duvall resides in Dryden, Michigan.

21.     Ms. Duvall received a Right to Sue letter from the EEOC on June 28, 2022.

22.     David Edwards resides in Grand Ledge, Michigan.

23.     Mr. Edwards received a Right to Sue letter from the EEOC on May 25, 2022.

24.     Deborah Fry resides in Gobles, Michigan.

25.     Ms. Fry received a Right to Sue letter from the EEOC on June 6, 2022.

26.     Gina Gangnier resides in Brighton, Michigan.

27.     Ms. Gangnier received a Right to Sue letter from the EEOC on May 4, 2022.

28.     Molly Gorniewicz resides in Grand Rapids, Michigan.

29.     Ms. Gorniewicz received a Right to Sue letter from the EEOC on June 28, 2022.

30.     Michelle Hamilton resides in Grand Blanc, Michigan.

31.     Ms. Hamilton received a Right to Sue letter from the EEOC on April 14, 2022.

32.     Christine Haskin resides in Rochester, Michigan.

33.     Ms. Haskin received a Right to Sue letter from the EEOC on June 9, 2022.

34.     Dana Hatfield resides in Kalamazoo, Michigan.

35.     Ms. Hatfield received a Right to Sue letter from the EEOC on May 4, 2022.

36.     Kathleen Hawley resides in Fenton, Michigan.

37.     Ms. Hawley received a Right to Sue letter from the EEOC on July 5, 2022.

38.     Diane Hickox resides in Farmington, Michigan.

39.     Ms. Hickox received a Right to Sue letter from the EEOC on May 10, 2022.

40.     Thomas Howard resides in Kalamazoo, Michigan.

41.     Mr. Howard received a Right to Sue letter from the EEOC on May 24, 2022.

42.     Breanne Hunter resides in Byron, Michigan.

43.     Ms. Hunter received a Right to Sue letter from the EEOC on June 10, 2022.

44.     Michele Igram resides in Flint, Michigan.

45.     Ms. Igram received a Right to Sue letter from the EEOC on April 28, 2022.

46.     Rose Irish resides in Birch Run, Michigan.

47.     Ms. Irish received a Right to Sue letter from the EEOC on June 8, 2022.

48.     Rosemary Jones resides in Oxford, Michigan.

49.    Ms. Jones received a Right to Sue letter from the EEOC on June 2, 2022.

50.    Jared Kopydlowski resides in Fenton, Michigan.

51.    Mr. Kopydlowski received a Right to Sue letter from the EEOC on June 7, 2022.

52.    Cherie Lackowski resides in Oakland Center Township, Michigan.

53.    Ms. Lackowski received a Right to Sue letter from the EEOC on June 7, 2022.

54.    Mary LeMerise resides in Canton, Michigan.

55.    Ms. LeMerise received a Right to Sue letter from the EEOC on June 23, 2022.

56.    Heather Lipkowitz resides in Davison, Michigan.

57.    Ms. Lipkowitz received a Right to Sue letter from the EEOC on May 16, 2022.

58.    Shelby McPherson resides in Flushing, Michigan.

59.    Ms. McPherson received a Right to Sue letter from the EEOC on May 16, 2022.

60.    Shanda Middleton resides in Marcellus, Michigan.

61.    Ms. Middleton received a Right to Sue letter from the EEOC on May 27, 2022.

62.    Rachel Moore resides in Ortonville, Michigan.

63.    Ms. Moore received a Right to Sue letter from the EEOC on June 2, 2022.

64.    Lynn Morrison resides in Kalamazoo, Michigan.

65.    Ms. Morrison received a Right to Sue letter from the EEOC on June 6, 2022.

66.    Karen Munson resides in Frankenmuth, Michigan.

67.    Ms. Munson received a Right to Sue letter from the EEOC on June 16, 2022.

68.    Luke Myers resides in Kalamazoo, Michigan.

69.    Mr. Myers received a Right to Sue letter from the EEOC on June 6, 2022.

70.    Carrie Nees resides in Holly, Michigan.

71.    Ms. Nees received a Right to Sue letter from the EEOC on June 22, 2022.

6

72.    Colleen Nitschke resides in Fort Gratiot, Michigan.

73.    Ms. Nitschke received a Right to Sue letter from the EEOC on July 5, 2022.

74.    Kathleen Nugent resides in Algonac, Michigan.

75.    Ms. Nugent received a Right to Sue letter from the EEOC on June 28, 2022.

76.    Scott Obertein resides in Pinconning, Michigan.

77.    Mr. Obertein received a Right to Sue letter from the EEOC on May 12, 2022.

78.    Renee Ostrander resides in Armada, Michigan.

79.    Ms. Ostrander received a Right to Sue letter from the EEOC on May 25, 2022.

80.    Michelle Owen resides in Mattawan, Michigan.

81.    Ms. Owen received a Right to Sue letter from the EEOC on June 30, 2022.

82.    Julie Poteracki resides in Saint Clair Shores, Michigan.

83.    Ms. Poteracki received a Right to Sue letter from the EEOC on June 7, 2022.

84.    Cody Reed resides in Vicksburg, Michigan.

85.    Mr. Reed received a Right to Sue letter from the EEOC on April 28, 2022.

86.    Michelle Rossie resides in Grand Blanc, Michigan.

87.    Ms. Rossie received a Right to Sue letter from the EEOC on June 24, 2022.

88.    Deborah Roszatycki resides in Essexville, Michigan.

89.    Ms. Roszatycki received a Right to Sue letter from the EEOC on May 17, 2022.

90.    Kaitlyn Russcher resides in Hamilton, Michigan.

91.    Ms. Russcher received a Right to Sue letter from the EEOC on May 17, 2022.

92.    Peter Sagmoe resides in Holland, Michigan.

93.    Mr. Sagmoe received a Right to Sue letter from the EEOC on April 28, 2022.

94.    Jennifer Seals resides in Paw Paw, Michigan.

95.     Ms. Seals received a Right to Sue letter from the EEOC on June 16, 2022.

96.     Theresa Shaw resides in Flint, Michigan.

97.     Ms. Shaw received a Right to Sue letter from the EEOC on June 1, 2022.

98.     Dawn Spencer resides in Lapeer, Michigan.

99.     Ms. Spencer received a Right to Sue letter from the EEOC on June 6, 2022.

100.    Andrea Strobel resides in Leonard, Michigan.

101.    Ms. Strobel received a Right to Sue letter from the EEOC on June 1, 2022.

102.    Maria Syjud resides in Shelby Township, Michigan.

103.    Ms. Syjud received a Right to Sue letter from the EEOC on June 5, 2022.

104.    Dorothy Thompson resides in Flint, Michigan.

105.    Ms. Thompson received a Right to Sue letter from the EEOC on May 16, 2022.

106.    Emmy Tuttle resides in Rochester Hills, Michigan.

107.    Ms. Tuttle received a Right to Sue letter from the EEOC on June 1, 2022.

108.    Robert Tworek resides in Livonia, Michigan.

109.    Mr. Tworek received a Right to Sue letter from the EEOC on May 27, 2022.

110.    Kimberly Tylenda resides in Goodrich, Michigan.

111.    Ms. Tylenda received a Right to Sue letter from the EEOC on April 22, 2022.

112.    Cameron Vander Stel resides in Grand Rapids, Michigan.

113.    Mr. Vander Stel received a Right to Sue letter from the EEOC on May 10, 2022.

114.    Scott Walker resides in South Haven, Michigan.

115.    Mr. Walker received a Right to Sue letter from the EEOC on May 31, 2022.

116.    Laura Waltz resides in Pinckney, Michigan.

117.    Ms. Waltz received a Right to Sue letter from the EEOC on June 6, 2022.

118.    Lisa Wilczak resides in Holly, Michigan.

119.    Ms. Wilczak received a Right to Sue letter from the EEOC on April 20, 2022.

120.    Cindia Wong resides in Livonia, Michigan.

121.    Ms. Wong received a Right to Sue letter from the EEOC on June 28, 2022.

122.    Cheryl Zabaroni resides in Romeo, Michigan.

123.    Ms. Zabaroni received a Right to Sue letter from the EEOC on April 20, 2022.

124.    Sarah Zuziak resides in Mount Clemens, Michigan.

125.    Ms. Zuziak received a Right to Sue letter from the EEOC on June 23, 2022.

126.    Defendant Ascension Michigan is a domestic nonprofit corporation that operates fifteen (15) hospitals and employs 20,000 people in Michigan and has a resident agent in East Lansing, Michigan.

127.    The Western District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

128.    Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant operates its businesses.

129.    The "single-filing" rule allows plaintiffs to "piggyback" onto the timely and valid charge of a named plaintiff with the U.S. Equal Employment Opportunity Commission (EEOC). *Calloway v. Partners National Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993). Plaintiffs have all received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") within the past 90 days.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

130.    On July 27, 2021, Defendants announced a COVID-19 vaccine mandate for all employees, without regard to level of patient interaction.

131.    Defendant utilized a "portal" for handling religious accommodation requests wherein employees were made to provide information to assist it in determining which employees were sufficiently religious.

132.    Employees applying for accommodation were instructed to write a "description of how use of this vaccination is a violation of your moral conscience," and their descriptions were "not to exceed 4,000 characters."  The portal contained a check box stating: "I understand that should I fail to be vaccinated or granted exemption on or before 5:00 pm on November 12, 2021, I will be suspended . . . Continued failure to comply will be deemed voluntary resignation."

133.    Defendants did not require independent contractors, vendors, temporary staff, patients, visitors, or any other individuals on Defendants' premises to be vaccinated.

134.    The last day for employees to be vaccinated was November 12, 2021:

135.    Defendants' policy stated:

> Ascension will require that all associates be vaccinated against COVID-19, *whether or not they provide direct patient care, and whether they work in our sites of care or remotely* . . . In those instances when someone may not be able to get vaccinated due to a medical condition or *strongly held religious belief*, Ascension will provide its associates a process for requesting an exemption similar to the process we use for the annual influenza vaccine.

136.    Initially after introducing the COVID-19 vaccine mandate, Defendants granted both religious and medical accommodation to the first employees that applied for the same.

137.    However, Defendants then switched course and violated its own policy by implementing a blanket prohibition on COVID-19 vaccine accommodation.

138.    Employees protested the vaccine mandate *en masse*.

139.    The Secretary of Health and Human Services issued an interim final rule on November 5, 2021 that hospitals must "ensure that staff are fully vaccinated for COVID-19." 86 Fed. Reg. 61568 (2021).

140.    Defendant asserts it relied on this November 5, 2021 rule in enforcing the vaccine mandate, even though the rule was issued fifteen (15) weeks after Defendants announced the vaccine mandate.

141.    "The [interim final] rule requires providers to offer medical and religious exemptions." *Biden v. Missouri*, 142 S. Ct. 647, 651 (Jan. 13, 2022). The interim final rule states:

> In implementing the COVID-19 vaccination policies and procedures required by this IFC, however, employers must comply with applicable Federal anti-discrimination laws and civil rights protections . . . In other words, employers following . . . the new requirements . . . *may also be required* to provide appropriate accommodations . . . for employees who request and receive exemption from vaccination because of a *sincerely held religious belief, practice, or observance* . . . Under Federal law, including . . . *Title VII of the Civil Rights Act of 1964* . . . workers who cannot be vaccinated or tested because of . . . *sincerely held religious beliefs, practice, or observance* may in some circumstances be granted an exemption from their employer . . . *Employers must also follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief*.

86 Fed. Reg. 61569, 61572 (2021).

142.    The federal vaccine mandate was never intended to apply to remote employees or contractors: "Facilities that employ or contract for services by staff who *telework full-time* (that is, 100 percent of their time is remote from sites of patient care, and remote from staff who do work

at sites of care) should identify and monitor these individuals . . . but *those individuals need not be subject to the vaccination requirements.*" *Id.* at 61571 (emphasis added).

143.    Defendants' practices *directly contravene* the rule it purportedly relied on.

144.    Defendants actively coerced employees to abandon their religious convictions.

145.    Employees who were denied religious accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or unpaid suspension.

146.    "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices."  *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

**Plaintiffs' Religious Accommodation Requests**

147.    Plaintiffs submitted religious accommodations requests before the deadline.

148.    Their requests for accommodation were denied in emails that were three (3) sentences in length: "*Your request for a religious exemption . . . has been denied.*"

149.    Plaintiffs were given seven (7) days to "add information."

150.    Plaintiffs were told that failure to "add information" before the arbitrary deadline would result in the decision becoming final.

151.    Plaintiffs all worked safely and successfully for Defendants prior to the vaccine mandate.

152.    There are a host of reasonable accommodations that Defendants failed to consider.

153.    Plaintiffs could have tested daily to confirm whether they were not ill.

154.    Plaintiffs could have engaged in frequent sanitizing and disinfecting.

155.    Plaintiffs could have worn gloves and respirators in the workplace.

156.    Plaintiffs could have transferred to more solitary positions.

157.    Defendants made employees work in-person throughout the pandemic. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures, including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

158.    Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

159.    "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

160.    Defendants did not explain to Plaintiffs why accommodation could not be granted.

161.    Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

162.    Defendants' religious animus is evidenced by the fact that, while it refused to accommodate employees who rejected the vaccine on religious grounds, it readily accommodated employees who sought medical exemptions to the COVID-19 vaccine, including pregnant employees.

163.    Defendants' religious animus is further evidenced by the fact that, while it refuses to accommodate employees who reject the vaccine on religious grounds, it did not require independent contractors, vendors, patients or their visitors to be vaccinated, even though they interact with Defendants' staff and providers.

164.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence. "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

165.    Defendants' accommodation process was arbitrary and inconsistent.

166.    Members of the Putative Class were told by management that Defendants would not grant any religious accommodations.

167.    Defendants granted some accommodation requests based on pure favoritism.

168.    Defendants unnecessarily shared the private health information of Plaintiffs with coworkers.

169.    Defendants did not explore available reasonable accommodations from the vaccine.

170.    Plaintiffs were placed on unpaid suspensions on November 12, 2021.

171.    Plaintiffs were gradually recalled to work beginning approximately five (5) weeks later due to "legal challenges" and "staffing challenges."

172.    Plaintiffs were told the following over the telephone: "The reason that we are contacting you is to let you know the vaccine suspension that you were placed on has been recalled and they are asking you to return to work."

14

173.    Inexplicably, many employees who were denied religious accommodations were not recalled to work. Defendants instead used the religious accommodation denials as a method to reduce headcount in some departments.

174.    Many employees who had been suspended were told that their positions had been filled during their absence and were told they could only apply for new jobs.

175.    Defendants refused to provide unlawfully suspended employees with back pay.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

176.    The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

177.    The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir.1978).

178.    An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

179.    Defendant cannot satisfy its burden of proving undue hardship.

180.    Defendant, without citing any scientific evidence, alleges that unvaccinated employees pose a substantial "risk of infection or death to hospital patients, staff, and visitors."

181.    Defendant's allegations are based in religious animus rather than science.

182.    Defendant cannot allege undue hardship when some of its employees, including pregnant employees, were granted *medical* accommodations to the vaccine mandate.

183.    Defendant cannot allege undue hardship when it began recalling unvaccinated employees approximately five (5) weeks after initially suspending them, meaning that any undue hardship must have seemingly disappeared for no apparent reason in the meantime.

184.    Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

185.    Plaintiffs were more than willing to comply with all safety protocols.

186.    Defendant's allegations of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, BRIT. MED. J (2021).

187.    Plaintiffs had been engaging in these alternative practices, which had been deemed effective throughout the pandemic for approximately eighteen (18) months before the mandate.

## CLASS ACTION ALLEGATIONS

188.    Plaintiffs asserts claims on behalf of the "Putative Class," defined as follows:

> **Class:**  All employees of Defendants who were denied a religious exemption from the COVID-19 vaccine and either suspended without pay or forced to resign.

189.    **Numerosity**.  The Putative Class is so numerous that joinder of all Class members is impracticable.  Upon information and belief, in excess of five hundred of Defendants' employees satisfy the definition of the Putative Classes.

190.    **Typicality**.  Plaintiffs' claims are typical of the members of the Putative Class.  For all members of the Putative Class, Defendants did not conduct an individualized assessment of the religious accommodation requests submitted.  Instead, Defendants imposed a policy blankety

16

denying all religious accommodation requests and then suspended members of the Putative Class without pay.  The legal violations suffered by the Plaintiffs are typical to those suffered by other Putative Class members, and Defendants treated Plaintiffs consistent with other Putative Class members in accordance with its standard policies and practices.

191.    **Adequacy.**  Plaintiffs are adequate representatives of the Putative Class.  Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class.  Plaintiffs have retained counsel competent and experienced in complex class action litigation.

192.    **Commonality**.  Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

    a.    Whether Defendants imposed a blanket policy denying religious accommodations to the COVID-19 vaccine to all employees;

    b.    Whether Defendants violated Title VII and ELCRA by failing to consider whether members of the Putative Class had sincerely held religious beliefs;

    c.    Whether Defendants violated Title VII and ELCRA by failing to consider whether there were reasonable accommodations for members of the Putative Class that would not pose an undue burden on Defendants.

    d.    Whether Defendants suspended members of the Putative Class.

    e.    Whether Defendants reversed the religious accommodation denials and recalled members of the Putative Class back to work;

    f.    The proper measure of statutory and punitive damages; and

    g.    The proper form of declaratory relief.

193.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.  Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

194.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds that apply generally to the Putative Classes, so that relief is appropriate respecting the Class as a whole.

195.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods of the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of Title VII and ELCRA.  Members of the Putative Class do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any members of the Putative Class on an individual basis.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

196.    Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendants' records.

### COUNT I
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
### ON BEHALF OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED

197.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

198.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1).  Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

199.    Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement."  *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

200.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

201.    Plaintiffs informed their employer of same.

202.    Plaintiffs were disciplined for failing to comply with the vaccine mandate.

203.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence, which is not an accommodation at all.  Defendants have thereby violated the law.

204.    Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

205.    Defendants never explained why they could not be accommodated.

206.    Defendants never explained why no accommodations could have worked.

19

207.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

208.    Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

209.    Plaintiffs have been required to employ the services of an attorney as a result.

210.    Defendants' actions were intentional and/or reckless.

211.    Involuntary, indefinite unpaid leave is not a religious accommodation.

### COUNT II
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION–RETALIATION
### <u>ON BEHALF OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED</u>

212.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

213.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

214.    Plaintiffs engaged in protected activity when they requested accommodations.

215.    Defendants retaliated against them by suspending them on November 12, 2021.

216.    Defendants' threat of unpaid suspension was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

217.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and she will so suffer in the future.

218.    Plaintiffs have been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and she will so suffer in the future.

219.    Plaintiffs have been required to employ the services of an attorney as a result.

220.    Defendants' actions were intentional and/or reckless.

**COUNT III**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")**
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE**
**ON BEHALF OF ALL PLAINTIFFS**

221.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

222.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

223.    Plaintiffs informed their employer of same.

224.    Plaintiffs were disciplined for failing to comply with the vaccine mandate.

225.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence, which is not an accommodation at all.  Defendants therefore violated the law.

226.    Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

227.    Defendants never explained why they could not accommodate Plaintiffs.

228.    Defendants never explained why no accommodations could have worked.

229.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

230.    Plaintiffs have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

231.    Plaintiffs have been required to employ the services of an attorney as a result.

232.    Defendants' actions were intentional and/or reckless.

233.    Involuntary unpaid leave is not a religious accommodation.

<div align="center">

**COUNT IV**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**ON BEHALF OF ALL PLAINTIFFS**

</div>

234.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

235.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

236.    Plaintiffs engaged in protected activity when they requested accommodations.

237.    Defendants retaliated against them by suspending them on November 12, 2021.

238.    Defendants' threat of unpaid suspension was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

239.    Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and she will so suffer in the future.

240.    Plaintiffs have been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and she will so suffer in the future.

241.    Plaintiffs have been required to employ the services of an attorney as a result.

242.    Defendants' actions were intentional and/or reckless.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

a.      Compensatory damages for monetary and non-monetary loss;

b.      Exemplary and punitive damages;

c.      Prejudgment interest;

d.      Reasonable attorney's fees; and

e.      Such other relief as in law or equity may pertain.

<div style="margin-left:50%;">

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ Noah S. Hurwitz
Noah Hurwitz (P74063)
Attorney for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

</div>

Dated: July 12, 2022

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA ALLEN, MELISSA ARAI,
MARC BRANNON, KIRK BROWN,
STACEY BUC, NANCY CALLOW,
MARIE CHAPMAN, DAZHIA CHAVEZ,
TERESA DEMERELL, DEBRA DUVALL,
DAVID EDWARDS, DEBORAH FRY,
GINA GANGNIER, MOLLY GORNIEWICZ,                    Case No.
MICHELLE HAMILTON, CHRISTINE HASKIN,
DANA HATFIELD, KATHLEEN HAWLEY,                     Hon.
DIANE HICKOX, THOMAS HOWARD,
BREANNE HUNTER, MICHELE IGRAM,
ROSE IRISH, ROSEMARY JONES,
JARED KOPYDLOWSKI, CHERIE LACKOWSKI,
MARY LEMERISE, HEATHER LIPKOWITZ,
SHELBY MCPHERSON, SHANDA MIDDLETON,
RACHEL MOORE, LYNN MORRISON,
KAREN MUNSON, LUKE MYERS, CHERRIE NEES,
COLLEEN NITSCHKE, KATHLEEN NUGENT,
SCOTT OBERTEIN, RENEE OSTRANDER,
MICHELLE OWEN, JULIE POTERACKI,
CODY REED, MICHELLE ROSSIE,
DEBORAH ROSZATYCKI,
KAITLYN RUSSCHER, PETER SAGMOE,
JENNIFER SEALS, THERESA SHAW,
DAWN SPENCER, ANDREA STROBEL,
MARIA SYJUD, DOROTHY THOMPSON,
EMMY TUTTLE, ROBERT TWOREK,
KIMBERLY TYLENDA, CAMERON VANDER STEL,
SCOTT WALKER, LAURA WALTZ,
LISA WILCZAK, CINDIA WONG,
CHERYL ZABARONI, SARAH ZUZIAK,
on behalf of themselves and others similarly situated,

        Plaintiffs,

v.

ASCENSION MICHIGAN, ASCENSION PROVIDENCE,
ASCENSION BORGESS ALLEGAN HOSPITAL,
ASCENSION BORGESS HOSPITAL, ASCENSION
BORGESS-LEE HOSPITAL, ASCENSION BORGESS-PIPP
HOSPITAL, ASCENSION BRIGHTON CENTER FOR

24

RECOVERY, ASCENSION GENESYS HOSPITAL,
ASCENSION MACOMB-OAKLAND HOSPITAL,
ASCENSION PROVIDENCE HOSPITAL,
ASCENSION PROVIDENCE ROCHESTER HOSPITAL,
ASCENSION RIVER DISTRICT HOSPITAL,
ASCENSION ST. JOHN HOSPITAL,
ASCENSION ST. JOSEPH HOSPITAL,
ASCENSION ST. MARY'S HOSPITAL, and
ASCENSION STANDISH HOSPITAL

　　　Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

James A. Thomas (P80931)
JIMMY THOMAS LAW
Attorneys for Plaintiffs
1925 Breton Rd SE Ste 250
Grand Rapids, MI 49506
(616) 747-1188
jimmy@jimmythomaslaw.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs Lisa Allen, Melissa Arai, Marc Brannon, Kirk Brown, Stacey Buc, Nancy Callow, Marie Chapman, Dazhia Chavez, Teresa DeMerell, Debra Duvall, David Edwards, Deborah Fry, Gina Gangnier, Molly Gorniewicz, Michelle Hamilton, Christine Haskin, Dana Hatfield, Kathleen Hawley, Diane Hickox, Thomas Howard, Breanne Hunter, Michele Igram, Rose Irish, Rosemary Jones, Jared Kopydlowski, Cherie Lackowski, Mary LeMerise, Heather Lipkowitz, Shelby McPherson, Shanda Middleton, Rachel Moore, Lynn Morrison, Karen Munson,

Luke Myers, Carrie Nees, Colleen Nitschke, Kathleen Nugent, Scott Obertein, Renee Ostrander, Michelle Owen, Julie Poteracki, Cody Reed, Michelle Rossie, Deborah Roszatycki, Kaitlyn Russcher, Peter Sagmoe, Jennifer Seals, Theresa Shaw, Dawn Spencer, Andrea Strobel, Maria Myjud, Dorothy Thompson, Emmy Tuttle, Robert Tworek, Kimberly Tylenda, Cameron Vander Stel, Scott Walker, Laura Waltz, Lisa Wilczak, Cindia Wong, Cheryl Zabaroni, and Sarah Zuziak ("Plaintiffs" or "Class Representatives"), by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

<div style="margin-left: 50%">

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ Noah S. Hurwitz
Noah Hurwitz (P74063)
Attorney for Plaintiffs

</div>

Dated: July 12, 2022