# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KAREN ALBRIGHT, et al,
on behalf of themselves and others
similarly situated,

           Case No. 1-22-cv-00638-JMB-SJB

        Plaintiffs,

           Hon: Jane M. Beckering

v.

ASCENSION MICHIGAN, et al,

        Defendants.

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>Grant M. Vlahopoulos (P85633)<br>Kara F. Krause (P85487)<br>Brendan J. Childress (P85638)<br>HURWITZ LAW PLLC<br>*Attorneys for Plaintiffs*<br>340 Beakes St., Ste. 125<br>Ann Arbor, MI  48104<br>(844) 487-9489<br>Noah@hurwitzlaw.com<br>Grant@hurwitzlaw.com<br>Kara@hurwitzlaw.com | Maurice G. Jenkins (P33083)<br>Allan S. Rubin (P44420)<br>Elyse K. Culberson (P82132)<br>JACKSON LEWIS P.C.<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48075<br>(248) 936-1900<br>Maurice.jenkins@jacksonlewis.com<br>Allan.rubn@jacksonlewis.com<br>Elyse.culberson@jacksonlewis.com<br>Attorneys for Defendants |
| James A. Thomas (P80931)<br>JIMMY THOMAS LAW<br>Attorneys for Plaintiffs<br>1925 Breton Rd. SE, Ste. 250<br>Grand Rapids, MI 49506<br>(616) 747-1188<br>jimmy@jimmythomaslaw.com | Patricia Pryor<br>Jackson Lewis P.C.<br>201 E. Fifth Street, 26th Floor<br>Cincinnati, OH 45202<br>(513) 898-0050<br>Patricia.pryor@jacksonlewis.com |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs, by and through their attorneys, Hurwitz Law PLLC and Jimmy Thomas Law, hereby request that this Court deny Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 12(c).  In support

of their Response to Defendants' Motion to Dismiss, Plaintiffs rely on the facts and law within their Brief in Support.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104

Dated: December 15, 2022

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN ALBRIGHT, et al,
on behalf of themselves and others
similarly situated,                                   Case No. 1-22-cv-00638-JMB-SJB

       Plaintiffs,                             Hon: Jane M. Beckering

v.

ASCENSION MICHIGAN, et al,

       Defendants.

---

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| Brendan J. Childress (P85638) | JACKSON LEWIS P.C. |
| HURWITZ LAW PLLC | 2000 Town Center, Ste. 1650 |
| *Attorneys for Plaintiffs* | Southfield, MI 48075 |
| 614 Detroit St. STE 125 | (248) 936-1900 |
| Ann Arbor, MI  48104 | Maurice.jenkins@jacksonlewis.com |
| (844) 487-9489 | Allan.rubn@jacksonlewis.com |
| Noah@hurwitzlaw.com | Elyse.culberson@jacksonlewis.com |
| Grant@hurwitzlaw.com | Attorneys for Defendants |
| Kara@hurwitzlaw.com | |
| | Patricia Pryor |
| James A. Thomas (P80931) | Jackson Lewis P.C. |
| JIMMY THOMAS LAW | 201 E. Fifth Street, 26th Floor |
| Attorneys for Plaintiffs | Cincinnati, OH 45202 |
| 1925 Breton Rd. SE, Ste. 250 | (513) 898-0050 |
| Grand Rapids, MI 49506 | Patricia.pryor@jacksonlewis.com |
| (616) 747-1188 | |
| jimmy@jimmythomaslaw.com | |

---

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iii

STATEMENT OF ISSUES ............................................................................................ v

INTRODUCTION........................................................................................................... 1

STATEMENT OF FACTS............................................................................................. 2

    DEFENDANTS' COVID-19 VACCINE MANDATE ...................................... 3

    PLAINTIFFS' RELIGIOUS ACCOMMODATION REQUESTS............................. 6

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT .................................................................................................................. 8

    I.    PLAINTIFFS' SAC SUFFICIENTLY PLEADS A CLAIM UNDER TITLE VII FOR FAILURE TO ACCOMMODATE.......................................... 8

        A.    The SAC Pleads Sufficient Facts About Plaintiffs' Religiosity............. 9

        B.    Defendants Have No Undue Hardship Defense, Let Alone at The Pleading Stage. .................................................................................... 11

    II.    THE SAC PLEADS A *PRIMA FACIE* TITLE VII RETALIATION CLAIM. ..................................................................................................... 16

        A.    Plaintiffs' Accommodation Requests Precipitated their Suspensions.16

    III.    THE SAC SUFFICIENTLY PLEADS A CLAIM OF *RELIGIOUS DISCRIMINATION*......................................................................... 21

        A.    ELCRA Provides for a Failure to Accommodate Claim ..................... 21

        B.    Count III Adequately Pleads Religious Discrimination ...................... 22

    IV.    THE SAC SUFFICIENTLY PLEADS AN ELCRA RETALIATION CLAIM............................................................................................... 23

        A.    Requesting A Religious Accommodation Is Protected Activity Under ELCRA................................................................................................ 23

CONCLUSION ............................................................................................................ 26

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)...................................................................... **11**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ **8**

*Biden v. Missouri*, 142 S. Ct. 647 (Jan. 13, 2022) ............................................. **5, 15, 19**

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ...................................................... **8**

*Does 1-2 v. Huchel*, No. 21-CV-5067AMDTAM, 2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022)
............................................................................................................................... **12, 13**

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.* 575 U.S. 768 (2015)............................ **9, 12**

*EEOC v. Robert Bosch Corp.*, 169 Fed. Appx. 942 (6th Cir. 2006)............................... **12**

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ........................................ **8**

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007)........................... **8**

*Lucia v Ford Motor Co.*, No. 12-15135, 2014 WL 902697 (E.D Mich. Mar. 7, 2014)............. **24**

*MacDonald v. United Parcel Serv.*, 430 F.App'x 453 (6th Cir. 2011) ........................... **24**

*Matthews v. Lavida Massage Franchise Dev., Inc.*, No. 13-12587, 2014 WL 2572873 (E.D.
Mich. June 9, 2014)................................................................................................... **22**

*Michigan Dep't of C.R. ex rel. Parks v. Gen. Motors Corp., Fisher Body Div.*, 93 Mich. App.
366 (1979). ........................................................................................................ **21, 22**

*Michigan Dep't of Civil Rights ex. rel. Parks v General Motors Corp., Fisher Body Div.*, 412
Mich. 610 (1982) ....................................................................................................... **22**

*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497 (6th Cir. 2014)................... **17**

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir. 2022)................................... **16**

*O'Connor v. Lampo Grp., LLC*, No. 3:20-CV-00628, 2021 WL 4480482 (M.D. Tenn. Sept. 29,
2021)...................................................................................................................... **9, 10**

*Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233 (6th Cir. 1991) .................. **8**

*Reynolds v. Fed. Exp. Corp.*, 544 F. App'x 611 (6th Cir. 2013). ................................. **19**

*Shabazz v. Safe Horizons*, No. 10-12066, 2011 WL 4072157 (E.D. Mich. Sept. 13, 2011) ..... **9**

*Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987)............................................. **9**

*Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603 (6th Cir. 2003) ............................. **22**

*Tepper v. Potter*, 505 F.3d 508 (6th Cir. 2007)............................................................. **12**

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) ............... **17, 18**

*Ureche v. Home Depot U.S.A., Inc.*, No. 2:06CV11017, 2006 WL 3825070 (E.D. Mich. Dec.
26, 2006)............................................................................................................ **21, 22**

*Virts v. Consolidated Freightways Corp.*, 285 F.3d 508 (6th Cir. 2002)..................... **12**

*White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789 (6th Cir. 2004)................... **23**

*Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634 (6th Cir. 2015)............. **18**

*Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362 (6th Cir. 2015)....................... **9**

**Statutes**

**42 U.S.C. § 2000e-2(a)(1)** ................................................................. **8**

**86 Fed. Reg. 32376 (2021)** ................................................................. **15**

**86 Fed. Reg. 61568 (2021)** ................................................................. **5**

**86 Fed. Reg. 61569 (2021)** .......................................................... **6, 16**

**86 Fed. Reg. 61572 (2021)** .......................................................... **6, 16**

**86 Fed. Reg. 61658 (2021)** ................................................................. **15**

**MICH. COMP. LAWS § 37.2202(1)(a)** ............................................. **8**

**Mich. Comp. Laws § 37.2302(a)** ...................................................... **24**

**MICH. COMP. LAWS. § 37.2022(a)** ................................................. **22**

## STATEMENT OF ISSUES

I.      Whether Plaintiffs' Count I (Title VII Religious Discrimination – Failure to Accommodate) should be dismissed where Plaintiffs clearly state a *prima facie* case of Title VII Failure to Accommodate Plaintiff's religious accommodation requests by stating that Plaintiffs (1) held sincere religious beliefs; (2) informed Defendants of the conflict between their sincerely held religious beliefs and Defendants' COVID-19 vaccine mandate; and (3) were subjected to unpaid suspension by not surrendering their sincerely held religious beliefs.

Plaintiffs Answer "No"
Defendants Answer: "Yes"
This Court should Answer "No"

II.     Whether Plaintiffs' Count II (Title VII Religious Discrimination – Retaliation) should be dismissed where Plaintiffs clearly state a *prima facie* case of Title VII Retaliation by alleging that (1) Plaintiffs engaged in protected activity by requested religious accommodations to be exempt from Defendants' COVID-19 vaccine requirement; (2) Defendants were aware of the protected activity; (3) Defendants denied Plaintiffs' religious accommodation requests and suspended them; and (4) a causal connection exists between Plaintiffs' protected activity and the involuntary, unpaid suspensions.

Plaintiffs Answer "No"
Defendants Answer: "Yes"
This Court should Answer "No"

III.    Whether Plaintiffs' Count III (ELCRA Religious Discrimination – Failure to Accommodate) should be dismissed where Plaintiffs state a religious discrimination claim by alleging that (1) Plaintiffs are members of a protected class; (2) Defendants subjected them to involuntary, unpaid suspensions; (3) Plaintiffs were qualified for their positions; and (4) Plaintiffs were treated differently than their similarly-situated coworkers, including coworkers who requested medical accommodations to be exempt from the vaccine requirement and were readily accommodated.

Plaintiffs Answer "No"
Defendants Answer: "Yes"
This Court should Answer "No"

IV.     Whether Plaintiffs' Count IV (ELCRA Religious Discrimination – Retaliation) should be dismissed where Plaintiffs' allege a claim for ELCRA retaliation by stating that (1) they engaged in protected activity; (2) Defendants were aware of Plaintiffs' protected activity; (3) Defendants took "materially adverse" action against Plaintiffs by suspending them; and (4) a causal connection existed between the protected activities and the suspensions.

Plaintiffs Answer "No"
Defendants Answer: "Yes"
This Court should Answer "No"

## <u>INTRODUCTION</u>

Defendants' nebulous arguments to dismiss Plaintiffs' exceptionally detailed Second Amended Complaint ("SAC") should not complicate the simple premise of this case—that Defendants blanketly denied religious accommodations to hundreds of brave healthcare employees without any assessment as to whether the religious beliefs were sincerely-held or could be reasonably accommodated, then placed the employees on an involuntary, unpaid suspension for two months, before finally rescinding the suspensions and placing the employees back to work as if nothing ever happened.  Defendants' arguments are thus red herrings designed to throw this Court off the scent.  The bottom line is that Plaintiffs' SAC states four plausible claims under Title VII (failure to accommodate and retaliation) and Michigan's Elliott Larsen Civil Rights Act (discrimination and retaliation).  It is germane to this proceeding that while Defendants argue here that they should not have to pay Plaintiffs for the months in which they were unlawfully suspended from work, Defendants have apparently finalized an agreement with several union bargaining units to do the very same thing being resisted in this litigation—remitting back pay to union employees (many of whom are in the putative class) who were unlawfully suspended a year ago.

Defendants' arguments therefore reek of posturing, which conforms with Defendants simultaneously moving this Court for a stay of discovery [ECF No. 42] until the motion is adjudicated.  A stay of the proceedings is not necessary because Title VII and ELCRA prohibit Defendants' unlawful mishandling of Plaintiffs' religious accommodation requests.  Defendants cannot retroactively immunize themselves from liability now by asserting belated defenses, such as "undue hardship," when Defendants obviated that defense months ago by allowing Plaintiffs to work the majority of 2021 without being vaccinated, arbitrarily suspending them, and then bringing them back to work under the same exact conditions.  Undue hardship in this case is an

illusory defense that Defendants abandoned when they invited Plaintiffs back to work within two months of the unlawful suspensions.

Lastly, Defendants' arguments that ELCRA does not protect against the type of religious discrimination at issue in this case is, at best, semantical. Defendants argue that ELCRA does not expressly require an employer to accommodate an employee's religious beliefs. No matter in this case, however, because Plaintiffs' SAC pleads facts plausibly showing that Defendants not only failed to accommodate Plaintiffs but discriminated against them on the basis of religion when Defendants granted medical accommodations exempting employees from the vaccine requirement, while blanketly denying the same consideration to employees espousing religious beliefs. Call it what you will, the blatant discrimination is statutorily protected.

Ultimately, Plaintiffs' claims are viable across the board and discovery is necessary to determine whether a class is ripe for certification. There is absolutely no reason at this stage to prevent these 110 class representatives from seeking justice or to narrow the claims asserted. For reasons below, Plaintiffs respectfully request that this Court deny Defendants' motion and allow this matter to proceed with discovery.

## **STATEMENT OF FACTS**

Plaintiffs are doctors, nurses, nurse practitioners, physician assistants, and other healthcare workers who courageously battled the heightened surge of the COVID-19 pandemic on the front lines of Defendants' hospitals and medical centers. (Plaintiffs' Second Amended Complaint "SAC" ¶ 1.) Rather than acknowledging Plaintiffs' heroic efforts, Defendants chose instead to segregate them for their religious beliefs and deny them protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliot Larsen Civil Rights Act ("ELCRA"). Defendants did so by issuing baseless, uniform denials of Plaintiffs' religious accommodation

requests to be exempt from the COVID-19 vaccine, even though Plaintiffs possessed sincerely held religious beliefs and worked safely prior to the development of any COVID-19 vaccines. (SAC ¶¶ 1, 241, 244, 246, 253, 256, 258, 262, 265, 283, 286, 288, 291, 300, 301, 302, 322, 323.)

Defendants' blanket denial of religious accommodation requests resulted in over 500 healthcare workers being placed on an involuntarily, unpaid suspension beginning in November 2021.  (SAC ¶¶ 1, 228, 241, 266, 286, 298, 307, 311, 329, 333.)  After roughly five weeks, Defendants seemed to grasp the illegality of their actions and began recalling Plaintiffs due to "staffing challenges" and "legal challenges."  (SAC ¶¶ 1, 267, 268, 279, 288.) Despite recalling Plaintiffs, Defendants refused to compensate Plaintiffs backpay for the time period they were wrongfully suspended.  (SAC ¶¶ 1, 228, 271.)

### Defendants' COVID-19 Vaccine Mandate

During the worst of the COVID-19 pandemic, Defendants required Plaintiffs to work in-person at Defendants' treatment centers and expose themselves to COVID-19 on a daily basis. (SAC ¶ 253.)  Even in the face of such great risk, Plaintiffs worked successfully for Defendants prior to their implementation of the COVID-19 vaccine mandate.  (SAC ¶ 247.)  Before the development of any COVID-19 vaccine, Defendants deemed precautions such as daily testing, handwashing, disinfecting, wearing gloves, utilizing respirators, and social distancing as sufficient to protect employees, patients, and visitors from COVID-19.  (SAC ¶¶ 247, 253.)

On July 27, 2021, after approximately 18 (eighteen) months of successfully battling COVID-19 on the front lines, Defendants announced a COVID-19 vaccine mandate.  (SAC ¶ 226.) The mandate applied to permanent, full-time employees without regard to their level of patient interaction.  (SAC ¶ 226.)  Defendants' COVID-19 vaccine mandate required employees to receive the COVID-19 vaccine by November 12, 2021.  (SAC ¶ 230.)  Defendants asserted that the vaccine mandate would protect "the safety of [Defendants'] patients and visitors."  (SAC ¶ 228.)  However,

Defendants' COVID-19 vaccine mandate did not require independent contractors, patients, or visitors to be vaccinated against COVID-19 in order to enter Defendants' premises—meaning the majority of people in Defendants' hospital were not confirmed to be vaccinated.  (**Ex. 1**, Ascension Vaccine Mandate); (SAC ¶ 228.)  Several employees, including Plaintiffs, protested Defendants' COVID-19 vaccine mandate *en masse*.  (SAC ¶ 234.)  Defendants' COVID-19 vaccine mandate stated:

> Ascension will require that all associates be vaccinated against COVID-19, *whether . . . they provide direct patient care, and whether they work in our sites of care or remotely . . .* In those instances when someone may not be able to [vaccinate] due to a . . . *strongly held religious belief*, Ascension will provide . . . a process for requesting an exemption.  (Ex. 1.); (SAC ¶ 231.)

Defendants then utilized a "portal" to collect employees' religious accommodation requests wherein Defendants directed applicants for religious accommodation to explain how their sincerely held religious beliefs precluded compliance with the vaccine mandate so that Defendants could subjectively determine which employees were sufficiently religious.   (SAC ¶ 227.) Defendants required employees seeking religious accommodation to write "a description of how use of [the COVID-19 vaccination] is a violation of your moral conscience."  (SAC ¶ 230.) Defendants limited applicants' descriptions of how their sincerely held religious beliefs precluded compliance with the vaccine mandate to 4,000 characters.  (SAC ¶ 228.)   Defendants' portal contained a check box, stating "I understand that should I fail to be vaccinated or granted exemption on or before 5:00 pm on November 12, 2021, I will be suspended . . . Continued failure to comply will be deemed voluntary resignation."  (SAC ¶ 228.)

After implementing the COVID-19 vaccine mandate, Defendants initially granted both religious and medical accommodation to the first employees who applied.  (SAC ¶ 232.)  Shortly thereafter, Defendants switched course and violated the law by issuing blanket denials of **<u>every</u>**

**single** request for religious accommodation, without any sort of explanation.  (SAC ¶¶ 232-33, 256.)  Defendants also informed employees that they would "not grant exceptions [to the COVID-19 vaccine mandate], except under extreme circumstances."  (SAC ¶¶ 1, 263.)  Defendants then actively coerced Plaintiffs to abandon their sincerely held religious beliefs by forcing Plaintiffs to choose between their sincerely held religious beliefs and their career.  (SAC ¶¶ 240-41.)  Defendants' religious animus is highlighted by the fact that Defendants refused to accommodate requests for religious accommodation, but still accommodated **medical accommodations** to the COVID-19 vaccine mandate.  (SAC ¶ 258.)

Defendants claim they acted in accordance with the Secretary of Health and Human Services' interim final rule when they implemented the vaccine mandate, even though Defendants announced the mandate approximately *fifteen (15) weeks before* the interim final rule was released.  (SAC ¶ 236.)  The interim final rule was issued on November 5, 2021 and stated that hospitals must "ensure that staff are fully vaccinated for COVID-19."  86 Fed. Reg. 61568 (2021).  But the interim final rule additionally "requires providers to offer medical and religious exemptions."  *Biden v. Missouri*, 142 S. Ct. 647, 651 (Jan. 13, 2022).  The interim final rule provided exhaustive guidelines to ensure employers would not discriminate against sincerely religious employees:

> In implementing the COVID-19 vaccination policies and procedures required by this IFC, however, employers must comply with applicable Federal anti-discrimination laws and civil rights protections . . . In other words, employers following . . . the new requirements . . . *may also be required* to provide appropriate accommodations . . . for employees who request and receive exemption from vaccination because of a *sincerely held religious belief, practice, or observance* . . . Under Federal law, including . . . *Title VII of the Civil Rights Act of 1964* . . . workers who cannot be vaccinated or tested because of . . . *sincerely held religious beliefs, practice, or observance* may in some circumstances be granted an exemption from their employer . . . *Employers must also follow*

5

*Federal laws protecting employees from retaliation for requesting
an exemption on account of religious belief.*

86 Fed. Reg. 61569 (2021); 86 Fed. Reg. 61572 (2021).  Moreover, the federal vaccine mandate

was never intended to apply to remote employees or contractors.  *Id.* at 61571 ("Facilities that

employ or contract for services by staff who *telework full-time* . . . should identify and monitor

those individuals . . . **but those individuals need not be subject to the vaccination**

**requirements**.")  Even if Defendants somehow relied on the not-yet-implemented interim final

rule in implanting their COVID-19 vaccine mandate, Defendants' practices directly contravened

the interim final rule because Defendants blanketly denied requests for religious accommodation.

Defendants also required remote employees to vaccinate even though the interim final rule

exempted remote employees.  (SAC ¶ 239.)

### Plaintiffs' Religious Accommodation Requests

Plaintiffs hold sincere religious beliefs that preclude compliance with Defendants'

COVID-19 vaccine mandate.  (SAC ¶ 296.)  Plaintiffs submitted their requests for religious

accommodation prior to Defendants' arbitrary deadline.  (SAC ¶ 243.)  Shortly thereafter,

Defendants issued blanket denials of those requests for religious accommodation.  (SAC ¶ 244.)

The denials issued by Defendants via email were only three sentences in length.  (SAC ¶ 244.)

The emails stated "[y]our request for religious exemption . . . has been denied."  (**Ex. 2**, Sample

Accommodation Request Denial.)  Defendants' denials gave Plaintiffs seven (7) days to "add

information" or else Defendants' baseless denials would be finalized.  (SAC ¶¶ 245-46.)

Defendants failed to consider a host of reasonable accommodations when they blanketly

denied Plaintiffs' requests for religious accommodation.  (SAC ¶ 248.)  Plaintiffs did not request

a license to roam Defendants' premises without sanitizing or wearing personal protective

equipment ("PPE") as if no health threat existed.  (SAC ¶ 280.)  Plaintiffs offered to comply with

the same protective measures Defendants deemed sufficient for the previous eighteen (18) months of the COVID-19 pandemic prior to the development of any vaccine.  (SAC ¶ 283.)  Plaintiffs expressed their willingness to test daily, frequently sanitize and disinfect, wear gloves and respirators, and even transfer to solitary positions to Defendants.  (SAC ¶¶ 248-253.)

Any undue hardship defense by Defendants is now unsustainable because five weeks after Defendants suspended Plaintiffs without pay, Defendants began to recall Plaintiffs due to "legal challenges" and "staffing challenges," even though Plaintiffs remained unvaccinated during their suspensions.  (SAC ¶¶ 266-67.)  Defendants recalled Plaintiffs over the phone, informing them "[t]he reason . . . we are contacting you is to let you know the vaccine suspension that you were placed on has been recalled and [Defendants] are asking you to return to work."  (SAC ¶ 268.)  However, even upon their recalls, Defendants refused to pay Plaintiffs backpay for the period they were wrongfully suspended.  (SAC ¶¶ 268, 271.)

Worse yet, Defendants informed several Plaintiffs whose requests for accommodation were denied that Defendants filled their positions during their suspensions.  (SAC ¶ 270.)  Other Plaintiffs were informed their roles were filled during their suspensions, but they were allowed to apply for other positions.  Inexplicably, Defendants did not recall several employees whose requests were denied.  (SAC ¶ 269.)  Defendants therefore systematically used the suspension process as a means to reduce headcount.  (SAC ¶ 269.)

## STANDARD OF REVIEW

A complaint need only contain "a short and plain statement of the claims showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And the complaint survives under Rule 12(b)(6) if it "state[s] a claim to relief that is plausible on its face" and alleges facts that, if accepted as true, sufficiently "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555, 570 (2007).  "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  This Court must "construe the complaint in the light most favorable to [Plaintiffs], accept all allegations as true, and draw all reasonable inferences in factor of [Plaintiffs]."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

A Rule 12(c) motion for judgment on the pleadings is reviewed "using the same standard as applies to a review of a motion to dismiss under Rule 12(b)(6)."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  A Rule 12(c) motion is only granted when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

## ARGUMENT

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  Similarly, ELCRA makes it unlawful for an employer to "fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to . . . religion." MICH. COMP. LAWS § 37.2202(1)(a).  Defendants' motion must be denied because Plaintiffs' SAC plausibly illustrates how Defendants violated Title VII and ELCRA by blanketly denying religious accommodation requests and placing Plaintiffs on an involuntary, unpaid suspension without justification.

## I.  PLAINTIFFS' SAC SUFFICIENTLY PLEADS A CLAIM UNDER TITLE VII FOR FAILURE TO ACCOMMODATE.

Defendants' motion does not dispute that Plaintiffs were denied religious accommodation and placed on involuntary, unpaid suspensions.  ECF No. 38.  Rather, Defendants baselessly argue

that (1) the SAC fails to state a valid Title VII religious accommodation claim because Plaintiffs did not specifically identify their respective religious beliefs; and (2) accommodating Plaintiffs' sincerely held religious beliefs would have been an undue hardship on Defendants because the costs of doing so would rise above a "*de minims*" level.  ECF No. 38, PageID.297-98, 290.  Both are legal misfires.  The SAC sufficiently pleads the *prima facie* case and, frankly, "undue hardship" is an illusory defense that Defendants abandoned when they invited Plaintiffs back to work within two months of their suspensions without any change in the circumstances.

### A.    The SAC Pleads Sufficient Facts About Plaintiffs' Religiosity.

"The analysis of any religious accommodation case begins with the question of whether the employee has established a *prima facie* case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987).  "Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices.  Rather, it gives them favored treatment, affirmatively obliging employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's' 'religious observance and practice.'" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.* 575 U.S. 768, 775 (2015).  To demonstrate a *prima facie* Title VII failure to accommodate claim, the SAC needs to plead that Plaintiffs (1) hold sincere religious beliefs that conflict with an employment requirement; (2) informed their employer of the conflict; and (3) were disciplined for failing to comply with the requirement.  *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).  Plaintiffs "plausibly allege" that they hold sincere religious beliefs.  *O'Connor v. Lampo Grp., LLC*, No. 3:20-CV-00628, 2021 WL 4480482, at *6 (M.D. Tenn. Sept. 29, 2021).  Defendants rely on *O'Connor* for the proposition that the SAC pleads only "blanket conclusory statements."  ECF No. 38, PageID.288.  But *O'Connor* is factually distinguishable because Ms. O'Connor's failure to accommodate claim plead only a "conflict

between her religious beliefs and Defendant's religious beliefs," not a religious belief that conflicted with an *employment requirement*.  *O'Connor*, 2021 WL 4480482 at \*6-7.

The *O'Connor* defendant provided "biblically based, common-sense education and empowerment."  *Id.* at \*2.  Ms. O'Connor was twelve weeks pregnant and sought FMLA leave.  *Id.*  Ms. O'Connor was terminated for emailing the employer, "being unmarried and expecting is frowned [upon] here."  *Id.*  Lampo Group's "Company Conduct" provision stated:

> The image of [the company] is held out to be Christian.  Should a team member engage in behavior not consistent with traditional Judeo-Christian values . . . it would damage the image and the value of our . . . brand.  If this should occur, the team member would be subject to review, probation, or termination.  *Id.* at \*2.

Further, "the core values incorporated into [Lampo Group's] mission statement included a 'righteous living' policy" that allegedly "prohibited premarital sex."  *Id.*  Ms. O'Connor alleged that her policy violation was that "she and the father are in a committed long-term relationship, but not legally married" and stated her religious belief was that she "does not believe . . . premarital sex is a requirement or fundamental tenet of her faith as a Christian."  The *O'Connor* court held that "it [was] not enough (or even relevant) that [Ms. O'Connor alleged] a religious belief that conflicts with the religious beliefs *underlying* the employer's requirement.  *Id.*  Rather, to establish a *prima facie* claim under an accommodation theory, Ms. O'Connor needed to demonstrate "that the requirement prevent[ed] her from doing something that, according to her beliefs, she [had] to . . . do."  *Id.* at \*7.  Ultimately, *O'Connor* held that "a conflict between [Ms. O'Connor's] religious beliefs and [the employer's] religious beliefs is insufficient."  *Id.* at \*6.

*O'Connor* is obviously distinguishable from this case, where Defendants do not claim to have religious beliefs.  Here, the SAC instead describes the conflict between Plaintiffs' sincerely held religious beliefs and Defendants' *requirement* that Plaintiffs abandon them in order to receive

the COVID-19 vaccine.  Put simply, the SAC states, "Plaintiffs hold sincere religious beliefs that conflict with Defendants' vaccine mandate."  SAC ¶ 296.  Because it is plainly stated that Plaintiffs all informed Defendants that their religious beliefs precluded compliance with Defendants' policy (SAC ¶ 243), the claim is sufficiently pled.  While Defendants argue that "Plaintiffs have not identified a single religious belief that any of them sincerely held that conflicted with the vaccine requirement" (ECF No. 38, PageID.288), there is no legal requirement that the SAC describe with heightened specificity the 110 representative Plaintiffs' religious beliefs, which Defendants already have in their possession (*see* SAC ¶ 243), but blanketly denied without explanation before turning around two months later and suddenly granting all religious accommodation requests— again without explanation.  The SAC need only demonstrate "enough factual information to create an expectation that discovery will uncover evidence supporting the claim."  *Ashcroft*, 129 S. Ct. at 1950.  Defendants required Plaintiffs to provide "a description of how use of the [COVID-19] vaccine [violates Plaintiffs'] conscience."  SAC ¶ 228.  Each Plaintiff did so.  SAC ¶¶ 227, 243, 284, 286, 288, 297, 310, 318, 319, 332.  Plaintiffs' specific religious accommodation requests reside within Defendants' control and will be requested during discovery.

**B.**      **Defendants Have No Undue Hardship Defense, Let Alone At The Pleading Stage.**

"Short of an undue hardship . . . an employer is required to make reasonable accommodations for the religious practices of its employees."  *Crider v. Univ of Tenn., Knoxville*, 492 F. App'x 609, 612 (6th Cir. 2012) (citing 42 U.S.C. § 2000e(j)).  "An employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine."  *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir. 1975).  An employer's undue hardship defense rests on strong ground only "when he has attempted various methods of accommodation and can point to hardships that

actually resulted." *Id.* "Religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." *Abercrombie*, 575 U.S. at 775. Ultimately "[o]nce an employee has established a *prima facie* case, the employer has the burden 'to show that it could not reasonably accommodate the employee without undue hardship." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007).

Here, at the pleading stage, it is a mystery why Defendants would argue that the SAC should be dismissed because Plaintiffs' requests for accommodation would have posed an undue hardship, *i.e.*, a health and safety risk Defendants' health care settings.  ECF No. 38, PageID.288. "The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law." *EEOC v. Robert Bosch Corp.*, 169 Fed. Appx. 942, 944 (6th Cir. 2006).  Plaintiffs sufficiently pled that there was no undue hardship and there are already enough undisputed facts to suggest that undue hardship cannot be a valid defense in this matter where a reasonable accommodation was granted to all Plaintiffs less than two months after the adverse employment action (*i.e.*, suspension) occurred.  The burden will most certainly be on Defendants to explain what changed in the span of a few weeks that could have caused Defendants to suffer an undue hardship, and then suddenly not suffer one.  But the issue is certainly not ripe for dismissal.

Defendants reach deep into the Westlaw database for the *Huchel* case.  *Does 1-2 v. Huchel*, No. 21-CV-5067AMDTAM, 2022 WL 4637843, at *16 (E.D.N.Y. Sept. 30, 2022).  The *Huchel* court dismissed a complaint challenging a New York State Department of Health regulation requiring healthcare personnel to be vaccinated ***not because accommodating religious beliefs would pose an undue hardship***, but because "the sole 'accommodation' plaintiffs [sought]—a religious exemption from the vaccine requirement—would pose an undue hardship

[on the healthcare providers] because it would require [healthcare providers] to violate state law." *Id.* at \*15.  While the *Huchel* court's dicta opined that "exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship," the situation here is completely different.   For starters, granting Plaintiffs' religious accommodation requests originally would not have violated any laws or regulations.  More importantly, Defendants indisputably exposed patients to unvaccinated workers at all times during the pandemic except for the weeks that Plaintiffs were inexplicably suspended without pay.   SAC ¶¶ 1, 267, 268, 279, 288.  Not to mention that Defendants (a) readily accommodated its employees who requested medical accommodations to the vaccine mandate (SAC ¶ 258); and (b) never required its independent contractors, patients, or visitors to be vaccinated (SAC ¶ 228).

More recently than *Huchel*, a New York Supreme Court struck down an Order of the Commissioner of the Department of Public Health and Mental Hygiene requiring "all City employees to show proof of at least one dose of vaccination against Covid-19 by 5:00 PM on October 29, 2021."  *Garvey v. City of New York*, No. 85163/2022, 2022 WL 16559102 at \*1 (N.Y. Sup. Ct. Oct. 24, 2022).  The *Garvey* plaintiffs were former Department of Sanitation workers terminated in February 2022 because they would not comply with the vaccine mandate.  *Id.*  They applied for exemptions, but received "generalized vague denials."  *Id.* at \*3.  The *Garvey* Court ordered plaintiffs back to work and came to the following nonpartisan, practical conclusion:

> Being vaccinated does not prevent an individual from contracting or transmitting Covid-19 . . . [t]he petitioners should not have been terminated for choosing not to protect themselves.  We have learned through the course of the pandemic that the vaccine against Covid-19 is not absolute.  Breakthrough cases occur, even for those who have been vaccinated and boosted.  President Joseph Biden has said that the pandemic is over.

\*\*\*

13

> [T]his is not a commentary on the efficacy of vaccination, but about how we are treating our first responders, the ones who worked day-to-day through the height of the pandemic . . . [t]hey worked without protective gear . . . [t]hey continued working full duty while their exemption requests were pending.
>
> ***
>
> The vaccination mandate for City employees was not just about safety and public health; it was about compliance.  If it was about safety and public health, unvaccinated workers would have been placed on leave the moment the order was issued.  If it was about safety and public health, the Health Commissioner would have issued city-wide mandates for vaccination for all residents . . . [i]f it was about safety and public health, no one would be exempt.  It is time for the City of New York to do **what is right and what is just**.

*Id.* at *7-8.

In a factually analogous case prior to the pandemic, *Mohamed v. 1st Class Staffing, LLC*, 286 F.Supp.3d 884, 888 (S.D. Ohio Dec. 14, 2017), fourteen practicing Muslims were prevented from using "an area of the production floor for daily prayers during break times."  *Id.* at 887.  The *Mohamed* court found there was no undue hardship because "offer[ing] reasonable alternative sites for prayer," which was "the solution defendants adopted a couple of months after plaintiffs were terminated—clearing a space in the breakroom and hanging curtains to provide seclusion—proves how easily defendants could have accommodated plaintiffs."  *Id.* at 910.  Likewise, looking at the totality of the circumstances demonstrates no undue hardship in the present case.  Like in *Mohamed*, this Court can look at the zero-hardship feasibility with which Defendants recalled Plaintiffs back to work after their suspensions as dispositive on the undue hardship legal analysis. SAC ¶ 1, 267, 268, 279, 288.  In fact, Defendants made no changes to daily operations when it finally granted Plaintiffs' religious accommodation requests and maintained the same safety precautions already in place prior to the suspensions.  SAC ¶¶ 282-83.  In retrospect, there is no debate that accommodating Plaintiffs' exemption requests required zero hardship.

14

"[U]ndue hardship is something greater than hardship, and an employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper*, 527 F.2d at 520. And the SAC is replete with examples of why Defendants had no hardship, including that (a) Defendants allowed unvaccinated employees for eighteen months prior to the vaccine mandate (SAC ¶ 283); (b) Defendants believe daily testing, utilizing respirators, handwashing, disinfecting, and social distancing are sufficient to keep its patients and employees safe (SAC ¶¶ 247, 253); and (c) Defendants seamlessly accommodated employees with medical accommodation requests (SAC ¶ 258).

Finally, Defendants other proffered reasons for undue hardship rely on facts outside of the SAC and are not ripe for adjudication. That said, those arguments are also unavailing. First, Defendants argue that they were simply complying with OSHA's Emergency Temporary Standard ("ETS"), 86 Fed. Reg. 32376 (2021). But OSHA issued its Emergency Temporary Standard in June 2021 (ECF No. 38, PageID.290) and Defendants allowed unvaccinated Plaintiffs to work on premises until their temporary suspension on November 12, 2021. SAC ¶ 230. Defendants also claim the interim final rule issued by the Secretary of Health and Human Services on November 5, 2021 required suspension. ECF No. 38, PageID.290. ***That is false***. The interim final rule states that hospitals "must ensure that staff are fully vaccinated for COVID-19" (86 Fed. Reg. 61658), but the Supreme Court ruled that "[t]he interim final rule requires providers to offer . . . religious exemptions." *Biden*, 142 S. Ct. at 651. Moreover, the interim final rule theoretically penalizes Defendants' behavior, stating "a facility's failure to comply [with the requirement of to offer religious exemptions] may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs." *Id.* at 651; 86.Fed. Reg. 61574.

> In implementing the COVID-19 vaccination policies and procedures required by this IFC, however, employers ***must comply with***

15

> *applicable Federal anti-discrimination laws and civil rights protections* . . . In other words, employers following . . . the new requirements . . . *may also be required to provide appropriate accommodations* . . . for employees who request and receive exemption from vaccination because of a **sincerely held religious belief, practice, or observance** . . . Under Federal law, including . . . *Title VII of the Civil Rights Act of 1964* . . . workers who cannot be vaccinated or tested because of . . . *sincerely held religious beliefs, practice, or observance* may in some circumstances be granted an exemption from their employer . . . *Employers must also follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief.*

86 Fed. Reg. 61569; 86 Fed. Reg. 61572.  Meaning, Defendants actually deviated from the interim final rule when it blankety denied Plaintiffs' religious accommodation requests.  SAC ¶ 239. Paradoxically, Defendants assert that they relied on the November 15, 2021 interim final rule even though the interim final rule was not issued until 15 weeks after Defendants announced their vaccine mandate.  Defendants' motion therefore must fail.

## II.   THE SAC PLEADS A *PRIMA FACIE* TITLE VII RETALIATION CLAIM.

To establish a *prima facie* case of Title VII retaliation, Plaintiffs must show they (1) engaged in protected activity; (2) the employer knew of the protected activity, (3) an adverse employment action was subsequently taken, and (4) there was a causal connection between the protected activity and the adverse employment action."  *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2022).  Defendants do not dispute that Plaintiffs engaged in protected activity, that they were aware of it, or that they suspended Plaintiffs.  The only issue is causation.

### A.   Plaintiffs' Accommodation Requests Precipitated their Suspensions.

Defendants argue there is no "but for" causation and cites inapposite case law.  ECF No. 38, PageID.292.  Of course, this argument is not ripe yet because Plaintiffs adequately plead causation and are entitled to discovery.  That said, the Sixth Circuit Court has consistently held

that temporal proximity between an employee's protected activity and the adverse employment action is sufficient to demonstrate causation. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) ("On the law, we have held that temporal proximity alone can be enough.") *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation."). And "cases that state temporal proximity alone is not enough to establish causation also note that combining temporal proximity with other evidence of retaliatory conduct is enough to establish causal connection." *Montell*, 757 F.3d at 506. Here, Plaintiffs allege temporal proximity and there is really no dispute that the suspensions were retaliatory—given the fact that Defendants seemingly figured out they were behaving unlawfully and reversed course in less than two months. Defendants announced the vaccine mandate on July 27, 2021. SAC ¶ 226. Plaintiffs submitted timely accommodation by November 12, 2021. SAC ¶ 243. Plaintiffs were placed on unpaid suspensions beginning on or about November 12, 2021. SAC ¶ 266. It seems cut and dry.

Nevertheless, Defendants argue that "[c]ausation requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer," citing *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). ECF No. 38, PageID.293. Although *Nassar* held that "Title VII retaliation claims must be proved according to the traditional principles of but-for causation," not "the lessened causation test" in order to prevent "frivolous claims," *Nassar* is easily distinguishable. *Id.* at 2532. *Nassar* states:

> In addition, lessening the causation standard could also contribute to the filing of frivolous claims, which would siphon resources from efforts by employer, administrative agencies, and courts to combat workplace harassment. Consider in this regard the case of an

17

> employee who knows that he or she is about to be fired for poor performance, given a lower pay grade, or even just transferred to assignment or location.  To forestall that lawful action, he or she might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation.

*Id.* at 2531-32.  There is no evidence in the present action that Plaintiffs' claims are frivolous, *e.g.*, Plaintiffs did not engage in protected activity to save themselves from discipline.  Plaintiffs engaged in protected activity as a lawful means to exercise their religious freedom.  Indeed, courts have declined to extend *Nassar* to cases in which there was no evidence individuals engaged in protected activity solely to prevent "impending termination." *Yazdian v. ConMed Endoscopic Technologies, Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) ("The trouble with [Defendant's] assertion is that [Plaintiff] has produced enough evidence from which a reasonable jury could conclude that he made multiple complaints . . . well before he knew his job was in jeopardy.")  The *Yazdian* court further opined that whether an employee engages in protected activity to save their job is a jury question and should not be decided by motion.  *Id.*

Further, Plaintiffs have satisfied the heightened *Nassar* test.  There is no question that the suspensions in this case would not have occurred "in the absence of the alleged wrongful action or actions of the [Defendants]" because had Defendants lawfully administered a fair religious accommodation process, Plaintiff would have been granted religious accommodation.  We know this because the Plaintiffs were in fact granted religious accommodations less than two months after Defendants' originally suspended them.  The chronology includes the fact that Plaintiffs complained about Defendants' COVID-19 vaccine mandate *en masse* after it was introduced.  SAC ¶ 234.  Plaintiffs then submitted religious accommodation requests with no idea that they might be uniformly denied because Defendants' own policy promised to ***"provide its associates a process for requesting an exemption"*** and Defendants had already granted medical accommodation

requests.  SAC ¶ 231, 232, 258, 278.  Moreover, the interim final rule upon which Defendants purportedly relied on required them to offer religious exemptions to employees.  *Biden*, 142 S. Ct. at 647.

Defendants next cite *Reynolds v. Fed. Exp. Corp.*, 544 F. App'x 611, 613 (6th Cir. 2013) for the proposition that there is "no causal connection where termination was contemplated before protected activity, even though not completed until after protected activity."  ECF No. 38, PAGEID.293.  But once again, *Reynolds* is factually distinguishable.  In *Reynolds*, plaintiff's only complaint about racial discrimination occurred well after the employer had already contemplated terminating his employment ***and*** the employer contemplated terminating the employee for disciplinary reasons ***completely unrelated*** to the protected activity, *i.e.*, harassment complaints. *Reynolds*, 544 F. App'x at 615.  Unlike in *Reynolds*, Defendants suspended Plaintiffs strictly because they engaged in protected activity by requesting religious accommodation.  SAC ¶¶ 1, 240, 241, 258, 266, 286, 288, 312.  There is nothing in the record to suggest that Plaintiffs were suspended for something unrelated to the protected activity, as was the case in *Reynolds*.

Defendants then cite *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) to suggest temporal proximity is not enough to establish causation, relying on the reasoning that employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatsoever of causality."  Of course, Plaintiffs do not merely rely on temporal proximity. But once again, Defendants' reliance on a single quotation in *Breeden* misses the mark because *Breeden* is not at all similar to the facts here.  The Supreme Court rejected the *Breeden* plaintiff's retaliation claim because the defendant was not aware that plaintiff had engaged in protected activity prior to carrying out the adverse action.  That obviously differs from the facts here, where

Defendants indisputably knew that Plaintiffs engaged in protected activity before they suspended them—hence causation seems like an inescapable conclusion.  SAC ¶¶ 1, 227, 228, 243, 266.

This case is nothing like *Reynolds* and *Breeden*, but Defendants' general argument is that they are immunized from liability on a retaliation claim because Defendants contemplated suspending Plaintiffs even before they submitted their religious accommodation requests.  That, however, is a goofy theoretical argument, that would require this Court to hold that it is okay to carry out unlawful employment decisions provided that the employer preemptively decided it was going to violate the law for any employee that engages in a protected activity.  It is an absurd theory that basically requires this Court to legalize any unlawful retaliation that is premeditated by an employer.  For example, an employer could circumvent sexual harassment retaliation by proactively creating a policy that states any employee complaining of sexual harassment will be terminated.  Ridiculous!  But that is what Defendants are essentially admitting to here.  Defendants' argument is that there can be no retaliation because Defendants decided prior to any religious accommodation requests being submitted that it would invariably be suspending any employee who dared to submit a religious accommodation request.  That being the case, summary judgment in favor of Plaintiffs' Title VII retaliation claim is appropriate right now where Defendants voluntarily reversed its adverse actions and recalled Plaintiffs back to work.  SAC ¶¶ 1, 267, 268, 269, 279, 288.  *Breeden* proves this point where the Supreme Court held that "[an employer] proceeding along lines previously contemplated, though not definitively determined, is no evidence whatsoever of causality . . . ***but where an employer deviates from those lines, temporal proximity can certainly be evidence of causality***."  *Breeden*, 532 U.S. at 272.  Defendants ***did not*** proceed along the lines they apparently contemplated when they announced

their COVID-19 vaccine mandate—meaning that any way you look at this issue, Plaintiffs have adequately pled causation and the retaliation claim has to survive.

## III.    THE SAC SUFFICIENTLY PLEADS A CLAIM OF *RELIGIOUS DISCRIMINATION*.

Defendants' Motion to Dismiss argues that "Plaintiffs' claim that Defendants violated the Elliot-Larsen Civil Rights Act ("ELCRA") by failing to accommodate Plaintiffs' requests for religious accommodation similarly fails as a matter of law" because "ELCRA does not require employers to accommodate an employee's religious beliefs."  ECF No. 38, PageID.293.  But (a) Defendants' assertion is not supported by binding authority; and (b) even if ELCRA does not support a failure to accommodate claim, Plaintiffs' Count III is titled a "Religious Discrimination" ostensibly and the SAC sufficiently pleads a religious discrimination claim.

### A.    ELCRA Provides for a Failure to Accommodate Claim

Defendants rely on the unpublished *Ureche* for the proposition that "ELCRA does not include an affirmative duty to accommodate an employee's religious beliefs." ECF No. 38, PageID.293; *see Ureche v. Home Depot U.S.A., Inc.*, No. 2:06CV11017, 2006 WL 3825070, at *4 (E.D. Mich. Dec. 26, 2006).  But *Ureche* relies on *Michigan Dept. of C.R. ex rel. Parks*, where the Michigan Court of Appeals only held there **was** no duty to accommodate an employee's sincerely held religious belief under the Fair Employment Practices Act ("FEPA"), ***ELCRA's predecessor***. *Michigan Dep't of C.R. ex rel. Parks v. Gen. Motors Corp., Fisher Body Div.*, 93 Mich. App. 366, 381, 287 N.W.2d 240, 247 (1979).  And although relying on *Ureche*, Defendants fail to mention that on the appeal of *General Motors*, the Michigan Supreme Court remanded the case to the trial court for further proceedings because there could still be a "finding of discrimination based on evidence that an employer failed to act affirmatively to avoid the discriminatory effect of a facially neutral practice."  *Michigan Dep't of Civil Rights ex. rel. Parks v General Motors Corp., Fisher*

*Body Div.*, 412 Mich. 610 (1982).  Therefore, even if ELCRA does not create a duty to accommodate religious beliefs, ELCRA still protects against religious discrimination, which is pled in Plaintiffs' Count III.

**B.    Count III Adequately Pleads Religious Discrimination**

Even if *Ureche* is correct that ELCRA does not support a failure to accommodate claim, the *Ureche* court "specifically noted that the plaintiff's claim under ELCRA was limited to her employer's alleged failure to accommodate."  *Matthews v. Lavida Massage Franchise Dev., Inc.*, No. 13-12587, 2014 WL 2572873, at *3 (E.D. Mich. June 9, 2014) (citing *Ureche*, 2006 WL 3825070, at *3). Here, Plaintiffs' Count III cannot be dismissed because it intentionally also states a claim for religious discrimination, in addition to an accommodation claim.  "Both Title VII and the Elliot-Larsen Civil Rights Act ("ELCRA"), MICH COMP. LAWS § 37.210 *et seq.*, prohibit an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment based on that individuals religion."  *Shabazz v. Safe Horizons*, No. 10-12066, 2011 WL 4072157, at *6 (E.D. Mich. Sept. 13, 2011) (citing 42 U.S.C. § 2000e-2(a)(1); MICH. COMP. LAWS. § 37.2022(a).  The analysis for an ELCRA religious discrimination claim is the same analysis as a Title VII religious discrimination claim.  *Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 614 n. 4 (6th Cir. 2003).

To make out a *prima facie* case of disparate treatment because of religious beliefs, Plaintiffs must establish that they (a) belonged to a protected class; (b) suffered an adverse employment action; (c) were qualified for the position; and (d) were treated differently from similarly situated employees of an unprotected class for same or similar conduct.  *Chattman v. Toho Tenax Am., Inc.,* 686 F.3d 339, 347 (6th Cir. 2012).  Plaintiffs are members of a protected class contemplated by ELCRA because they hold sincere religious beliefs.  SAC ¶¶ 1, 296, 318.  And yet, Defendants

discriminated against Plaintiffs from the very moment the vaccination policy was announced, with Defendants telling employees they would "not grant exemptions [to the COVID-19 mandate], except under extreme circumstances." SAC ¶ 1.  Instead of conducting individualized assessments of Plaintiffs' requests for religious accommodation, Defendants blanketly denied requests and then suspended all employees who dared to request them.  SAC ¶¶ 1, 228, 241, 266, 268, 270, 271, 279, 286, 311, 312, 333, 334.  Those suspensions constitute adverse job actions.  *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 791 (6th Cir. 2004) ("a thirty-seven-day suspension without pay constitutes an adverse employment action regardless of whether the suspension is followed by a reinstatement with back pay.").  Plaintiffs were only recalled due to "legal challenges" and "staffing challenges."  SAC ¶¶ 267, 279, 288.  However, Defendants did not provide backpay. SAC ¶ 1.  All the while, Defendants granted requests for medical accommodation to similarly situated employees.  SAC ¶ 232, 258, 278.  Moreover, Defendants did not require visitors, patients, or independent contractors to be vaccinated.  SAC ¶ 229.  Accordingly, even if ELCRA does create a duty to accommodation religious beliefs, Count III states a claim for religious discrimination.

## IV. THE SAC SUFFICIENTLY PLEADS AN ELCRA RETALIATION CLAIM.

A *prima facie* case of ELCRA retaliation mirrors the Title VII test.  *Supra*, pp. 16-20. Defendants challenge the causation element in Plaintiffs' Title VII claim, but for the ELCRA retaliation claim only argue that Plaintiffs did not engage in protected activity.

### A. Requesting A Religious Accommodation Is Protected Activity Under ELCRA.

Defendants argue in conclusory fashion that "because there is no obligation to accommodate religious beliefs under ELCRA, a request for religious accommodation does not constitute protected activity under ELCRA.  ECF No.38, PageID.294.  That is false.  "ELCRA prohibits retaliation against an employee who has 'opposed a violation of [ELCRA]."  *Wasek v.*

*Arrow Energy Servs., Inc.,* 682 F.3d 463, 472 (6th Cir. 2012) (quoting Mich. Comp. Laws §
37.2302(a)).  The SAC alleges that Plaintiffs protested Defendants' vaccine mandate *en masse* as
soon as it was released.   SAC ¶ 234.   Moreover, requesting exemption from Defendants'
mandatory vaccination policy is an act of opposition unto itself.  The "[p]rotected activity includes
charging a violation of the act, and although the charge need not cite the statute at issue, it 'must
clearly convey to an objective employer that the employee is raising the specter of a claim of
unlawful discrimination' under the statute." *MacDonald v. United Parcel Serv.*, 430 F.App'x 453,
463 (6th Cir. 2011).  Whether Defendants perceived Plaintiffs' religious exemption requests as an
act of opposition would be an impossible thing for Plaintiffs to know at this juncture.   But having
sufficiently alleged in the SAC that they engaged in protected activity and were retaliated against
by being suspended for such activity (SAC ¶¶ 332-33), retaliatory motive is a clear possibility that
Plaintiffs deserve the right to explore in discovery.  Who is to say whether there will be evidence
that Defendants only decided to suspend Plaintiffs because so many of them sought exemptions
from Defendants' policy.  If that were to be the case, Plaintiffs would be able to raise a factual
issue under ELCRA's retaliation provision.

For what it is worth, Defendants again cite authority in *Lucia* and *Dotson* where the facts
bear no resemblance to this case.  ECF No. 38, PageID.294.  The *Lucia* plaintiff contended that
her complaints of inappropriate comments and complaints of sexual harassment on the company's
telephone hotline, as well as a complaint to the Company's Labor relations department after a co-
worker attempted to kiss her, constituted protected activity.  *Lucia v Ford Motor Co.*, No. 12-
15135, 2014 WL 902697, at *10 (E.D Mich. Mar. 7, 2014).  The *Lucia* court found with the
plaintiff on the issue of protected activity.   *Dotson* also does not deal with religious
accommodation, making Defendants reliance on *Dotson* for the proposition that "a request for

religious accommodation does not constitute protected activity under ELCRA" totally illogical. ECF No. 38, PageID.294. The *Dotson* plaintiff alleged retaliation for complaining of race discrimination. *Dotson*, 52 Fed. Appx. at 656. The *Dotson* court held that plaintiff failed "to link any protected activity to any discriminatory conduct." *Id.* at 660. What impact *Lucia* and *Dotson* have on this matter is a mystery.

Defendants also rely on *Deluca*. ECF No. 38, PageID.294. The *Deluca* court denied plaintiff's request to add an ELCRA retaliation claim to his Complaint based on plaintiff's letter that "explained to [defendant's] representatives that [plaintiff's] supervisor had threatened to assault him and created a 'macho' atmosphere in the workplace." *Id.* The letter did not constitute protected activity because it failed to "detail that the poor behavior arose due to the supervisor's desire to discriminate against [Mr. Deluca] based on a protected status," such as religion, race, color, national origin, age, sex, height, weight, or marital status. *Id.* Here, however, Plaintiffs' religious accommodation requests constituted opposition to Defendant's mandatory vaccine policy. Again, the SAC alleges that Plaintiffs widely protested Defendants' vaccine mandate. SAC ¶ 234. Whether Defendants perceived those protests and subsequent religious accommodation requests as an act of opposition to Defendants' vaccine policy is simply not something that could be known until Plaintiffs get to look behind the curtain for evidence. We do know that Defendants issued blanket denials of religious accommodation requests, only to do an about face and reinstate employees do to "legal challenges." SAC ¶¶ 232-33, 256. If the evidence shows that Defendants suspended these employees based on a religious animus, Plaintiffs' ELCRA retaliation claim would be facially plausible. And that finding would not be far-fetched. After all, there is already record evidence that Defendants arbitrarily forced the vaccine mandate on remote

employees who had no possible nexus to Defendants' purported "health and safety risk" concerns. SAC ¶ 239.  At this stage, Defendants are not entitled to the benefit of the doubt on these issues.

## **CONCLUSION**

For the aforementioned reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104

Dated: December 15, 2022

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 15, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the attorney(s) of record.

*/s/ Brendan J. Childress* (P85638)
