UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ALBRIGHT, et al.
on behalf of themselves and
others similarly situated,

        Plaintiffs,

v.

ASCENSION MICHIGAN, et al.

        Defendants.

Case No. 1:22-cv-00638-JMB-SJB

Hon: Jane M. Beckering

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| HURWITZ LAW PLLC | JACKSON LEWIS P.C. |
| 614 Detroit St. STE 125 | 2000 Town Center, Ste. 1650 |
| Ann Arbor, MI 48104 | Southfield, MI 48075 |
| (844) 487-9489 | (248) 936-1900 |
| Noah@hurwitzlaw.com | Maurice.jenkins@jacksonlewis.com |
| Grant@hurwitzlaw.com | Allan.rubin@jacksonlewis.com |
| Kara@hurwitzlaw.com | Elyse.culberson@jacksonlewis.com |
| | |
| James A. Thomas (P80931) | Patricia Pryor |
| JIMMY THOMAS LAW | Jackson Lewis P.C. |
| Attorneys for Plaintiffs | 201 E. Fifth Street, 26th Floor |
| 1925 Breton Rd. SE, Ste. 250 | Cincinnati, OH 45202 |
| Grand Rapids, MI 49506 | (513) 898-0050 |
| (616) 747-1188 | Patricia.pryor@jacksonlewis.com |
| jimmy@jimmythomaslaw.com | |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS

### I.    INTRODUCTION

Defendants moved to dismiss Plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs' opposition to Defendants' motion fails to raise a right for relief above the speculative level. *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Defendants' motion should be granted.

## II. REPLY ARGUMENT

*A. Plaintiffs Fail to Allege Any Sincerely Held Religious Beliefs That Conflict with Any Vaccine Policy.*

Plaintiffs admit that to plead a Title VII religious accommodation claim they must plead that the Plaintiffs "hold sincere religious beliefs that conflict with an employment requirement." (ECF No. 45, PageID 369) But Plaintiffs have not asserted any sincerely held religious belief that any of them hold that conflicts with any vaccine requirement. Blanket conclusory statements are not enough. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). Although a complaint need not contain "detailed factual allegations," a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Courts need not accept as true naked assertions devoid of factual enhancement. *Id.* at 557 (citing *Iqbal,* 556 U.S. at 628). Not only do Plaintiffs not even attempt to identify any sincerely held religious belief that conflicted with the vaccine requirement, but they seemingly argue that they will need to obtain this information in discovery. (ECF No. 45, PageID 371: "Plaintiffs' specific religious accommodation requests reside within Defendants' control and will be requested during discovery") That Plaintiffs are unable to identify their own sincerely held religious beliefs that conflict with a vaccine requirement is telling. Regardless, Plaintiffs have offered nothing other than a formulaic recitation of the elements of a religious discrimination claim. Under *Iqbal* and *Twombly*, their complaint should be dismissed as a matter of law for this reason alone.

> B. *Plaintiffs' Religious Accommodation Claim Fails As A Matter Of Law As It is Undisputed The Requested Accommodation Would Impose an Undue Burden on Defendants.*

In addition, dismissal is appropriate because it is undisputed that in November 2021, in the midst of the pandemic and heavy government regulation requiring vaccination, allowing individuals to care for patients while unvaccinated created more than a *de minimis* burden on Defendants.[1] (See ECF No. 38, PageID 289-91.) Plaintiffs admit they are "doctors, nurses, nurse practitioners, physician assistants and other health care workers" (ECF No. 45, PageID 362) – the same workers that the interim final rule of the Secretary of Health and Human Services said employers needed to ensure were vaccinated.[2] 86 Fed. Reg. 61555 (2021). Defendants' policy was consistent with the findings by the Secretary of Health and Human Services, who concluded that: (1) Unvaccinated staff pose a serious threat to patients; (2) Transmission to patients who are elderly, disabled, or in poor health, is particularly dangerous; (3) "Fear of exposure" "from unvaccinated health care staff can lead patients to forgo seeking medically necessary care," and (4) Staffing shortages caused by COVID–19 related exposures or illness has disrupted patient care. *Biden v. Missouri*, 142 S. Ct. 647, 211 L. Ed. 2d 433 (2022).

As is well recognized by courts, the risk of infection and death to hospital patients, staff, and visitors is well beyond a "de minimis cost." *See Does v. Hochul*, No. 21-cv-5067, 2022 U.S. Dist. LEXIS 180025, at *45 (E.D.N.Y. Sept. 30, 2022) (granting motion to dismiss where

---

[1] Plaintiffs seek to proceed as a Rule 23 class. Yet, they now argue that their accommodation claims must be decided case-by-case (ECF No. 45, PageID 372).
[2] Plaintiffs' brief is full of red herrings to attempt to avoid the clear legal arguments that require dismissal. For example, Plaintiffs state that Defendants' policy applied to remote workers, but Plaintiffs do not claim to be remote workers and do not claim that a remote worker was denied an accommodation. Similarly, Defendants never claimed that their policy was based on the interim final rule (nor could it have been as Defendants issued their policy first). Rather, Defendants said the findings of the Secretary of Health and Human Services supported Defendants' conclusion that accommodating the Plaintiffs would create an undue hardship. ECF No. 38, PageID 290.

"exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship."); *Robinson v. Children's Hosp. Boston,* 2016 U.S. Dist. LEXIS 46024 (D. Mass. Apr. 5, 2016) (holding that providing a vaccine exemption in a hospital setting would have imposed undue hardship because of increased risk of transmission to already vulnerable patients); *EEOC v. Mission Hosp., Inc.,* 2017 U.S. Dist. LEXIS 124183 (W.D.N.C. Aug. 7, 2017) (noting that when hospital employees interacted with vulnerable patient populations, should patients or staff suffer from hospital borne disease, the infection would increase costs to the hospital); *Barrington v. United Airlines,* 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (recognizing the undue hardship created by the potential risk of the unvaccinated associates exposing co-workers to heightened risk of COVID-19); *Doe v. Mills*, 16 F.4th 20, 31-32 (1st Cir. 2021) ("The hospitals need not provide the exemption the appellants request because doing so would cause them to suffer undue hardship."); *Together Emples. v. Mass Gen. Brigham Inc.,* 573 F. Supp. 3d 412, 433 (D. Mass. 2021) ("Under the circumstances, it was reasonable for MGB to conclude that unvaccinated employees—who are more likely to become infected—pose a direct threat to patients and others. '[T]his court should not second-guess the hospital's judgment in matters of patient safety.'"); *Creger v. United Launch All. LLC,* 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying injunctive relief based on the undue hardship posed by the added cost and administrative burden of providing weekly testing, and the risk of employee hospitalizations and deaths); *O'Hailpin v. Hawaiian Airlines, Inc.,* 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (recognizing undue hardship from increased risk of COVID-19 that unvaccinated employees pose to other employees and passengers). Plaintiffs have not cited a single case where a court has

concluded that an employer has to provide a religious accommodation where doing so creates an increased safety risk.[3]

In *Does,* the court found not only an undue hardship with respect to the risk of infection and death but also with respect to the risk of legal liability if an unvaccinated staff member treated a patient:

> "Aside from the obvious hardship associated with an increase in infections and its deleterious effect on staff and patients, the Private Defendants could also face legal liability if a patient or resident treated by an unvaccinated employee were to contract COVID-19. The number of lawsuits filed in this District based on COVID-19 deaths in nursing homes demonstrates that this is more than just a theoretical possibility. *See, e.g., Gavin v. Jackson Heights Care Ctr., LLC,* No. 22-CV-5006 (E.D.N.Y. Aug. 24, 2022); *Gonzalez v. Parker Jewish Inst. for Health Care & Rehab. et al.,* No. 22-CV-5199 (E.D.N.Y. Aug. 81, 2022); *Esposito v. Parker Jewish Inst. for Healthcare & Rehab.,* No. 22-CV-5012 (E.D.N.Y. Aug. 24, 2022); *Thompson v. Ditmas Park Rehab. & Care Center, LLC et al.,* No. 22-CV-4555 (E.D.N.Y. Aug. 3, 2022); *Weppler v. Highfield Gardens Care Ctr. of Great Neck,* No. 22-CV-2905 (E.D.N.Y. May 18, 2022)."

*Does,* 2022 U.S. Dist. LEXIS 180025 at *45, n.28.

Moreover, as discussed in Defendants' Motion (ECF No. 38, PageID 289-91), at the time of both the adoption of the COVID-19 vaccination policy and the decisions on Plaintiff's accommodation requests, there were multiple government regulations in place that required vaccination in the healthcare setting, and/or placed additional (more than *de minimis*) burden on

---

[3] Plaintiffs cite *Garvey v. City of New York,* 85163/2022, 2022 WL 16559102 (NY Sup. Ct. October 24, 2022). But *Garvey* is not applicable here. *Garvey* involved sanitation workers (not healthcare workers providing care to the most vulnerable of patients). It was not a Title VII accommodation case and discussed conditions in February 2022 (after Defendants had determined conditions had changed enough where they were willing to accept the burden – even though it was still greater than *de minimis* -- and return individuals to work).

employers with respect to employees who were not vaccinated.[4] In addition to the risk to patients and staff and the risk of legal liability, the cost and burden of compliance with these regulations that governed circumstances where unvaccinated individuals remained in the healthcare setting was itself more than a *de minimis* burden, as a matter of law.

Plaintiffs try to argue that there was no undue hardship because the hospitals operated without a vaccine mandate before the vaccine was widely available[5] and because they later provided accommodations after circumstances changed. Neither of these arguments negate the undue hardship analysis at the time the decisions were made. *Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1378-80 (6th Cir. 1994) (the reasonableness of an accommodation is determined *at the time* of the decision impacting plaintiffs). It is beyond dispute that COVID-19 and its impact was an ever-changing health crisis. In the fall of 2021, against the backdrop of the COVID-19 pandemic, the lives the pandemic had already claimed in the healthcare setting, the new interim final rule requiring vaccination in the healthcare setting and issuing a number of findings about the risks in the healthcare setting without it,[6] the OSHA Healthcare ETS that required longer quarantine

---

[4] For example, the OSHA COVID-19 Healthcare ETS, required unvaccinated employees to be removed from the workplace if they had close contact with an individual with COVID-19. 86 Fed. Reg. 32376, at 32454. As a result, unvaccinated employees were subject to greater quarantine requirements under the OSHA Healthcare ETS, resulting in increased risk of staffing shortages. In addition, the new OSHA ETS announced in the fall of 2021, would have required weekly testing of unvaccinated individuals, resulting in increased costs to employers who allowed unvaccinated individuals in the workplace. *See Speer v UCOR, LLC*, No. 3:21-cv-368, 2022 U.S. Dist. LEXIS 157271, at **14-15 (E.D. Tenn. Aug. 31, 2022) (Cost associated with weekly testing would be $370 per employee, totaling $1,885,520 per year for the 98 employees and the cost of two KN-95 masks per week for 98 employees would total $10,192 per year).

[5] The lack of vaccines had devastating consequences on healthcare workers. Nearly a quarter of pre-vaccine COVID-19 cases (24.34%) had "known healthcare personnel" status and caused between 80,000 and 180,000 health care worker deaths. (ECF No. 38, PageID.289).

[6] While the interim final rule allowed for consideration of legally required accommodations, it did not mandate that accommodations be provided if there was an undue hardship and did not identify what accommodations would be acceptable and not result in loss of funding if provided to direct patient care providers.

6

requirements for unvaccinated individuals and the OSHA ETS that would require costly weekly testing of unvaccinated individuals, Defendants' decision that it was an undue hardship was reasonable and appropriate as a matter of law.[7] *See Villareal v. Rocky Knoll Health Care Center*, 2022 U.S. Dist. LEXIS 210267, at *18 (ED Wis, Nov. 21, 2022) ("[A]n accommodation can be an undue hardship if it causes or increases safety risks or the risk of legal liability for the employer. 'The inquiry ultimately boils down to whether the employer acted reasonably [in determining that a potential accommodation would cause it undue hardship].'")(Citations omitted).

Plaintiffs misunderstand the nature of the *de minimis* standard. It does not matter that it was *possible* both before and after for employees to work unvaccinated. The *de minimis* standard does not require that an employer accommodate a religious belief unless it is impossible not to. Rather, the standard is that accommodations are only required if they can be provided without imposing a *de minimis* burden. An employer can always accept the *de minimis* burden imposed by an accommodation and voluntarily choose to accommodate even when not legally required, which is what Defendants later did when the regulations and other circumstances changed (by mid-December the OSHA ETS and CMS regulations had been enjoined, *see BST Holdings, L.L.C. v. OSHA*, 17 F. 4th 604 (5th Cir. 2021); *Louisiana v. Becerra*, 571 F. Supp. 3d 516 (W.D. La. Nov. 30, 2021), signaling that Defendants likely would not be required to pay weekly testing costs for individuals it accommodated). In addition, the overall vaccination rate had greatly improved, and the impact of the virus was changing. Defendants' continued assessment of the ever-changing circumstances establishes the reasonableness of its approach and is not evidence of discriminatory animus.

---

[7] It is undisputed that in the fall of 2021, both science and the courts recognized that vaccines reduce the risk of contracting and spreading COVID-19. *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633 (E.D. Ky. 2021), see also ECF No. 38, PageID 289.

Similarly, that Defendants accommodated individuals who made accommodation requests under the ADA for medical conditions, does not establish discrimination against anyone with a religious accommodation request. The standards for accommodation under the ADA are vastly different than that required under Title VII. *See Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998). Moreover, courts have recognized that a hospital's need to accommodate individuals under the ADA, supports the finding of more than a *de minimis* burden under Title VII (and therefore treating religious accommodation requests differently than medical accommodations): "Every single additional unvaccinated employee to whom patients are exposed adds to the risk to those patients." *Aukamp-Corcoran v Lancaster Gen Hosp*, No. 19-5734, 2022 U.S. Dist. LEXIS 29355, at **21-23 (E.D. Pa. Feb. 18, 2022) (recognizing difference between accommodating employees who cannot be vaccinated because of medical complications and the undue hardship that accommodating religious requests would cause); *O'Hailpin*, 583 F. Supp. 3d at 1309 (employers "may take into account the cumulative cost or burden of granting accommodations to other employees") (citations omitted).

As has been universally recognized by the courts to date, accommodation of Plaintiffs — front line health care workers — amid the pandemic would have imposed an undue burden as a matter of law. Thus, Defendants' motion should be granted for this additional reason.

C. *Plaintiff's Retaliation Claim Should be Dismissed*

As set forth in Defendants' motion, Plaintiffs also fail to allege a plausible retaliation claim. Plaintiffs cannot establish any causal connection between an action that was announced before they ever requested an accommodation and their accommodation request.

Defendants announced the policy and consequences of not being vaccinated before any Plaintiff requested a religious accommodation. ECF No. 35, ¶226; ECF No. 45-2. Under these

8

circumstances, there can be no retaliation claim, when the pre-announced consequences occur. Plaintiffs, recognizing that their claims fail, try to argue that this is somehow akin to an employer announcing a policy that any employee complaining of sexual harassment will be terminated. Not so. The policy here was not directed at individuals who requested accommodation. It applied to anyone who was unvaccinated regardless of the reason why. The pre-announced consequences of the policy had no connection to whether someone requested an accommodation and there can be no claim of retaliation in this situation.

While Plaintiffs claim "employees protested the vaccine mandate *en masse*", Plaintiffs do not allege they individually did so, let alone protested discrimination or any other statutory violation. Indeed, the only alleged protected activity supporting their retaliation claim is their request for an accommodation. ECF No. 35, ¶310. While Plaintiffs argue that the temporal proximity between their requests and suspension is sufficient, it is not. It is well established that temporal proximity alone is insufficient to establish retaliation where an employer is simply proceeding along lines previously announced. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *Michael v Caterpillar Fin. Servs. Corp.*, 496 F3d 584, 596 (6th Cir. 2007); *Lundstrom v Contra Costa Health Servs*, No. 22-cv-06227-CRB, 2022 U.S. Dist. LEXIS 214812, at *15 (N.D. Cal. Nov. 29, 2022) (Because COVID-19 mitigation and vaccination policies existed before plaintiff opposed those policies, "it is not reasonable to infer that there was a causal connection between her criticism of the policy and her termination.") *See also Speaks v Health Sys Mgmt.*, No. 5:22-CV-00077-KDB-DCK, 2022 U.S. Dist. LEXIS 146840, at **14-15 (W.D.N.C. Aug. 17, 2022) (employee could not establish retaliation because COVID-19 policy was enacted before their alleged opposition to vaccine requirement and lack of vaccination was reason for termination); *citing O'Hailpin* 583 F. Supp. at 1303-1304 (same); *Together Emples.,* 573 F. Supp.

3d at 444 (no causal connection where defendant asserted that "plaintiffs [were] subject to unpaid leave and potential termination not because they requested exemption, but because they were not approved and remain[ed] noncompliant with the Vaccination Policy").

Simply put, Plaintiffs fail to plead plausible allegations that Defendants took adverse action *because* they sought an exemption, as opposed to because they remained unvaccinated. Plaintiffs cannot assert a retaliation claim based simply on a failed accommodation request. *See Diemond v. Mich. Dep't of Corr.*, No. 1: 20-cv-473, 2020 U.S. Dist. LEXIS 112259, at **23-24 (W.D. Mich. June 26, 2020) (rejecting claim that that simply alleging retaliation based on the denial of an accommodation is sufficient to establish an inference of retaliation sufficient to state a prima facia case). Plaintiffs' retaliation claims fail as a matter of law and should be dismissed.

   D.  *Plaintiffs' Claims Under ELCRA Fail as a Matter of Law.*

As discussed in Defendants' Motion, ELCRA does not require accommodation of religious beliefs. As a result, Plaintiffs' claims under the ELCRA fail as a matter of law. Plaintiffs argue that the Court should not dismiss their ELCRA claims because they may have a religious discrimination claim. But Plaintiffs have not even attempted to plead a religious discrimination claim under ELCRA. (ECF No. 35, Count III, PageID 273-74). Rather, Plaintiffs only pled an accommodation claim.

When assessing whether claims are legally viable, arguments or legal theories asserted in a response to a motion to dismiss are not proper substitutes for well-pled factual allegations in the complaint itself. *McCrea v. Blue Star Motel*, 1:21-cv-270, 2022 U.S. Dist. LEXIS 84469, at *10-11 (W.D. Mich. Apr. 25, 2022); *citing Cole v. Monroe County,* 359 F Supp 3d 526, 534 (E.D. Mich. 2019) ("it is the complaint, and not. . .anything else, that defines a plaintiff's claims"). The ELCRA does not require employers to accommodate an employee's religious beliefs. *Lively v.*

*Kroger Co.*, No. 19-12961, 2021 U.S. Dist. LEXIS 38060, at \*\*12-13 (E.D. Mich. Mar. 2, 2021) (citations omitted); *King v. Borgess Lee Mem. Hosp.*, No. 1:13-CV-397, 2014 U.S. Dist. LEXIS 182428, at \*14 (W.D. Mich. Oct. 24, 2014) ("To the extent that Plaintiff asserts the claim that the hospital was required to accommodate her religious beliefs, such claim must fail because the ELCRA does not impose on employers any duty or obligation to accommodate an employee's religious beliefs").

Even if the Court considers Plaintiff's argument (which it should not), the SAC fails to plausibly allege a religious discrimination claim under the ELCRA. There is no dispute the vaccine policy applied to everyone. There is no allegation that individuals were treated differently because of their religious beliefs. Plaintiffs only challenge the denial of their accommodation requests. But since accommodation is not required under the ELCRA, Plaintiff's ELCRA religious accommodation claim should be dismissed. To the extent Plaintiffs now try to claim that because medical accommodations were approved but religious were not, this also does not state a claim. It is undisputed the ADA requires accommodation absent significant difficulty or expense (much different than the de minimis burden under Title VII). *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998). The ADA allows (and requires) employers to treat disabled individuals differently than others. *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2002) ("By definition any special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.,* preferentially."). Plaintiffs cannot base a discrimination claim on an allegation that disabled individuals were accommodated or treated differently. Plaintiffs have not alleged that any plaintiff requested an accommodation under the ADA and was denied because of a religious belief and therefore cannot establish religious discrimination.

Finally, Plaintiffs' retaliation claim under ELCRA fails for the same reasons that the Title

11

VII claim fails, and also because Plaintiffs have not alleged any protected activity under ELCRA. Once again, Plaintiff's only asserted protected activity was the request of an accommodation. ECF No. 35, ¶ 332, PageID 274. Because ELCRA does not require that an employer accommodate an employee's religious beliefs, requesting an accommodation is not protected activity under the statute. Nor is protesting of the vaccine requirement protected activity. Plaintiffs offers no authority establishing that ELCRA requires accommodation of religious beliefs, or that they engaged in protected activity by requesting an accommodation. Thus, their ELCRA retaliation claim should be dismissed for this additional dispositive reason.

### III.  CONCLUSION

For these reasons and those set for in Defendants' Motion to Dismiss Plaintiffs' claims should be dismissed with prejudice and without leave to amend.

Respectfully Submitted,

**JACKSON LEWIS P.C.**

Dated: December 29, 2022

/s/ Allan S. Rubin
Maurice G. Jenkins (P33083)
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
Maurice.jenkins@jacksonlewis.com
Allan.rubin@jacksonlewis.com
Elyse.culberson@jacksonlewis.com

Patricia Pryor
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050
Patricia.pryor@jacksonlewis.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

  The undersigned certifies that on December 29, 2022, he or his assistant did file this document using the CM/ECF system which will send notice of its filing to all counsel of record.

                /s/ Allan S. Rubin
                Allan S. Rubin (P44420)