UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KAREN ALBRIGHT, et al., on behalf of themselves and others similarly situated, | Case No. 1-22:cv-00638-JMB-SJB |
| Plaintiffs, | Hon: Jane M. Beckering<br>Mag. Judge Phillip J. Green |
| v. | |
| ASCENSION MICHIGAN, et al. | |
| Defendants. | |

_____/

**JOINT MOTION FOR PRELIMINARY APPROVAL OF RULE 23
CLASS ACTION SETTLEMENT**

NOW COME Plaintiffs Karen Albright et al. and Defendants Ascension Michigan et al. (herein collectively referred to as "the Parties") jointly, by their respective counsel, and move this Court for an order preliminarily approving a Rule 23 class action settlement and approving notice to the class. In support of their Motion, the parties state:

1. Plaintiffs filed a four count Complaint (EFC No. 1) against Defendants in the United States District Court for the Western District of Michigan, for which Plaintiffs sought relief for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Plaintiffs later filed a First and Second Amended Complaint (ECF Nos. 25, 35). In each Complaint, Plaintiffs alleged that Ascension and its various related entities unlawfully denied Plaintiff's religious accommodation requests and retaliated against employees who sought religious exemptions from Ascension's COVID-19 Vaccination Policy. Plaintiffs claimed that they were suspended or forced to resign. Many were called back to work approximately five (5) weeks later. (ECF No. 35, ¶ 267)

2. Defendants deny each of Plaintiffs' allegations and have filed a Motion to Dismiss on Plaintiffs claims. (ECF No. 38) As part of the settlement discussions, the parties jointly moved to Hold the Motion to Dismiss in Abeyance. (ECF No. 54)

3. The parties appeared before Magistrate Judge Berens for a Settlement Conference in January 2023. Although a settlement was not reached at the settlement conference, the Parties continued to engage in settlement discussions based on concepts and principles discussed by the parties at the Settlement Conference held before Magistrate Judge Berens. (*See e.g,.,* ECF No. 53). During these negotiations, all Parties were represented by counsel experienced in the handling of class action matters. Ultimately, these discussions resulted in the Parties' reaching an amicable resolution of this case. The terms of that settlement are encapsulated in a written settlement agreement, a copy of which is attached as **Exhibit 1**.

4. Under the terms of the Settlement, no Plaintiff is seeking enhancement payments from the Total or Net Settlement Fund.

5. Pursuant to the terms of the settlement, the Parties stipulate to the filing of a Third Amended Complaint which will define the Settlement Class more fully and name additional Defendants, including Ascension Health Alliance and all their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, vaccine policy. (Ex. 1, Settlement Agreement, Art. III(a)). If the Court does not approve the Settlement, the Parties agree to dismiss the Third Amended Complaint and it shall be void ab initio.

6. The Settlement Agreement defines Class Members as follows:

> All Ascension[1] Associates for whom all of the following apply: (a) the Associate applied for a religious exemption to the COVID-19

---

[1] Ascension is defined as "all Defendants in the Action, either as pled or as named in the Third Amended Complaint, including Ascension Health Alliance, and all their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, COVID-

2

> Vaccination Policy and has a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) the Associate was denied the requested religious exemption, and (c) the Associate either (i) was suspended or otherwise removed from employment by Ascension in November 2021 or (ii) claims they were forced to leave their employment with Ascension before February 28, 2022, after and as a result of their denied religious exemption to the COVID 19-Vaccination Policy.

(Ex. 1, Settlement Agreement, Art. II(l))

7. The parties have agreed that the Claims Administrator will be Rust Consulting, a well-known claims administrator. *See* www.Rustconsulting.com. Rust Consulting will disseminate notice to Class Members, including the Class Notice, Claim Form, and Exclusion Form. The Class Notice, Claim Form and Exclusion Form will be sent by the Claims Administrator to Class Members' last known address by first class mail and posted on a website to be created by the Claims Administrator. The website will also contain the Claim and Exclusion Forms, the Third Amended Complaint, a copy of the Settlement Agreement, Class Counsel's Motion for Attorney Fees (when filed), and permit the electronic submission of Claim and Exclusion Forms. A copy of the proposed Class Notice is attached as Ex. 1(A). Copies of the Claim Form and Exclusion Form are attached as Ex. 1(B), and 1(D) respectively. Additionally, the Claims Administrator will be solely responsible for the determination of the validity of the Claims submitted, and the number of Claims Weeks for each Class Member, and to adjudicate disputed claims. (Ex. 1, Settlement Agreement, Art. IV)

8. Class Members will have 75-days to submit a Claim Form or Exclusion Form. Class Members will also be able to object to the Settlement. (Ex. 1, Settlement Agreement, Art. IV, VI,

---

19 Vaccination Policy." To avoid any doubt, it is the Parties' intention that the term Ascension as used herein is intended to include each and every Ascension Health Alliance affiliate or related entity that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy. (Ex. 1, Settlement Agreement, Art. II(b))

3

and VII.) No person who excludes themselves from the Settlement will be bound by its terms.

9. As outlined in the settlement agreement, the Settlement Class will include all Class Members who do not exclude themselves from the Settlement.

10. The Settlement Class will be divided into these Subclasses:

   i. The "Physician Subclass" which means all Settlement Class Members who were employed by Ascension as either a Physician, Nurse Practitioner, or Physician Assistant as of the date the Class Member last worked for Ascension before November 12, 2021.

   ii. The "Nurse Subclass" which means all Settlement Class Members who were employed by Ascension as either a Registered Nurse or Licensed Practical Nurse ("LPN") as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

   iii. The "Technician Subclass" which means all Settlement Class Members who were employed by Ascension and are not a member of either the Physician or Nurse Subclass as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

Each Subclass will also be broken down into state specific subclasses based on the location where the Settlement Subclass Members worked as of November 12, 2021.

11. The Settlement is a claims-made Settlement. To receive a Settlement Payment from the Net Settlement Fund, a Class Member must timely submit a Valid Claim. For each State Subclass, the Claims Administrator will take the Average Weekly Sales for the Class Members in that State Subclass that submit Valid Claims and multiply that by the Total Number of Claims Weeks for those Class Members (up to a maximum of 5 weeks for any Class Member), to arrive at the State Subclass Total Settlement Fund. (Ex. 1, Settlement Agreement, Art. III (d)-(f)). The Average Weekly Salary will be determined by multiplying the average hourly wage, as of November 12, 2021, for Class Members in the State Subclass who submit Valid Claims by the average full-time equivalent ("FTE") hours for the positions held by those Class Members as of November 12, 2021. (Ex. 1, Settlement Agreement, Art. II(d)). After attorney fees and Claims

Administrator fees are deducted from the Total Settlement Fund, the remaining Net Settlement Fund will be proportionally divided among the State Subclasses and the Claims Administrator will distribute proportionate shares to each Settlement Class Member who submitted a Valid Claim taking into account the FTE and number of Claim Weeks for the Settlement Class Member, up to a maximum of five weeks.  Employer employment taxes will be paid separately by Ascension (*Id.,* Art. IV (h)) and employee-based employment taxes on wages will be withheld by the Claims Administrator. (*Id.,* Art. IV (f)) Settlement Checks will be calculated and mailed by the Claims Administrator and will be valid for 60 days after issuance. (*Id,* Art. IV(g))

12. Class Members who do not exclude themselves from the Settlement (*i.e.,* Settlement Class Members) will release (a) Ascension, (b) any Ascension entity's respective past, present and future parents, subsidiaries, joint ventures, insurers, related entities and affiliates, (c) the past, present and future shareholders, directors, officers, members, managers, agents, employees, attorneys, insurers, predecessors, successors and assigns of any of the foregoing, and (d) any individual or entity which could be jointly liable with any of the foregoing, from any and all claims, causes of actions, liabilities relating in any way to the adoption, implementation, or application of Ascension's COVID-19 Vaccination Policy, or any other vaccination policy enforced in 2021 or 2022 by Ascension, whether known or unknown, actual or imagined, and/or which arose out of or could have arisen out of the facts alleged in this action, including, but not limited to, any claims under any federal, state, or local law relating to COVID-19 or the COVID-19 vaccine, religious discrimination or accommodation, pregnancy discrimination or accommodation, disability discrimination or accommodation, retaliation, wage or benefit statutes, tort, contract, or other claims in any form or format whatsoever, including any provision for the payment of fines, costs, penalties, punitive, compensatory, liquidated, exemplary, or exculpatory

damages, attorney fees or costs from the beginning of time to the effective date of the settlement is finally approved by the Court.

13. The settlement agreement contains a provision for proposed costs and fees to be paid to counsel for Plaintiffs. Under the Settlement Agreement, Class Counsel will receive up to one-third of the Total Settlement Fund for Attorney Fees and Costs for all current and future services provided in this matter subject to approval or modification by the Court. Plaintiffs believe that the costs and fees are reasonable and commensurate with the service rendered by Plaintiffs' Counsel and request that they be approved. As part of the settlement, Defendants have agreed not to object to the award of the fees and costs up to the amount stated in the Settlement Agreement. Defendants take no other position about the reasonableness of the Plaintiffs' attorney fees and costs. Before the final approval hearing, Class Counsel will submit a motion for approval of attorney fees and costs and any fees and costs are subject to Court Approval.  Any approved attorney fees and costs will be paid to Class Counsel from the Total Settlement Fund and the Settlement does not depend on the Court's award of any amount of attorney fees or costs. (Ex. 1, Settlement Agreement, Art. V)

14. The Parties agree that the settlement is a fair and reasonable resolution of a bona fide dispute over issues arising under Title VII, ELCRA, and similar laws in other states. Although Defendants deny that there were violations of Title VII, ELCRA, and other state laws, the Parties agree that the settlement represents a fair compromise of the alleged claims if Plaintiffs prevailed on the merits of this case.

15. Because the Parties believe that the settlement represents a fair resolution of this matter, they jointly ask the Court to preliminarily approve the settlement of this action and enter the attached proposed Preliminary Order, which is attached as **Exhibit 2**.

## **MEMORANDUM OF LAW**

Rule 23 requires judicial approval of any compromise of claims brought on a class-wide basis. Fed. R. Civ. P. 23(e); *Int'l Union, UAW v. Chrysler LLC*, No. 07-CV-14310, 2008 U.S. Dist. LEXIS 92591, at *72 (E.D. Mich. July 31, 2008). Under Rule 23(e), in weighing a grant of preliminary approval, the district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23 (e)(1)(B)(i–ii)) (emphasis in original).

The Sixth Circuit has long held that "[p]ublic policy strongly favors settlement of disputes without litigation . . . . Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit." *Robinson v. Shelby Cnty. Bd. Of Educ.*, 566 F.3d 642, 647-49 (6th Cir. 2009) (*quoting Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976)). "Before granting preliminary approval of a settlement, the Court must determine whether the proposed class can be certified for settlement purposes." Manual for Complex Litigation (4th Ed. 2004) § 21.632. In deciding whether to approve a settlement, courts should give weight to the Parties' consensual decision to settle class action cases, because the law favors settlement in class action suits. *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."); citing, *UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

Although there is a general policy favoring settlements, the Court may approve a class action settlement only if it is fair, adequate, and reasonable, and not a product of collusion. Fed.

7

R. Civ. P. 23(e)(2); *UAW v. General Motors*, 497 F.3d at 631 ("Before approving a settlement, the district court must conclude that it is 'fair, reasonable, and adequate.'"). To determine whether a proposed settlement is fair and reasonable, courts consider: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Sheean v. Convergent Outsourcing, Inc., No. 2:18-cv-11532-GCS-RSW*, 2019 U.S. Dist. LEXIS 197446, at *6 (E.D. Mich. Nov. 14, 2019) (citing *UAW*, 497 F.3d at 631. But these factors should not be applied in a "formalistic" fashion. *Whitford v. First Nationwide Bank,* 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors."). And in considering these factors, the court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

Courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved. *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions."); *see also Dick v. Spring Commc'ns Co. L.P.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014) ("[T]he 'restricted, tightly focused role' that Rule 23(e) prescribes does not consign a district court with broad powers to intrude upon the private, consensual bargain negotiated by the parties."). And once the Court determines that

8

the settlement reflects a reasonable compromise over issues that are in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Williams v. K&K Assisted Living LLC*, 2016 U.S. Dist. LEXIS 9310 *4 (E.D. Mich. Jan. 27, 2016). In considering whether to preliminarily approve this settlement, the Court should be mindful of the strong presumption in favor of finding a settlement fair.

### A. THE SETTLEMENT IS A FAIR AND REASONABLE RESOLUTION OF THE DISPUTED CLAIMS.

This settlement reached between the Parties is fair and reasonable. The settlement resolves a bona fide dispute between adverse parties and ends litigation on a nationwide basis that would be far costlier to pursue given the complexity of the issues. Thus, the Settlement should be preliminarily approved and notice of the settlement should be authorized to be sent to Class Members as defined in the Settlement Agreement.

1. *No Risk of Fraud or Collusion*

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *3 (W.D. Tenn. Aug. 2, 2016); *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) ("The Court must also make sure that any settlement is the product of arm's length negotiations as opposed to collusive bargaining.").

Here, there is no risk of fraud or collusion. The settlement stems from arm's-length negotiations that began in a settlement conference before Magistrate Judge Berens and continued between the parties afterward. During these negotiations the Plaintiffs were represented by

9

experienced counsel who litigated aggressively on their behalf. Defendants were also represented by experienced counsel who litigated this matter aggressively on their behalf.

      2.     *The Complexity, Expense, and Duration of the Case*

In evaluating a proposed settlement, the Court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal. *In re Regions*, 2016 WL 8290089, at *4 (*citing UAW*, 497 F.3d at 631; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)).

First, "most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no exception as it involves novel questions about whether Plaintiffs each had sincerely held religious beliefs that conflicted with a vaccine requirement, and whether it was an undue hardship for hospitals and health care entities, during a global pandemic, that claimed the lives of over 100,000 healthcare workers to allow unvaccinated individuals to treat and interact with patients and other healthcare workers. As this Court is aware, Defendants' Motion to Dismiss argued and several courts have already found that exempting workers, in particular health care workers, from a COVID-19 vaccination requirement was an undue hardship. See e.g., *Does v. Hochul*, Case No. 21-cv-5067-amd-tam, 2022 U.S. Dist. LEXIS 180025, at *45 (E.D.N.Y. Sep. 30, 2022); *D'Cunha v. Northwell Health Systems*, No. 1:22-cv-0988 (MKV), 2023 U.S. Dist. LEXIS 33343, at *6-9 (S.D.N.Y. Feb. 28, 2023) (reporting unvaccinated to a worksite providing direct patient care was more than a de minimis cost because it posed an unacceptable health and safety threat to patients); *Barrington v. United Airlines,* 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (recognizing the undue hardship created by the potential risk of the unvaccinated associates exposing co-workers to heightened risk of COVID-19); *Doe v.*

10

*Mills*, 16 F.4th 20, 31-32 (1st Cir. 2021) ("The hospitals need not provide the exemption the appellants request because doing so would cause them to suffer undue hardship."); *Together Emples. v. Mass Gen. Brigham Inc.,* 573 F. Supp. 3d 412, 433 (D. Mass. 2021) ("Under the circumstances, it was reasonable for MGB to conclude that unvaccinated employees—who are more likely to become infected—pose a direct threat to patients and others. '[T]his court should not second-guess the hospital's judgment in matters of patient safety.'"); *Creger v. United Launch All. LLC,* 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying injunctive relief based on the undue hardship posed by the added cost and administrative burden of providing weekly testing, and the risk of employee hospitalizations and deaths); *O'Hailpin v. Hawaiian Airlines, Inc.,* 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (recognizing undue hardship from increased risk of COVID-19 that unvaccinated employees pose to other employees and passengers); *Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606, 2022 U.S. Dist. LEXIS 233789, at *31 (M.D. Fla. Dec. 30, 2022) (recognizing undue hardship in non-healthcare setting where providing accommodation "might compel other employers to accept less favorable working conditions by forcing them to rehearse and perform for extended periods of time in close proximity to individuals who were at higher risk of transmitting COVID-19"). While Plaintiffs contend Defendants needed to accommodate those beliefs, the Defendants contend that they individually evaluated each Class Member's accommodation request and only denied those that they determined posed an undue burden.

Second given the novel nature of these claims, litigating this case through trial would be complex, costly, and long. By reaching a favorable settlement before dispositive motions or trial, the Parties seek to avoid significant expense and delay, and instead ensure recovery for Plaintiffs. Even though the Parties have already spent significant time, effort, and expense in litigating this matter, continued litigation, without settlement, would result in additional unnecessary expense

11

and delay. For instance, compiling evidence to support or refute factual and legal issues at trial would consume tremendous amounts of time and resources for both sides, as well as require substantial judicial resources to adjudicate the Parties' disputes. A trial to establish liability and set damages, even on a representative basis, would be costly and further delay closure.

Third, any judgment would likely be appealed, thereby extending the duration of litigation. This settlement, however, makes monetary relief available to Plaintiffs in an expeditious and efficient manner. Thus, this factor likewise favors approval.

3. *The Likelihood of Success on the Merits*

Although Plaintiffs believe their case is strong, there is still considerable risk as to liability and damages. A number of similar cases have already been dismissed on motions to dismiss. A trial on the merits would involve significant risks to Plaintiffs due to the fact-intensive issues at hand. Furthermore, throughout this litigation, Defendants have proffered several defenses, which pose as substantial risks and uncertainty to both liability and damages. Thus, this factor also strongly favors the proposed settlement.

4. *Opinion of Counsel*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Regions*, 2016 WL 8290089, at *6 (*citing Thacker*, 695 F. Supp. 2d at 532-33)); *see also Vukovich*, 720 F.2d 909 at 922–23 ("[T]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.) Given Class Counsel's experience and Plaintiffs' intimate knowledge of the legal and factual issues in this case, Class Counsel and Plaintiffs' recommendation is entitled to deference. *See In re Regions*, 2016 WL 8290089, at *6. Thus, this factor favors approving the Settlement. In fact,

Class Counsel believes, based on their evaluation of the claims and defenses, litigation strategies, possible appealable issues, and overall representation of their clients that the Settlement Agreement is fair and reasonable.

Similarly, Defendants' counsel, who are experienced in litigation and resolution of class actions, had sufficient information to evaluate the strength of Plaintiffs' claims. Thus, all Parties and their counsel agree that Plaintiffs' counsel and Defendants' counsel have engaged in an independent evaluation of the strengths and weakness of their respective claims and defenses and believe that entering into this settlement is in the best interests of the Plaintiffs, the class, and the Defendants. Thus, this factor favors approval of the settlement.

5. *Reaction of Absent Class Members*

To date, notice of the settlement has not been sent out. But all Class Members will have the right to opt out of the settlement at any time during the opt-out period. Any Class Member who elects to opt out of settlement (i) will not be bound by any orders or judgments entered in this action; (ii) will have no right to relief under, or be affected by, the Settlement; (iii) will not gain any rights because of this settlement; and (iv) will have no right to the benefits of any aspect of this Settlement. (Ex. 1, Settlement Agreement, Art.VI)

6. *Public Interest*

The law favors the settlement of class action litigation. *See UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"). "This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of prolonged litigation." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014). Thus, the public's interest in judicial economy and amicable dispute resolution favors settlement on the terms voluntarily agreed to by the Parties.

Here, the Parties have voluntarily and amicably resolved their dispute via a settlement that all Parties have agreed to. Thus, this factor also favors approval.

In this case, the factors the Court is to consider in determining whether a settlement is "fair and reasonable" favor approval of the settlement. Thus, the Parties ask the Court to approve the settlement and enter an order of dismissal with prejudice.

### B. CONCLUSION

Plaintiffs and Defendants agree that the Settlement, the terms of which are set forth in **Exhibit 1,** is fair and reasonable resolution of a bona fide dispute. Thus, the Parties jointly request that this Court preliminarily approve the Settlement, authorize notice to the Class members, and enter the proposed Preliminary Approval Order attached hereto as **Exhibit 2.**

**WHEREFORE,** Plaintiffs and Defendants move this Court for entry of an Order (1) **GRANTING** this Motion; (2) **PRELIMINARILY APPROVING** the settlement of this matter; and **AUTHORIZING DISSEMINATION OF NOTICE TO THE CLASS**

Respectfully submitted,

By: /s/ Noah S. Hurwitz
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

James A. Thomas (P80931)
JIMMY THOMAS LAW
Attorneys for Plaintiffs
1925 Breton Rd SE Ste 250

By: /s/ Allan S. Rubin
Maurice G. Jenkins (P33083)
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
JACKSON LEWIS P.C.
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
maurice.jenkins@jacksonlewis.com
allan.rubin@jacksonlewis.com
elyse.culberson@jacksonlewis.com
Attorneys for Defendants

Patricia Pryor
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050

Grand Rapids, MI 49506  
(616) 747-1188  
jimmy@jimmythomaslaw.com

Patricia.pryor@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that on April 24, 2023, he or his assistant did file this document using the CM/ECF system which will send notice of its filing to all counsel of record.

/s/  Allan S. Rubin  
Allan S. Rubin (P44420)