# **<u>EXHIBIT 1</u>**

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN ALBRIGHT, et al.
on behalf of themselves and
others similarly situated,

       Plaintiffs,

Case No. 1-22:cv-00638-JMB-SJB
Hon: Jane M. Beckering

v.

ASCENSION MICHIGAN, et al.

       Defendants.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

James A. Thomas (P80931)
JIMMY THOMAS LAW
Attorneys for Plaintiffs
1925 Breton Rd SE Ste 250
Grand Rapids, MI 49506
(616) 747-1188
jimmy@jimmythomaslaw.com

Maurice G. Jenkins (P33083)
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
JACKSON LEWIS P.C.
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
maurice.jenkins@jacksonlewis.com
allan.rubin@jacksonlewis.com
elyse.culberson@jacksonlewis.com
Attorneys for Defendants

Patricia Pryor
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050
Patricia.pryor@jacksonlewis.com

---

## SETTLEMENT AGREEMENT AND RELEASE

This settlement agreement is made and entered into by and between Plaintiffs (as defined

below), individually and on behalf of all other similarly situated persons, and Ascension (as

1

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

defined below), subject to the approval of the court. Accordingly, the Parties agree to the following:

## ARTICLE I
### *Recitals*

a.    Plaintiffs filed the Action alleging claims of religious discrimination, accommodation, and retaliation under both federal and state law.

b.    Subsequently, Plaintiffs filed both a First and Second Amended Complaint and Defendants filed a Motion to Dismiss for Failure to State a Claim. After execution of this Settlement Agreement Plaintiff will file the Third Amended Complaint.

c.    On January 13, 2023, the Parties appeared before U.S. Magistrate Judge Berens for a settlement conference. Although a settlement was not reached at the settlement conference, the parties continued to discuss the prospect of settlement based on settlement terms and concepts first discussed during the settlement conference.

d.    Since the Settlement Conference, the Parties have continued to engage in numerous settlement negotiations. Over the course of these negotiations, the Parties engaged in extensive discussions regarding their respective positions. The parties also informally exchanged information about the strengths and weaknesses of the parties' respective positions.

e.    Based on the status of the Parties' settlement discussions the Parties asked the court to hold in abeyance its decision on the Defendants' Motion to Dismiss and to extend the date that Defendants would be required to answer the Second Amended Complaint.

f.    As a result of the significant research, motion practice, and negotiations regarding the strengths of their respective positions, the Parties have reached a proposed class action settlement through arm's length direct negotiations.

2

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

g.      For this settlement to be binding, the parties will jointly seek approval of the

settlement as provided for in Rule 23(e) of the Federal Rules of Civil Procedure. The settlement

will only be final and binding after final approval by the Court and the expiration of all appeals. If

final approval is not obtained, the Parties and this Action will return to their status as of March 9,

2023.

h.      By entering into this settlement, Ascension does not intend, nor should it be

deemed, to have admitted any liability or wrongdoing by it, or any of the Released Parties (as

defined below). Ascension, on its own behalf and on behalf of the Released Parties, specifically

denies any liability or wrongdoing of any kind whatsoever for the claims alleged in the Action,

and further denies that, for any purpose other than settling the Action, the Action is appropriate for

class treatment. With respect to Plaintiffs' claims, Ascension contends, among other things, that it

has complied with all applicable state, federal, and local laws affecting Plaintiffs and the other

Class Members and neither Plaintiffs nor any Class Members are entitled to any recovery

whatsoever.

i.      It is the desire of the Parties to settle fully, finally, and forever, compromise, and

discharge all Released Claims. To achieve a full and complete release of all Released Claims in

favor of Ascension and the other Released Parties, each Class Member acknowledges that this

Settlement is intended to resolve all Released Claims against all Released Parties as of the date of

the Court's Final Order and Judgment and that it is the intention of the Parties that this Settlement

will constitute a full, final, and complete settlement and release of all Released Parties with respect

to all Released Claims.

j.      Class Counsel represents that they have conducted a thorough investigation into the

facts of the Action and have diligently pursued an investigation of Class Members' claims against

3

Ascension, and the Released Parties. Based on their independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class considering all known facts and circumstances, including the risk of significant delay, the risk of dismissal of the claims, the potential that class certification may not be granted, the defenses asserted by Defendants, and the existence of many potential appellate issues. Ascension, and its counsel also agree that the Settlement is fair and in the best interest of the Settlement Class.

## ARTICLE II
### *Definitions*

The following terms shall have the meaning ascribed to them below:

a.    "Action" means the lawsuit captioned above, pending in the United Stated District Court, Western District of Michigan, Case No. 1-22:cv-00638-JMB-SJB.

b.    "Ascension" means all Defendants in the Action, either as now pled or as named in the Third Amended Complaint, including Ascension Health Alliance, and all their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy. To avoid any doubt, it is the Parties' intention that the term Ascension as used herein is intended to include each and every Ascension Health Alliance affiliate or related entity that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy.

c.    "Associate" means a current or former employee of Ascension.

d.    "Average Weekly Salary" means the amount to be calculated for each State Subclass by multiplying the average hourly wage rate as of November 12, 2021 for Class Members in the State Subclass who submit Valid Claims by the average full-time equivalent ("FTE") hours for the positions held by those Class Members as of November 12, 2021 in the State Subclass who

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

submit Valid Claims. Ascension's payroll and timekeeping records will be used to calculate the Average Weekly Salary for each State Subclass. The Average Weekly Salary will not include any shift or other premium payment.

        e.    "CAFA" means the Class Action Fairness Act, 28 U.S.C.§ 1711 et seq.

        f.    "CAFA Notice" means a notice sent to the United States Attorney General and the Appropriate State Officials as those terms are defined in 28 U.S.C. § 1715, including serving on the United States Attorney General and the Appropriate State Official(s) items required to be served under 28 U.S.C. §1715(b)(1-8).

        g.    "Claims Administrator" means Rust Consulting, or such other claims administrator as may be mutually agreeable to the Parties.

        h.    "Claim Form" means proof of claim, and release in substantially the form as **Exhibit B**, attached hereto.

        i.    "Claims Deadline" means the date 75 days following the date on which the Claims Administrator first mails Class Notices, Claim Forms, and Exclusion Forms to the Class Members.

        j.    "Claim Weeks" mean the number of full (or percentage of partial) weeks the Administrator determines a Class Member was suspended or removed from Ascension employment due to vaccine non-compliance before they were either recalled by Ascension or obtained other employment. The Claim Weeks for any individual Class Member will not exceed five (5) weeks. The Total Number of Claim Weeks for each State Subclass will be calculated by adding the Claim Weeks that the Claims Administrator determines are valid for each State Subclass Member who submitted a Valid Claim, up to a maximum of five (5) weeks for any State

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

Subclass member. [1]

   k. "Class Counsel" subject to approval of the Court means Noah S. Hurwitz, Grant M. Vlahopoulos, and Kara F. Krause of the law firm Hurwitz Law PLLC and James A. Thomas of the law firm Jimmy Thomas Law.

   l. "Class Members" means all Ascension Associates for whom all of the following apply: (a) the Associate applied for a religious exemption to the COVID-19 Vaccination Policy and has a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) the Associate was denied the requested religious exemption; and (c) the Associate either (i) was suspended or otherwise removed from employment by Ascension in November 2021 or (ii) claims they were forced to leave their employment with Ascension before February 28, 2022, after and as a result of their denied religious exemption to the COVID 19-Vaccination Policy.

   m. "Class Period" means August 1, 2021 through the entry of the Final Order and Judgment by the Court.

   n. "Class Representatives" means the Plaintiffs identified in the Third Amended Complaint as Class Representatives.

   o. "Class Notice" means the Notice of Pendency of Class Action and Proposed Settlement and Hearing Date for Final Approval of Settlement sent to all Class Representatives and Class Members identified in Paragraphs 2(l) and (n) above, in substantially the form attached hereto as **Exhibit A**, and as approved by the Court.

   p. "Court" means the United States District Court, Western District of

---

[1] If three State Subclass members submitted claims and one claimed six Claim Weeks, one claimed five Claim Weeks and one claimed three Claim Weeks, the total number of valid Claim Weeks would be 13 Claims Weeks (5+5+3).

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

Michigan.

q.      Court's "Preliminary Approval Order" means the preliminary order approving the settlement in substantially the form attached hereto as **Exhibit C**, and as approved by the Court.

r.      Court's "Final Order and Judgment" means the Final Order Approving Class Action Settlement as approved by the Court.

s.      "Defendants" means all entities named as defendants in the Second Amended Complaint. The term Defendants also includes any entity subsequently named as a Defendant in the Third Amended Complaint.

t.      "Effective Date" means the first business day when all of the following events have occurred: (i) this Settlement Agreement has been executed on behalf of all Parties, by Class Counsel, and Defendants' Counsel; (ii) the Court has given preliminary approval to the Settlement; (iii) the Class Notice has been sent to the Class Members, providing them with an opportunity to submit a Claim Form, Exclusion Form, or to object to the Settlement; (iv) the Court has held a formal fairness hearing and entered the Court's Final Order and Judgment Dismissing the Action; and (v) if there are written objections filed before the formal fairness hearing which are not later withdrawn, the later of the following events: (A) when the period for filing any appeal, writ or other appellate proceeding opposing the Settlement has elapsed without any appeal, writ or other appellate proceeding having been filed; (B) when any appeal, writ or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or (C) when any appeal, writ or other appellate proceeding has upheld the Court's Final Order and Judgment with no right to pursue further remedies or relief. It is the intention of the Parties that the Settlement shall not become effective until the Court's Final

7

Order and Judgment is completely final, and there is no further recourse by any appellant or objector who seeks to contest the Settlement

       u.      "Exclusion Form" or "Opt-Out" Form means the Exclusion Form in substantially the form attached hereto as **Exhibit D** and as approved by the Court.

       v.      "Net Settlement Fund" means the Total Settlement Fund minus the Settlement Costs.

       w.      "Objector" means a Settlement Class Member who has not requested exclusion from the class but who has, individually or by counsel, submitted an objection to the Settlement before the Objection/Exclusion Deadline. An Objector shall not include any person who does not agree to be bound by the terms of the Settlement if the Settlement is finally approved by the Court over the Objector's objection.

       x.      "Objection/Exclusion Deadline" means the date that is 75 calendar days following the mailing of the Class Notice.

       y.      "Parties" means collectively the Defendants and Plaintiffs, each of whom is a "Party."

       z.      "Plaintiffs" means all Plaintiffs who are named in the Third Amended Complaint.

       aa.      Qualified Settlement Fund ("QSF") means a Qualified Settlement Fund established by the Claims Administrator as described in 26 C.F.R. 1.468B-1("QSF").

       bb.      "Recall" means the day a Class Member received notification from Ascension that the Class Member was eligible to return to work after being suspended for non-compliance with the COVID-19 Vaccination Policy.

8

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

cc.    "Released Claims" means any and all claims, causes of actions, liabilities relating in any way to the adoption, implementation, or application of Ascension's COVID-19 Vaccination Policy, or any other vaccination policy enforced in 2021 or 2022 by Ascension, whether known or unknown, actual or imagined, and/or which arose out of or could have arisen out of the facts alleged in this action, including, but not limited to, any claims under any federal, state, or local law relating to COVID-19 or the COVID-19 vaccine, religious discrimination or accommodation, pregnancy discrimination or accommodation, disability discrimination or accommodation, retaliation, wage or benefit statutes, tort, contract, or other claims in any form or format whatsoever, including any provision for the payment of fines, costs, penalties, punitive, compensatory, liquidated, exemplary, or exculpatory damages, attorney fees or costs from the beginning of time to the effective date of the settlement is finally approved by the Court.

dd.    "Released Parties" collectively means: (i) Ascension; (ii) any Ascension entity's respective past, present, and future parents, subsidiaries, joint ventures, insurers, related entities, and affiliates; (iii) the past, present, and future shareholders, directors, officers, members, managers, agents, employees, attorneys, insurers, predecessors, successors, and assigns of any of the foregoing; and (iv) any individual or entity which could be jointly liable with any of the foregoing.

ee.    "Settlement" means this Settlement Agreement and Release between Plaintiffs and Ascension.

ff.    "Settlement Payment" means Settlement amounts paid by Ascension to Settlement Class Members.

gg.    "Settlement Class Members" or "Settlement Class" means all Class Members who do not timely submit an Exclusion Form. The Settlement Class will be divided into

9

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

State Subclasses as defined below.

hh.    "Settlement Costs" means (a) court approved attorney fees and costs, and (b) the cost of Claims Administration.

ii.    "Settlement Subclass" or "Subclasses" means the following (a) a "Physician" Subclass, (b) a Nurse Subclass, and (c) a Technician Subclass. These are defined as:

i.    The "Physician Subclass" means all Settlement Class Members who were employed by Ascension as either a Physician, Nurse Practitioner, or Physician Assistant as of the date the Class Member last worked for Ascension before November 12, 2021.

ii.    The "Nurse Subclass" means all Settlement Class Members who were employed by Ascension as either a Registered Nurse or Licensed Practical Nurse ("LPN") as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

iii.    The "Technician Subclass" means all Settlement Class Members who were employed by Ascension and are not a member of either the Physician or Nurse Subclass as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

jj.    "State Subclass" means the state specific Settlement Subclass in which a subclass member belongs, including a Physician Subclass, a Nurse Subclass, and Technician Subclass, for each state in which Class Members who make valid claims worked. Accordingly, and as an example, a member of the Physician Subclass who worked in Alabama is a member of the "Alabama Physician Subclass"; a member of the Nurse Subclass who worked in Alabama is a member of the "Alabama Nurse's Subclass"; and a member of the Technician Subclass who worked in Alabama is a member of the "Alabama Technician Subclass."

kk.    "State Subclass Total Settlement Fund" means the Average Weekly Salary for each State Subclass multiplied by the Total Number of Claim Weeks for each State Subclass. By way of example, the Michigan Nurse Subclass Total Settlement Fund for the Michigan Nurse Subclass would be calculated by the following formula: Average Weekly Salary for Michigan

10

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

Nurses who submit Valid Claims x Total Number of Claim Weeks for the Michigan Nurse Subclass Members. An example of the State Subclass calculation follows:

> Michigan Nurse Subclass: If the Average Weekly Salary for Nurses in the Nurse Subclass from Michigan who submit valid claims is $1,000 and there are 100 members of the Michigan Nurse Subclass who submit Valid Claims, and the total number of valid Claim Weeks is 500, then the calculation of the Maximum Settlement Amount for the Michigan Nurses Subclass would be $1,000 x 500 = $500,000.

The same method of calculation would be used for each State Subclass

ll.    "Third Amended Complaint" means the Third Amended Complaint to be filed in the Action, a copy of which is attached hereto as **Exhibit E.**

mm.    "Total Settlement Fund" means the sum of all the State Subclass Total Settlement Funds.

nn.    "Valid Claim" means a timely claim submitted by a Settlement Class Member who has not submitted an Exclusion Form and who the Claims Administrator determines has submitted a valid claim under the administration processes described in Article IV of this Agreement.

### ARTICLE III
### *Terms of Settlement*

a.    *Filing Of a Third Amended Complaint.* For purposes of settlement only, the Parties stipulate to the filing of a Third Amended Complaint which will define a Rule 23 class consisting of Class Members (as defined above) and makes claims against Ascension Health Alliance and all their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 vaccine policy. If the Court does not approve the Settlement, the Parties agree to dismiss the Third Amended Complaint and it shall be void ab initio.

b.    *Class Certification of a Settlement Class.* Solely for purpose of settling this case,

11

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

the Parties stipulate and agree that the requisites for establishing class certification with respect to the Class Members have been and are met. More specifically, for purposes of this Settlement only, the Parties stipulate and agree that:

    i.  The Class is ascertainable and so numerous as to make it impracticable to join all Class Members.

    ii.  Plaintiffs believe there are common questions of law and fact including, but not limited to, whether Defendants complied with applicable laws affecting Plaintiffs and the other Class Members regarding religious discrimination and accommodations.

    iii.  Plaintiffs believe their claims are typical of the claims of the members of the Class.

    iv.  Plaintiffs believes they will fairly and adequately protect the interests of the Class, and that Class Counsel fairly and adequately protect the interests of the Class and that they should be appointed as such.

    v.  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.

    vi.  With respect to the Class, Plaintiffs believe that questions of law and fact common to the members of the Class predominate over any questions affecting any individual member in such Class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

If this Settlement does not become final, this stipulation to class certification shall be null and void, and it shall not be admissible for any purpose, nor shall it be considered in connection with, whether class certification would be appropriate in a non-settlement context. Defendants deny that class action treatment is proper or appropriate other than for purposes of this Settlement.

    c.  *Rule 23 Settlement Class.* For purposes of settlement only, a Rule 23(e) settlement class will be certified consisting of all Class Members.

    d.  *Claims Made Settlement.* The Settlement is a claims-made Settlement. To receive

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

a Settlement Payment from the Net Settlement Fund, a Class Member must timely submit a Valid Claim.

      e.     *Settlement Funds.* The Total Settlement Fund will be calculated by adding together each State Subclass Total Settlement Fund as described in Article II(mm). Settlement Costs will then be subtracted and paid. The amount remaining is the Net Settlement Fund.

*Settlement Payments.* The Net Settlement Fund will be proportionally divided between the State Subclasses based on the proportion of that State Subclass's Total Settlement Fund of the Total Settlement Fund. Each Settlement Class Member who submits a Valid Claim will receive a proportionate share of the Net Settlement Fund for the State Subclass in which they are a member. The proportionate share will be determined by the Claims Administrator taking into account the FTE and  number of Claim Weeks for the Settlement Class Member, up to a maximum of five weeks. From each individual settlement payment, the Claims Administrator will withhold and pay any payroll or other employee taxes due on the payment.

      f.     *Funding the Settlement.* Ascension will, within thirty days after the Effective Date transmit to the Claims Administrator the Total Settlement Fund.

      g.     *No Additional Benefits.* All Settlement Payments to Class Members shall be considered income to such Class Members solely in the year in which such payments are received by them. It is expressly understood and agreed that the receipt of such Settlement Awards will not entitle any Class Member to additional compensation or benefits under any Ascension bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Settlement, nor will it entitle any Class Member to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation benefits. It is the intent of this Settlement that the Settlement Payments provided for in this Agreement are the sole payments to be made by

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

Ascension to Class Members in connection with this Settlement, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement.

### Article IV
### *Notice and Claims Administration*

a.     *Class List.* Ascension will provide the last known address, last known personal email address, and last known telephone number of potential Class Members to the Claims Administrator within 14-days after preliminary approval. The Class List will be in a spreadsheet that will contain the potential Class Member's name, last-known address, email address, telephone number, and social security number. The Class List will be provided to Class Counsel and shall be used only to confirm class membership and respond to inquiries initiated by Class Members and for no other purpose. Class Counsel agrees to maintain the Class List in a confidential manner and to make no use of it, other than as provided for by this paragraph.  The spreadsheet will be based on Ascension's payroll and personnel records, and in a format reasonably acceptable to the Claims Administrator. Ascension agrees to consult with the Claims Administrator prior to the production date to ensure that the format will be acceptable to the Claims Administrator. The Claims Administrator will run a check of the potential Class Members' last-known addresses against those on file with the U.S. Postal Service's National Change of Address list. Under no circumstances will Ascension be required to update addresses or undertake any investigation to locate Class Members. However, the Claims Administrator will update the Class Member's last known address through the National Change of Address program certified by the USPS and other standard skip trace methods, if necessary.

14

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

b.      *Notice*. The Claims Administrator is responsible for mailing and emailing the Class Notice, Claim Form, and the Exclusion Form to Class Members. The Class Notice, Claim Form and Exclusion Form will be mailed and emailed by the Claims Administrator within 30 days after the Claims Administrator receives the class list from Ascension, or 45 days after preliminary approval, whichever is later. Notice to Class Members will be provided by U.S. Mail and email. Class Notices returned to the Claims Administrator as non-delivered shall be resent to the forwarding address, if any, on the returned envelope. If there is no forwarding address, the Claims Administrator will do one computer search for a new address using the Class Member's social security number. Said search will be performed by the Claims Administrator one time for each Class Notice returned without a forwarding address per Class Member. Upon completion of these steps by the Claims Administrator, Ascension and the Claims Administrator shall be deemed to have satisfied their obligations to provide the Class Notice, Claim Form, and Exclusion Form to the affected Class Member, and, regardless of whether the affected Class Member actually receives the Class Notice, Claim Form, and Exclusion Forms, the affected Class Member will remain a member of the Settlement Class and will be bound by all the terms of the Settlement and the Court's Final Order and Judgment.

c.      *Claim Forms*. In order to receive a settlement payment, a Settlement Class Member must return the Claim Form containing all of the requested information, including: name, social security number, position, employer, state last worked in before November 12, 2021, and attest whether they requested a religious exemption from the COVID-19 vaccine policy, whether their stated religious belief is sincerely held, whether they were suspended or forced to leave Ascension employment because their request for religious exemption was denied, and the number of weeks they were suspended or removed from Ascension employment due to vaccine non-compliance

15

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

before they were either recalled by Ascension or obtained other employment. Class Members will have 75 calendar days in which to postmark, email, or submit via the Claims Administrator website any Claim Forms, Exclusion Forms, or objections to the Settlement.

d. *Return of Forms.* The Claims Administrator will be responsible for collecting Claim Forms, Exclusion Forms, and objections, and determining Valid Claims. The Claims Administrator will report, at least bi-weekly, to the Class Counsel and Counsel for the Defendants the number of Valid Claims, Exclusion Forms, and objections received by the Claims Administrator. Class Counsel will provide the Court, at least 7 calendar days before the final fairness hearing, a declaration by the Claims Administrator of due diligence and proof of mailing regarding the mailing of the Class Notice, Claim Form, and Exclusion Forms.

e. *Sub-Classes.* The Claims Administrator will report to Class Counsel and Counsel for the Defendants the Settlement Class Members who submit Valid Claims in each of the various State Subclasses. Such reporting will include the number of Valid Claims received by the Claims Administrator for the Physician Subclass, the Nurse Subclass, and the Technician Subclass on a state-by state basis at least bi-weekly.

f. *Adjudication of Claims.* The Claims Administrator is responsible for adjudicating the validity of claims received and the number of Claim Weeks attributable to each Settlement Class Member, up to a maximum of 5 weeks for any Settlement Class Member. To do so, the Claims Administrator will compare information submitted on the Claim Forms received by the Claims Administrator to records provided by Ascension to determine whether the Claim Form is valid and the number of valid Claim Weeks for the Settlement Class Member. If the information on the Claim Form establishes that the individual is a Class Member and the information is reasonably consistent with the information provided to the Claims Administrator by Ascension,

16

the claim will be considered a Valid Claim. If the information submitted on the Claim Form is contradicted by the information provided to the Claims Administrator by Ascension or does not establish that the individual is a Class Member, then the Claims Administrator will notify the Parties of the receipt of a potential invalid claim or dispute about number of Claim Weeks and whether the Claims Administrator resolved the discrepancy independently. If the Claims Administrator advises the Parties that it cannot resolve the discrepancy, the Parties will have three business days to submit additional information to the Claims Administrator to help it resolve the discrepancy. Thereafter, the Claims Administrator will adjudicate the claim and the determination of Claims Administrator shall be binding, but in making its determination, the records of Ascension will be presumed valid, unless the Class Member or Class Counsel submits records that reasonably contradict Ascension's records. If a claim submitted by a Class Member is deemed invalid, the Claim Administrator will notify the Class Member that their claim was treated as invalid and thereafter, the Class Member will have 7-days to submit an Exclusion Form to the Claims Administrator. If they do not timely file an Exclusion Form with the Claims Administrator, they will be bound under the terms of this Settlement, including the Release.

g.      *Settlement Calculations.* The Claims Administrator shall calculate and distribute the Settlement Payments to Class Members from the Net Settlement Fund in accordance with the terms of this Settlement.

h.      *Settlement Payments.* The Claims Administrator will establish and maintain a QSF from which all Settlement Payments will be made. This includes distribution of attorney fees and costs awarded to Class Counsel, distributing payments related to the Claims Administration process, distributing settlement checks to Class Members, and timely calculating, filing, and dispersing, any applicable tax payments for all appropriate taxes to be paid under the terms of this

17

Settlement Agreement, including any amendments or modifications required thereto. The Claims Administrator may require Class Members to submit IRS Forms W-9 and/or IRS Forms W-4 or their substitutes in the Clams Administrator's sole discretion if the Claims Administrator determines that submission of such tax forms are necessary to process Settlement Payments. If so, any required tax forms will be included with the Class Notice and/or incorporated into the Claim Form prior to mailing.

      i.     *Settlement Checks.* The Claims Administrator will issue settlement checks to Settlement Class Members who submitted Valid Claims. Settlement Class Members will have 60 days after their settlement checks are mailed to cash their settlement checks. Settlement checks not cashed within 60 days shall be void and any funds remaining in the QSF shall be returned to Ascension. However, the Release provided to Ascension under this Settlement Agreement shall remain valid.

      j.     *Additional Employment Taxes.* Any additional employer payroll taxes will be paid by Ascension through the QSF and outside the Total Settlement Fund.

      k.     *Residual.* Any residual funds remaining in the QSF after the payment of all valid Settlement Class Members' claims and Settlement costs shall be returned to Ascension.

### Article V
### Attorney Fees and Costs

Subject to final approval or modification by the Court, the Parties agree that up to one-third (33.33%) of the Total Settlement Fund will be paid to Class Counsel for all current and future attorneys' fees, and all actual costs. Ascension will not object to Class Counsel's application for attorneys' fees and costs up to the maximum amount set forth above. The amount set forth above will cover all work performed and all fees and costs incurred to date, and all work to be performed and all fees and costs to be incurred in connection with the approval by the Court of this Settlement,

18

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

administration of the Settlement, obtaining judgment in the Action, and any challenges, writs, or appeals to the Settlement. Notwithstanding the forgoing, the Settlement is not contingent on the approval of any specific award of attorney fees or costs.

The attorneys' fees and costs described above shall constitute full satisfaction of Ascension's obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in this Action on behalf of Plaintiffs and/or any Settlement Class Member, and shall relieve Ascension from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of Plaintiffs or any Settlement Class Member. In no event will the award of attorney fees and costs result in Ascension having to pay more than the Total Settlement Fund.

The attorneys' fees and costs approved by the Court will be distributed to Class Counsel by the Claims Administrator within 45 calendar days after the Effective Date.

## ARTICLE VI
### Exclusion from the Class

Class Members will have 75 calendar days from the mailing date of the Class Notice within which to postmark, email, or submit via the Claims Administrator website their Exclusion Form to the Claims Administrator. the Claims Administrator will not send a reminder notice to Class Members about the notice or exclusion process. Each Exclusion Form must be signed by the individual on whose behalf it is submitted. No request for Exclusion will be honored if postmarked, emailed, or uploaded to the Claims Administrators website after the 75 calendar-day period. Any Class Member who elects to file an Exclusion Form (i) shall not be bound by any orders or judgments entered in this Action; (ii) shall not be entitled to relief under, or be affected by, the Settlement; (iii) shall not gain any rights by virtue of this Settlement; and (iv) shall not be entitled to the benefits of any aspect of this Settlement.

19

Class Members are responsible to maintain a photocopy of the Exclusion Form and record of proof of mailing. Unless a timely and valid Exclusion Form is submitted consistent with the terms of this Settlement, the Class Member will be bound by this Settlement and the Settlement Class release. The Parties agree to meet and confer if the intent of a particular request for Exclusion is ambiguous and may mutually agree to accept such request for Exclusion for good cause shown.

If the total number of Class Members who file Exclusion Forms from the Settlement is more than 200 individuals, Ascension will have the option at its discretion of rejecting the Settlement in its entirety; provided however, that such option must be exercised within 3 business days after receiving notice from the Claims Administrator after the Objection/Exclusion Deadline as to how many Class Members have requested exclusion. If Ascension rejects this Settlement the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. Additionally, the Third Amended Complaint will be dismissed and considered void ab initio and the Second Amended Complaint will be considered the operative complaint.

## ARTICLE VII
### Objection Process

A Class Member may object to this Settlement. But a Class Member who objects to the Settlement may not file an Exclusion Form (i.e., opt-out of the Settlement) and a person who has opted out of the Settlement may not object to the Settlement. In other words, for an objection to be valid, the Objector must agree to be bound by the Settlement if the Settlement becomes final.

For a Class Member to object to the Settlement, a Class Member must file with the Court no later than the Objection Deadline a notice of objection, signed by the Class Member or his or her counsel, stating the Class Member's: (i) name; (ii) current address; (iii) telephone number; (iv) dates of employment and location worked; (v) last 4-digits of his or her social security number;

20

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

(vi) identify whether the objection applies to the individual Objector, a subset of the Settlement Class or to the Settlement Class as a whole; and (vii) state the basis of the objection with specificity. The Class Member objecting to the settlement must also serve a copy of his or her notice of objection on counsel for the Parties and the Claims Administrator by the Objection Deadline. The postmark date of the filing and service shall be deemed the exclusive means for determining that the notice of objection is timely. The Claims Administrator will not send any reminder notices to Class Members about the objection process. Class Members who fail to make objections in the manner specified above shall be deemed to have waived any objections and will be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. Class Members who file and serve timely notices of objection will have a right to appear at the Court's hearing to provide final approval of the Settlement to have their objections heard by the Court. At no time will any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Court's Final Order and Judgment. Class Counsel will not represent any Class Members with respect to any such objections to this Settlement.

If the total number of Class Members who object to the Settlement is more than 50 individuals, Ascension will have the option at its discretion of rejecting the Settlement in its entirety; provided however, that such option must be exercised within three (3) business days after receiving notice from the Claims Administrator after the Objection/Exclusion Deadline as to how many Class Members have requested exclusion. If Ascension rejects this Settlement the Parties will be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties will proceed in all respects as if this Agreement had not been executed. The Third Amended Complaint will be dismissed and deemed void ab initio and the Second

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

Amended Complaint will be considered the operative complaint.

## ARTICLE VIII
### Release of Claims

Upon final approval by the Court of this Settlement, and except as to such rights or claims as may be created by this Settlement, each Settlement Class Member fully and finally releases and discharges Ascension, and all Released Parties for and from all Released Claims. In addition, as of the date of entry of the Final Order and Judgment, each Settlement Class Member will be forever barred and enjoined from instituting any action or proceeding, accepting damages, or obtaining relief against Ascension and any Released Party for any acts or omissions relating to the Released Claims. The Notice mailed to the Settlement Class will specifically set forth the claims being released.

## ARTICLE IX
### Nullification of Settlement Agreement

If (i) the Court does not enter any order required as specified herein; (ii) the Court does not finally approve the Settlement as provided herein; (iii) the Court does not enter the Settlement Order and Judgment as provided herein which become final as a result of the occurrence of the Effective Date; or (iv) the Settlement does not become final for any other reason, including Ascension's rejection of the Settlement for the reasons described in Articles VI and VII above, this Settlement shall be null and void *ab initio* and any order of judgment entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by agreement of the Parties. In such case, the Parties will be returned to their respective statuses as of the date immediately prior to the execution of this Settlement, and the Parties shall proceed in all respects as if this Settlement had not been executed. Additionally, the Third Amended Complaint will be dismissed and considered void ab initio and the Second Amended Complaint will be considered the operative

22

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

complaint and Class Counsel shall destroy the Class List and certify its destruction to Defense Counsel. Neither this Settlement, nor the Third Amended Complaint will be used in evidence or argument in any other aspect of this Action or any other litigation. In the event an appeal is filed from the Settlement Order and Judgment, or any other appellate review is sought before the Effective Date, administration of the Settlement will be stayed pending final resolution of the appeal or other appellate review.

### ARTICLE X
### Duties of the Parties Prior to Court Approval

Within 21 calendar days from execution of this Settlement, Plaintiffs' Counsel will file a Motion for Preliminary Approval of Class Action Settlement, submit this Settlement, and request a determination by the Court as to the Settlement's fairness, adequacy, and reasonableness. In so doing, Class Counsel will apply to the Court for the entry of the Preliminary Approval Order substantially in the following form and as attached as **Exhibit C** which will ask the court to do the following:

a.      Schedule a fairness hearing on whether the proposed Settlement, including payment of attorneys' fees and costs, and costs of administration, should be finally approved as fair, reasonable, and adequate as to the members of the Class;

b.      Certify the Class, Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel for purposes of the Settlement;

c.      Approve as to form and content the proposed Claim Form attached as **Exhibit B;**

d.      Approve as to form and content the proposed Class Notices attached as **Exhibits A;**

e.      Approve as to form and content the proposed Exclusion Form attached as **Exhibit D;**

23

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

       f.      Approve the manner and method for Class Members to request exclusion from the Settlement as contained in this Settlement Agreement and within the Class Notice and Exclusion Forms;

       g.      Direct the mailing of the Class Notice, Claim Forms, and the Exclusion Forms by first class mail to the Class Members;

       h.      Preliminarily approve the Settlement subject only to the objections of Class Members and final review by the Court;

       i.      Permit the filing of the Third Amended Complaint in the form attached hereto as **Exhibit E**; and

       j.      Enjoin Plaintiffs and all Class Members from filing or prosecuting any other cases, claims, suits, or administrative proceedings (including filing claims with any state or local agency or department) regarding claims released by the Settlement unless and until such Class Members have filed valid Exclusion Forms with the Claims Administrator and the time for filing exclusions with the Claims Administrator has elapsed.

       k.      To carry out the Settlement, the Parties agree all formal, informal discovery, and motion practice, will be stayed pending Court approval of the Settlement. The Parties also agree that all Court deadlines be continued pending preliminary approval of the Settlement.

## ARTICLE XI
### Duties of the Parties After Court Approval

Following final approval by the Court of the Settlement provided for in this Settlement, Class Counsel will submit a proposed Court's Final Order and Judgment:

       a.      Approving the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions.

       b.      Approving Class Counsel's application for an award of attorneys' fees and

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

costs not to exceed the maximum amount set forth herein; and

c.      Entering judgment of the Action on the merits, and permanently barring and enjoining all members of the Settlement Class from prosecuting against the Released Parties any individual or class claims released herein pursuant to Article VIII above, upon satisfaction of all payments and obligations under this Settlement.

d.      The Class Counsel agrees to return all the Released Parties' company and employee documents, lists, and electronic data in all forms and formats (originals and copies) within 21 calendar days from the Effective Date.

### ARTICLE XII
### Parties' Authority

The signatories hereto represent that they are fully authorized to enter into this Settlement and bind the Parties hereto to the terms and conditions thereof.

### ARTICLE XIII
### *Mutual Cooperation*

The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including, but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of this Settlement. The Parties to this Settlement will use their reasonable best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement and the terms set forth herein. As soon as practicable after execution of this Settlement, Class Counsel will, with the assistance and cooperation of Ascension and its counsel, take all necessary steps to secure the Court's final approval of this Settlement.

### ARTICLE XIV
### *No Prior Assignments*

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

The Parties and their respective counsel represent, covenant and warrant that they have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

## ARTICLE XV
### *No Admission*

Nothing contained herein, nor the consummation of Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Ascension, or any of the Released Parties. Each of the Parties hereto has entered into this Settlement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

## ARTICLE XVI
### *Enforcement Actions*

If one or more of the Parties to this Settlement institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights or obligations under this Settlement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties' reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions. This agreement shall be enforced only in United States District Court for the Western District of Michigan.

## ARTICLE XVII
### *CAFA Notice*

Within 10 days after filing the proposed Settlement with the Court, Defendants shall serve or cause to be served through the Claims Administrator, a CAFA Notice that complies with the

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

requirements of 28 U.S.C. §1715(b). Service of the CAFA Notice will be on the Appropriate Federal and State Official(s) as defined by 28 U.S.C. §1715(a). No order granting Final Approval of the Settlement shall issue earlier than 90 days after the date that the CAFA Notice is served on the Appropriate Federal and State Officials as required by 28 U.S.C. §1715(d). A proof of service of the Service of the CAFA Notice shall be filed with the Court following service of the CAFA Notice in accordance with this provision of the Settlement.

## ARTICLE XVIII
### *Miscellaneous Provisions*

    *a.*    *Notice.* Unless otherwise specifically provided herein, all notices, demands, or other communications given under this agreement shall be in writing and will be deemed to have been duly given as of the first business day after mailing by overnight courier with confirmed delivery, addressed as follows:

To Plaintiffs and the Settlement Class:

Noah S. Hurwitz
Grant M. Vlahopoulos
Kara F. Krause
HURWITZ LAW PLLC
Attorneys for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

and

James A. Thomas
JIMMY THOMAS LAW
Attorneys for Plaintiffs
1925 Breton Rd SE Ste 250
Grand Rapids, MI 49506
(616) 747-1188
jimmy@jimmythomaslaw.com

27

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

To Ascension:

Maurice G. Jenkins (P33083)
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
JACKSON LEWIS P.C.
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
maurice.jenkins@jacksonlewis.com
allan.rubin@jacksonlewis.com
elyse.culberson@jacksonlewis.com

And

Scott Carroll
Patricia Pryor
Jackson Lewis P.C.
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050
Patricia.pryor@jacksonlewis.com

      b.     *Construction.* The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arm's-length negotiations between the Parties, and this Settlement shall not be construed in favor of or against any Party because of the extent to which any Party or his, her or its counsel participated in the drafting of this Settlement.

      c.     *Titles and Captions.* Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement or any provision of it. Each term of this Settlement, including the recital paragraphs are intended to be contractual.

      d.     *Modification.* This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties hereto and approved by the Court. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

e.    *Integration Clause.* This Settlement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. No rights under this Settlement may be waived except in writing.

f.    *Assignment.* This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns; provided, however, that a Party's rights and obligations under this agreement may not be assigned or delegated without the express prior written consent of the other Parties.

g.    *Signatories and Signatures.* It is agreed that because the Class Members are so numerous, it is impossible or impractical to have each Class Member execute this Settlement. The Notice will advise all Class Members of the binding nature of the release, and the release shall have the same force and effect as if this Settlement were executed by each Settlement Class Member.

This Settlement may be executed in counterparts and by electronic signatures, (including such signature tools like DocuSign) and when each party has signed and delivered at least one such counterpart, each counterpart, including email and PDF versions, shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Settlement binding upon and effective as to all Parties.

h.    *Choice of Law.* This agreement is subject to the laws of the State of Michigan without regard to its choice of law provisions.

i.    *Public Comment.* Class Counsel will not make any public disclosure of any kind in any medium regarding the facts underlying or terms of the Settlement, except for the filing of

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

pleadings and declarations with the Court in support of preliminary and final approval of the Settlement until the Effective Date. Class Counsel will not have any communications with the media about the Settlement. Class Counsel agrees that it will not publicize or use, in any fashion, the existence of, the facts underlying, the settlement, or the settlement terms reached in this dispute for advertising purposes of any kind. If this provision is found to be illegal or unenforceable, this provision, Article XVIII(i) shall be severed, and the remaining agreement shall be enforceable.

     *j.*     Ascension will not take any adverse action against any current employee because he/she is eligible to participate or does participate in the Settlement. The Parties also will not discourage participation in this Settlement Agreement or encourage objections or opt-outs. If requested, the Parties will state only that Ascension and Class Counsel encourage Settlement Class Members to submit a Claim Form if they wish to receive a Settlement Payment.

<div align="center">THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK</div>

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this Settlement as of the date(s) set forth below:

| For Plaintiffs and the Class Members | For Ascension |
|---|---|
| *signature* | |
| Class Representative | Audra Pratt |
| Dated: 04 / 24 / 2023 , 2023 | Senior Vice President Human Resources Operations & Nursing Organizational Effectiveness |
| | Dated: _____, 2023 |
| *signature* Noah Hurwitz | |
| By One of Class Counsel | By One of the Defense Counsel |
| Dated: April 24 , 2023 | Dated: |

4859-3616-2649, v. 8

31

Doc ID: 330ebbe2929c8ac1f1f8943cc20a37e40ca14957

**✖ Dropbox** Sign                                    Audit trail

| | |
|---|---|
| **Title** | 2024.04.24 Ascension National Settlement Agreement.pdf |
| **File name** | 2024.04.24%20Asce...t%20Agreement.pdf |
| **Document ID** | 330ebbe2929c8ac1f1f8943cc20a37e40ca14957 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

This document was requested from app.clio.com

## Document History

| | | |
|---|---|---|
| ⌒⟳ **SENT** | 04 / 24 / 2023 13:53:33 UTC | Sent for signature to Laurie O&#39;Meara (turtletalk@comcast.net) from noah@hurwitzlaw.com IP: 174.211.32.238 |
| ◉ **VIEWED** | 04 / 24 / 2023 14:24:37 UTC | Viewed by Laurie O&#39;Meara (turtletalk@comcast.net) IP: 174.240.112.163 |
| ⟝ **SIGNED** | 04 / 24 / 2023 14:27:05 UTC | Signed by Laurie O&#39;Meara (turtletalk@comcast.net) IP: 174.240.112.163 |
| ⟨✓ **COMPLETED** | 04 / 24 / 2023 14:27:05 UTC | The document has been completed. |

Powered by ✖ **Dropbox** Sign

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this Settlement as of the date(s) set forth below:

| For Plaintiffs and the Class Members | For Ascension |
|---|---|
| <br>_____<br>Class Representative<br><br>Dated: _____, 2023 | Audra Pratt<br>Senior Vice President Human Resources Operations & Nursing Organizational Effectiveness<br>Dated: April 24, 2023 |
| _____<br>By One of Class Counsel<br>Dated: _____, 2023 | _____<br>By One of the Defense Counsel<br>Dated: 4/24/23 |

# <u>EXHIBIT A</u>

EXHIBIT A
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

KAREN ALBRIGHT, et al.
on behalf of themselves and
others similarly situated,

Plaintiffs,

      vs.

ASCENSION MICHIGAN, et al.

      Defendants.

Case No. 1-22:cv-00638-JMB-SJB

**NOTICE OF PENDENCY OF CLASS ACTION
AND PROPOSED SETTLEMENT
AND HEARING DATE FOR FINAL
APPROVAL OF SETTLEMENT**

Hon. Jane M. Beckering
U.S. Mag. Judge: Salley J. Berens

/

**RELIGIOUS ACCOMMODATION DENIAL PROPOSED SETTLEMENT**
*Must Return attached Claim Form to Received Settlement Payment*

ATTENTION:     ALL ASCENSION[1] ASSOCIATES FOR WHOM ALL OF THE FOLLOWING APPLY: (A) THE ASSOCIATE APPLIED FOR A RELIGIOUS EXEMPTION TO THE COVID-19 VACCINATION POLICY AND HAS A SINCERELY HELD RELIGIOUS BELIEF THAT CONFLICTED WITH THE COVID-19 VACCINATION POLICY; AND (B) THE ASSOCIATE WAS DENIED THE REQUESTED RELIGIOUS EXEMPTION, AND (C) THE ASSOCIATE EITHER (I) WAS SUSPENDED OR OTHERWISE REMOVED FROM EMPLOYMENT BY ASCENSION IN NOVEMBER 2021 OR (II) CLAIMS THEY WERE FORCED TO LEAVE THEIR EMPLOYMENT WITH ASCENSION BEFORE FEBRUARY 28, 2022, AFTER AND AS A RESULT OF THEIR DENIED RELIGIOUS EXEMPTION TO THE COVID 19-VACCINATION POLICY. ("CLASS MEMBER")

PLEASE READ THIS NOTICE CAREFULLY. THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF CLASS ACTION CLAIMS.  IF YOU ARE A CLASS MEMBER, IT CONTAINS IMPORTANT INFORMATION AS TO YOUR RIGHT TO A PAYMENT.

---

[1] The term "Ascension" means Ascension Health Alliance, all Defendants and all of their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy as defined in the Settlement Agreement available at: _____.

THE PURPOSE OF THIS NOTICE IS TO INFORM YOU OF THE TERMS OF THE PROPOSED SETTLEMENT IN THIS MATTER AND TO INFORM YOU OF YOUR RIGHTS AND OPTIONS IN CONNECTION WITH THE PROPOSED SETTLEMENT.

THIS NOTICE ADVISES THAT **IF YOU ARE A CLASS MEMBER AND IF YOU WISH TO BE PART OF THIS SETTLEMENT AND RECEIVE A SETTLEMENT PAYMENT** YOU **MUST RETURN THE ATTACHED CLAIM FORM.**

HOWEVER, **IF YOU ARE A CLASS MEMBER AND IF YOU WISH TO BE EXCLUDED FROM THE CLASS, YOU MUST** SUBMIT A REQUEST FOR EXCLUSION FORM WHICH MUST BE SUBMITTED ONLINE OR POSTMARKED ON OR BEFORE [INSERT DATE]. IF YOU SUBMIT AN EXCLUSION FORM AFTER [INSERT DATE], YOUR EXCLUSION FORM WILL BE REJECTED AND YOU WILL BE BOUND BY THE CLASS RELEASE AND ALL OTHER SETTLEMENT TERMS.

**IF YOU ARE A CLASS MEMBER AND IF YOU CHOOSE TO DO NOTHING, YOU WILL BE BOUND BY THE SETTLEMENT BUT YOU WILL NOT RECEIVE ANY SETTLEMENT PAYMENT.**

Pursuant to the Order of the United States District Court, Western District of Michigan entered on [INSERT DATE], YOU ARE HEREBY ADVISED:  A settlement has been reached between the parties in the above-captioned lawsuit on behalf of all Class Members.

## 1.  WHY HAVE YOU RECEIVED THIS NOTICE?

You have received this Notice because Ascension's records indicate that you were employed by an Ascension entity and may be a Class Member. If you are or were an Ascension associate and all of the following apply, you may be a Class Member: (a) You applied for a religious exemption to the COVID-19 Vaccination Policy and you have a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) You were denied the requested religious exemption, and (c) You either (i) were  suspended or otherwise removed from employment by Ascension in November 2021 or (ii) claim you were forced to leave your employment with Ascension before February 28, 2022, after and as a result of your denied religious exemption to the COVID 19-Vaccination Policy. This Notice is designed to advise you of this settlement and how you can opt out or object to this settlement if you desire to do so.

## 2.  HISTORY OF THE LITIGATION

The Plaintiffs filed a class action lawsuit, individually, and on behalf of themselves and all individuals similarly situated, asserting that Ascension and its various related entities unlawfully denied employees who sought religious exemptions from Ascension's COVID-19 Vaccination Policy under various federal and state laws. Ascension denied these allegations and has contested the allegations made in this case. After engaging in extensive settlement discussions, including attending a settlement conference with the United States Magistrate Judge, the parties negotiated a settlement of this action. The Court has granted preliminary approval of the Settlement and a Settlement Agreement and Release has been signed by the parties.

3. **SUMMARY OF THE PROPOSED SETTLEMENT**

   A. **Settlement Class**

   The Settlement Class includes all Class Members who do not request exclusion from the settlement. The Settlement Class will be divided into State Subclasses based on the state where a Settlement Class Member last worked and the position the Settlement Class Member last held prior to November 12, 2021.

   These include a Physician subclass, a Nurse Subclass, and a Technician Subclass for each state and/or District of Columbia. These Subclasses are defined as:

   ➢ The "Physician Subclass" means all Settlement Class Members who were employed by Ascension as either a Physician, Nurse Practitioner, or Physician Assistant as of the date the Class Member last worked for Ascension before November 12, 2021.

   ➢ The "Nurse Subclass" means all Settlement Class Members who were employed by Ascension as either a Registered Nurse or Licensed Practical Nurse ("LPN") as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

   ➢ The "Technician Subclass" means all Settlement Class Members who were employed by Ascension and are not a member of either the Physician or Nurse Subclass as of the date the Settlement Class Member last worked for Ascension before November 12, 2021.

   These Subclasses will be further broken down into state specific subclasses based on the specific state an employee last worked in for Ascension before November 12, 2021. Accordingly, and by way of example, a member of the Physician Subclass who worked in Alabama is a member of the "Alabama Physician Subclass;" a member of the Nurse Subclass who worked in Alabama is a member of the "Alabama Nurse's Subclass;" and a member of the Technician Subclass who worked in Alabama is a member of the "Alabama Technician Subclass" etc.

   B. **Settlement Formula.**

   If you are a Class Member and submit a Valid Claim, you will be eligible to receive a proportionate share of the Net Settlement Fund for the State Subclass of which you are a part. The State Subclass Total Settlement Fund is determined by multiplying the Average Weekly Salary for the State Subclass by the Total Number of Claim Weeks for the State Subclass.  The Average Weekly Salary for each State Subclass will be calculated by multiplying the average hourly wage rate as of November 12, 2021 for Class Members in the State Subclass who submit Valid Claims by the average full-time equivalent ("FTE") hours for the positions held by those Class Members as of November 12, 2021.For purposes of calculating the Average Weekly Wage, shift or other premium payments shall be excluded. The maximum number of Claim

Weeks is five weeks. The Total Number of Claim Weeks for the State Subclass is calculated by adding the Claim Weeks that the Claims Administrator determines are valid for each State Subclass Member who submitted a Valid Claim, up to a maximum of five (5) weeks for any State Subclass Member.

A Total Settlement Fund will be calculated based on the total value of each State Subclass Total Settlement Fund. From this amount, all approved attorney fees and costs, along with the cost of settlement administration will be paid. The remaining amount shall be the Net Settlement Fund, which will be proportionally divided between the State Subclasses  based on the proportion of that State Subclass's Total Settlement Fund of the Total Settlement Fund. ("State Subclass Net Settlement Fund")

A Settlement Class Member who submits a Valid Claim will receive as a settlement payment, a proportionate share of the State Subclass Net Settlement Fund for the State Subclass in which they are a member. The proportionate share will be determined by the Claims Administrator taking into account the FTE and number of valid Claim Weeks for the Settlement Class Member (not to exceed five weeks). All settlement payments will be subject to tax withholding and settlement checks will only be valid for of 60-days. The Claims Administrator may require submission of IRS Forms or their substitutes to process Settlement Payments and if required, they are included with this notice.

## C.   **Calculations To Be Based on Ascension's Records**.

The amount payable to each Class Member will be calculated based on Defendants' records. Defendants' records will be presumed correct, unless the Class Member provides information that reasonably contradicts Defendant's records. Class Members are required to state the number of Claim Weeks they experienced. The Claims Administrator will review the information and check it against information provided by Defendants. If there is a difference between the Class Member's information and Defendants' information, the Claims Administrator will attempt to resolve the matter informally with the Parties, but if they cannot do so, the Claims Administrator will issue a non-appealable decision resolving the dispute.

## D.   **Release**

Upon final approval by the Court, the Settlement Class and each member of the Settlement Class who has not submitted a timely and valid Exclusion Form, fully and finally releases and discharges (i) Ascension; (ii) Ascension Health Alliance; (iii)  all Defendants in Case No. 1-22-cv-00638-JMB-SJB in the United States District Court for the Eastern District of Michigan; (iv) all related or affiliated entities to any of the foregoing that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy; (v) the respective past, present and future parents, subsidiaries, joint ventures, insurers, related entities and affiliates of any of the foregoing; (vi) the past, present and future shareholders, directors, officers, members, managers, agents, employees, attorneys, insurers, predecessors, successors and assigns of any of the foregoing; and (vii) any individual or entity which could be jointly liable with any of the foregoing (the "Released Parties") from any and all claims, causes of actions, liabilities relating in any way to the adoption, implementation, or application of

Ascension's COVID-19 Vaccination Policy, or any other vaccination policy enforced in 2021 or 2022 by Ascension, whether known or unknown, actual or imagined, and/or which arose out of or could have arisen out of the facts alleged in this action, including, but not limited to, any claims under any federal, state, or local law relating to COVID-19 or the COVID-19 vaccine, religious discrimination or accommodation, pregnancy discrimination or accommodation, disability discrimination or accommodation, retaliation, wage or benefit statutes, tort, contract, or other claims in any form or format whatsoever, including any provision for the payment of fines, costs, penalties, punitive, compensatory, liquidated, exemplary, or exculpatory damages, attorney fees or costs from the beginning of time to the effective date of the settlement is finally approved by the Court. (the "Released Claims").

### E. **Attorneys' Fees**

The attorneys for the class filed in this action, have actively litigated the case and have brought it to resolution. They will request the Court award fees from the Settlement in an amount of 33% of the Total Settlement Fund  The Court will determine the appropriateness of the fees and costs.

### F. **Support for the Settlement**

The Class Representatives, Class Counsel, and Defendants strongly support this Settlement.  This issue has been fully investigated and litigated by Plaintiffs' counsel.  Even if a class could be certified, trial would be lengthy and have risks.  Even if the class won at trial, damages might not exceed the amount of this settlement, and the judgment could be appealed, resulting in further lengthy delays.

### G. **Claims Administrator**

The Claims Administrator will receive a payment for handling the claims administration for this case and its costs. This will be paid from the Total Settlement Fund. Contact information for the claims administrator is: (INSERT).

The claim administrator's web site is: _____(INSERT). On the website, you may make a claim, request exclusion, or serve the Claims Administrator with objections to the Settlement. You may also review and download a copy of (a) the Third Amended Complaint, (b) Settlement Agreement, (c) Motion for Class Counsel's Attorney Fees and Costs, (d) Preliminary Approval Order, and (e) the Claim and Exclusion Forms.

### 4. **WHAT ARE YOUR RIGHTS AS A CLASS MEMBER?**

### A. **To Make a Claim and be Part of The Settlement Class**

Any Class Member receiving this form who wishes to make a claim and receive funds from the State Subclass Net Settlement Fund MUST submit a Claim Form. To submit a valid claim, the Class Member must provide all of the required information contained on the Claim Form, and attest that they requested a religious exemption from the COVID-19 vaccine policy,

were suspended or forced to leave Ascension employment because their request for religious exemption was denied, and number of weeks they were suspended or removed from Ascension employment due to vaccine non-compliance before they were either recalled by Ascension or obtained other employment.

The Claim Form must be signed, dated, completed, and returned either electronically or by mail to:

> **Albright et al. v. Ascension Michigan et al.**
> **c/o ADMINSTRATOR**
> **[INSERT ADDRESS]**
> **EMAIL**
> **WEBSITE**

### B.  Excluding Yourself from the Settlement

Any Class Member receiving this form who does **NOT** wish to participate in the Settlement may exclude themselves (i.e., "opt-out") by completing the Exclusion Form. The Exclusion Form must be signed, dated, completed, and returned electronically or by main to:

> **Albright et al. v. Ascension Michigan et al.**
> **c/o ADMINSTRATOR**
> **[INSERT ADDRESS]**

The Exclusion Form must be submitted online or postmarked no later than [INSERT DATE].  **If you submit an Exclusion Form which is postmarked after [INSERT DATE], your Exclusion Form will be rejected, and you will be bound by the Release and all other Settlement Terms.**

Any person who files a complete and timely Exclusion Form shall, upon receipt by the Claims Administrator, no longer be a member of the Settlement Class, shall be barred from participating in any portion of the Settlement, and shall receive no benefits from the Settlement. Any such person, at their own expense, may pursue individually any claims he/she may have against Ascension. If you wish to exclude yourself and wish to pursue an individual action, you should know there are time limits on your right to file any such individual action.

### B.  Objection to Settlement

You can object to the terms of the Settlement before final approval. If the Court rejects your objection, you will still be bound by the terms of the Settlement.  To object to the Settlement, you must file a written objection and any notice of intention to appear at the final approval hearing currently set for [INSERT DATE], at [INSERT TIME] in Courtroom [INSERT COURTROOM], with the Clerk of the United States District Court, Western District of

Michigan located at [INSERT ADDRESS] and send copies to the following via registered or certified mail:

|  |  |
|---|---|
| CLASS COUNSEL: | DEFENDANT'S COUNSEL: |
| Noah S. Hurwitz (P74063)<br>Grant M. Vlahopoulos (P85633)<br>Kara F. Krause (P85487)<br>HURWITZ LAW PLLC<br>Attorneys for Plaintiffs<br>617 Detroit Street, Suite 125<br>Ann Arbor, MI 48103<br>(844) 487-9489<br>noah@hurwitzlaw.com<br>grant@hurwitzlaw.com<br>kara@hurwitzlaw.com | Maurice G. Jenkins (P33083)<br>Allan S. Rubin (P44420)<br>Elyse K. Culberson (P82132)<br>JACKSON LEWIS P.C.<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48075<br>(248) 936-1900<br>maurice.jenkins@jacksonlewis.com<br>allan.rubin@jacksonlewis.com<br>elyse.culberson@jacksonlewis.com |
| James A. Thomas (P80931)<br>JIMMY THOMAS LAW<br>Attorneys for Plaintiffs<br>1925 Breton Rd SE Ste 250<br>Grand Rapids, MI 49506<br>(616) 747-1188<br>jimmy@jimmythomaslaw.com | Patricia Pryor<br>JACKSON LEWIS P.C.<br>201 E. Fifth Street, 26th Floor<br>Cincinnati, OH 45202<br>(513) 898-0050<br>Patricia.pryor@jacksonlewis.com |

CLAIMS ADMINISTRATOR:
INSERT NAME
Address
Email
Web

Any written objections must state specific reasons in support of your objection and any legal support for each objection. Your objection must also state your (i) full name, (ii) current address, (iii) dates of employment and location worked during the Class Period, (iv) the last four digits of your social security number, (vi) whether the objection applies to you individually, a subset of the Settlement Class or to the Settlement Class as a whole; and the basis for your objection with specificity.

To be valid and effective, any objections to approval of the Settlement must be filed with the Clerk of the Court and received by each of the above-listed attorneys no later than [INSERT DATE]. **A PARTY WHO OBJECTS TO THE SETTLEMENT MAY NOT EXCLUDE THEMSELVES FROM THE SETTLEMENT**.

**DO NOT TELEPHONE THE COURT.**

If you choose to file an objection to the terms of this Settlement, you may enter an appearance in this case either with or without your own attorney.  To do so, you must file an Entry of Appearance with the Clerk of the Court and deliver copies to each of the attorneys listed above. Such Entry of Appearance must be filed with the Court and received by the above attorneys no later than [INSERT DATE].  You may continue as a Settlement Class Member either with or without your own attorney, but you will be solely responsible for the fees and costs of your own attorney.  The final approval hearing at which the Court will be asked to approve the Settlement will be at [INSERT TIME] on DAY, MONTH, DATE, 2023, before the Hon. Jane M. Beckering of the United States District Court, Western District of Michigan, [INSERT ADDRESS].

### C.  Do Nothing

If you are a Class Member and do nothing in response to this Notice, *you will be bound by the Release, but you will not receive a settlement payment.* If you do not want to be bound by the Release, you must exclude yourself from the settlement by submitting the Exclusion Form.

### D.  No Retaliation

Whether you submit a claim, exclude yourself from this settlement, object to this settlement or do nothing, you are protected by law from retaliation. Ascension does not tolerate or engage in retaliation.

### F.  Contacting the Claims Administrator

If you wish to contact the Claims Administrator, you can do so either by mail or telephone using the information in Paragraph 4(a) above.  Please tell them you are contacting them regarding "Albreight v. Ascension Health Alliance et al."

## 5.  EFFECT OF THE SETTLEMENT

### A.  Released Rights and Claims

It is the desire of the Named Plaintiffs, all Class Members who have not excluded themselves, and all Ascension entities to settle, compromise, and discharge the Released Claims fully, finally, and forever. After the Final Approval Order has become final and non-appealable, the Named Plaintiffs and each Class Member shall be bound by this Agreement as to the Released Claims, as defined above in section 3(D), and shall have recourse exclusively to the benefits, rights and remedies provided hereunder. In exchange for the consideration provided pursuant to this Agreement, Named Plaintiffs and each Class Member shall be deemed to have, and by operation of the Settlement Approval/Dismissal Order and Judgment shall have, fully, finally and forever released, relinquished and discharged the Released Parties from the Released Claims.

## 6.  FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a hearing in Courtroom [INSERT] of the United States District Court, Western District of Michigan, [INSERT ADDRESS] on [INSERT DAY, MONTH, DATE], 2023, at [INSERT TIME] to determine whether the Settlement should be finally approved as fair, reasonable, and adequate.  The Court also will be asked to approve Class Counsel's request for attorneys' fees, reimbursement of costs.  Class Counsel's final application for attorney fees and reimbursement of costs will be on file with the Court no later than [INSERT DATE], and will be available for review after that date.

The hearing may be continued without further notice to the Settlement Class.  **It is not necessary for you to appear at this hearing unless you wish to argue an objection.**

**DO <u>NOT</u> TELEPHONE THE COURT OR THE OFFICE OF THE CLERK FOR INFORMATION
REGARDING THIS SETTLEMENT OR THE CLAIM PROCESS**!

IF YOU ARE SEPARATELY REPRESENTED BY YOUR OWN COUNSEL, DO NOT CONTACT CLASS COUNSEL; HAVE YOUR ATTORNEY CONTACT CLASS COUNSEL

**BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

4880-0337-0079, v. 1

# EXHIBIT B

**EXHIBIT B**

**CLAIM FORM**
**INSTRUCTIONS**

***Albright et al. v. Ascension Michigan et al.***
United States District Court for the Western District of Michigan
Case No. 1-22-cv-00638-JMB-SJB

**Read and Follow Carefully**

      1.     To receive a Settlement Payment as described in the accompanying Notice, you must do one of the following:

           a.     Complete the information requested on the Claims Administrator's Web Site (insert hyperlink) on or before _____, 2023; or

           b.     sign, date, and mail, email, or upload to the Claims Administrator's Web Site the fully completed Claim Form on or before _____, 2023.  It is strongly recommended that you retain proof of your timely submission and a copy of your Claim Form until receipt of your Settlement Payment should the Settlement be granted final approval.

      2.     If you move, or if the address at which you received the Notice and this Claim Form is different than your current address, you must correct the address in the space provided on the Claim Form and/or call the Claims Administrator at (800) ___-____, to notify the Administrator of your correct address.  It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your Settlement Payment.

      3.     A pre-printed, postage pre-paid return envelope has been enclosed for your convenience.  It is addressed to the Claims Administrator.  If you have lost or misplaced your Claim Form, or the return envelope, you may mail the Claim Form to the Claims Administrator, via first class mail postage affixed, to the address shown below or it may be submitted by email or uploaded to the Claims Administrator's web site. Please note that if you are returning more than the Claim Form in the enclosed envelope, additional postage may be required. The Claims Administrator's address, toll-free phone number, email, and website are as follows:

***Albright v. Ascension* Claims Administrator**
INSERT NAME, ADDRESS WEB SITE, AND EMAIL

**Toll Free Phone No:** _____/  **EMAIL:**_____  / **Website:** _____

IF YOU HAVE QUESTIONS REGARDING THIS CLAIM FORM OR THE SETTLEMENT, PLEASE CONTACT THE CLAIMS ADMINISTRATOR AT ITS TOLLFREE LINE, (800) ___-____ OR VIA EMAIL AT: _____.  YOUR MAY ALSO VISIT THE CLAIMS ADMINISTRATOR'S WEB SITE AT: _____.

PLEASE REMEMBER: IT IS YOUR OBLIGATION TO INFORM THE CLAIMS ADMINISTRATOR OF ANY CHANGE TO YOUR MAILING ADDRESS PRIOR TO YOUR RECEIPT OF YOUR SETTLEMENT PAYMENT.  FAILURE TO UPDATE YOUR MAILING ADDRESS MAY PREVENT YOUR RECEIPT OF YOUR SETTLEMENT PAYMENT.

## CLAIM FORM

***Albright et al. v. Ascension Michigan et al.***
United States District Court for the Western District of Michigan
Case No. 1-22-cv-00638-JMB-SJB

*TO RECEIVE A SETTLEMENT PAYMENT THIS FORM MUST BE SUBMITTED AND RETURNED BY:* _____, *2023.*

*Please Provide All of the Requested Information Below*

## SECTION I – IDENTIFYING INFORMATION

_____
NAME

_____
CURRENT ADDRESS

_____
CURRENT CITY, STATE, ZIP CODE

_____
SOCIAL SECURITY NUMBER

_____
BEST PHONE NUMBER

_____
EMAIL

## SECTION II- CLAIM INFORMATION

_____
Name of Ascension Entity ("Ascension") for Whom you Last Worked Prior to November 12, 2021

_____
Job Title of Last Position Worked Before November 12, 2021

_____
Date other employment obtained

_____
Number of Weeks Unemployed

_____
State Where You Last Worked for Ascension Before November 12, 2021

_____
Date of Suspension from Ascension or Date Last Worked

_____
Date recalled to work at Ascension

## SECTION III – CLASS MEMBER ATTESTATION

By my signature below, I hereby declare and affirm all of the following are true and correct:

1.     I requested a religious exemption from the COVID-19 vaccine policy;
2.     I have a sincerely held religious belief that conflicts with receiving the COVID-19 vaccine.
3.     I was suspended or forced to leave Ascension employment because my request for religious exemption was denied.

**SECTION IV- RELASE AND SIGNATURE**

My signature constitutes a full and complete release, as of the date of final judgment to be entered approving the Settlement, and fully and finally releases and discharges (i) Ascension; (ii) Ascension Health Alliance; (iii)  all Defendants in Case No. 1-22-cv-00638-JMB-SJB in the United States District Court for the Eastern District of Michigan; (iv) all related or affiliated entities of the foregoing that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy; (v) the respective past, present and future parents, subsidiaries, joint ventures, insurers, related entities and affiliates of any of the foregoing; (vi) the past, present and future shareholders, directors, officers, members, managers, agents, employees, attorneys, insurers, predecessors, successors and assigns of any of the foregoing; and (vii) any individual or entity which could be jointly liable with any of the foregoing from any and all of the Released Claims as described in the Class Notice, Section 3(D).

**SECTION V – SUBMITTING ON BEHALF OF A DECEASED OR INCAPACITATED CLASS MEMBER**

If you are submitting this Claim Form on behalf of a class member who has passed away or has become incapacitated, please provide details about the capacity in which you are submitting this Claim Form on a separate sheet and include any documents granting you legal authority to submit this Claim Form on their behalf.

**SECTION 4.  DATE AND SIGNATURE ARE REQUIRED**

Dated:  ___ ___ / ___ ___ /2023

_____

Signature [required]

_____

Print Full Name


**THIS CLAIM FORM MUST BE POSTMARKED, EMAILED OR UPLOADED TO THE CLAIMS ADMINISTRATOR'S WEB SITE ON OR BEFORE _____, 2023**

4889-1137-1359, v. 1

# EXHIBIT C

**EXHIBIT C**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAREN ALBRIGHT, et al.
on behalf of themselves and
others similarly situated,

      Plaintiffs,

v.

ASCENSION MICHIGAN, et al.

      Defendants.

Case No. 1-22:cv-00638-JMB-SJB
Hon: Jane M. Beckering
Mag. Judge Salley J. Berens

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| HURWITZ LAW PLLC | JACKSON LEWIS P.C. |
| Attorneys for Plaintiffs | 2000 Town Center, Ste. 1650 |
| 617 Detroit Street, Suite 125 | Southfield, MI 48075 |
| Ann Arbor, MI 48103 | (248) 936-1900 |
| (844) 487-9489 | maurice.jenkins@jacksonlewis.com |
| noah@hurwitzlaw.com | allan.rubin@jacksonlewis.com |
| grant@hurwitzlaw.com | elyse.culberson@jacksonlewis.com |
| kara@hurwitzlaw.com | Attorneys for Defendants |
| | |
| James A. Thomas (P80931) | |
| JIMMY THOMAS LAW | Patricia Pryor |
| Attorneys for Plaintiffs | Jackson Lewis P.C. |
| 1925 Breton Rd SE Ste 250 | 201 E. Fifth Street, 26th Floor |
| Grand Rapids, MI 49506 | Cincinnati, OH 45202 |
| (616) 747-1188 | (513) 898-0050 |
| jimmy@jimmythomaslaw.com | Patricia.pryor@jacksonlewis.com |

**ORDER GRANTING PRELIMINARY APPROVAL**
**TO CLASS ACTION SETTLEMENT**

This matter comes before the Court on the Parties' Joint Motion to Preliminarily Approve the Parties' Class Action Settlement, to Authorize Notice to the Class, and to Set a Final Fairness Hearing. The Court has reviewed the Motion and Accompanying Brief and conducted a hearing on the Motion. The Court has also reviewed the record in this case and has concluded the proposed settlement is not the product of fraud or collusion. As a result, the Court has preliminarily determined that the proposed settlement meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Court being otherwise duly advised in the premise:

IT IS HEREBY ORDERED that the Settlement is Preliminarily Approved by the Court. The Court further finds and orders all the following:

1.     The Court has both subject matter and personal jurisdiction over Plaintiffs, the Class Members, and the Defendants.

2.     To the extent not otherwise defined herein, all defined terms in this Order shall have the meaning assigned to them in the Settlement Agreement.

3.     The Settlement Agreement dated April 24, 2023 was the result of the Parties' good-faith negotiations and was entered into by experienced counsel after extensive arm's length negotiations. The Settlement is not the product of fraud or collusion.

4.     The proceedings that occurred before the parties reached a settlement gave counsel and the parties the opportunity to adequately assess this case's strengths and weaknesses and that the settlement reasonably accounts for the parties' strengths and weaknesses.

5.     The Court has carefully reviewed the settlement agreement and finds that the settlement is fair, reasonable, adequate, and meets the standards for preliminary approval under Fed. R. Civ. P. 23(a) and (b). Accordingly, the Court preliminarily approves the settlement and all of its exhibits.

6.    The Court preliminarily concludes:

i.    The Class is ascertainable and so numerous as to make it impracticable to join all Class Members.

ii.    There are common questions of law and fact including, but not limited to, whether Defendants complied with applicable laws affecting Plaintiffs and the other Class Members regarding religious discrimination, accommodations and retaliation.

iii.    Plaintiffs' claims are typical of the claims of the members of the Class.

iv.    Plaintiffs will fairly and adequately protect the interests of the Class, and that Class Counsel fairly and adequately protect the interests of the Class and that they should be appointed as such.

v.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.

vi.    With respect to the Class, questions of law and fact common to the members of the Class predominate over any questions affecting any individual member in such Class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

7.    The Court conditionally certifies, for settlement purposes only, the following Class:

All Ascension Associates for whom all of the following apply: (a) the Associate applied for a religious exemption to the COVID-19 Vaccination Policy and has a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) the Associate was denied the requested religious exemption, and (c) the Associate either (i) was suspended or otherwise removed from employment by Ascension in November 2021 or (ii) claims they were forced to leave their employment with Ascension before February 28, 2022, after and as a result of their denied religious exemption to the COVID 19-Vaccination Policy.

Excluded from this Class are all persons who elect to exclude themselves from the Class by filing a timely Exclusion Form with the Claims Administrator or any person who does not meet the class definition above.

8. Plaintiffs may file the Third Amended Complaint attached as **Exhibit E** to the Settlement Agreement.

9. The Court hereby approves and conditionally appoints the following Plaintiffs as Class Representatives: Lynn Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard. The Court finds that the Class Representatives will fairly and adequately protect and represent the interests of all members of the Class and the interests of the Class Representatives are not antagonistic to those of the Class. The Class Representatives are represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

10. The Court preliminarily finds that the following counsel fairly and adequately represent the interests of the Class and hereby conditionally appoints as Class Counsel the following: Noah S. Hurwitz, Grant M. Vlahopoulos, and Kara F. Krause of Hurwitz Law PLLC and James A. Thomas of Jimmy Thomas Law.

11. The Court has reviewed and finds that the content of the proposed Class Notice attached as Exhibit A to the Settlement Agreement, which shall be mailed to Class Members by the Claims Administrator along with the Claim and Exclusion Forms, and which, along with the Settlement Agreement and its exhibits, the Motion For Preliminary Approval, the Claim Form, and the Exclusion Form, will be available to Class Members on the Claims Administrator's Website, satisfies the requirements of due process, and conforms with the requirements of Fed R. Civ. P. 23(c)(2), Fed R. Civ. P. 23(e)(1) and accordingly approves the Notice and Claim Form.

12. The Court further approves the proposed methods for giving notice of the Settlement to members of the Class, as reflected in the Settlement Agreement. The Court has reviewed the plan for distributing Notice to the Class ("Notice Plan") and finds that Class Members will receive the best notice practicable under the circumstances. The Court specifically approves

the Parties' proposal that on an agreed upon date with the Settlement Claims Administrator, but in no event more than 45 days after entry of the Preliminary Approval Order, the Settlement Claims Administrator shall cause the Class Notice, along with the Claim and Exclusion Forms to be mailed, by first class mail, to the current or last known address of all reasonably identifiable Class Members. The Court also specifically approves the procedures set forth in the Settlement Agreement for identifying Class Members and notifying Class Members whose initial mailings are returned undeliverable. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy the requirements of Fed. R. Civ. P. 23(c)(2) and Fed. R. Civ. P. 23(e)(1) and Due Process.

13.     The Court directs that pursuant to Fed. R. Civ. P. 23(e)(2), a Fairness Hearing will be held on _____, 2023  to consider final approval of the Settlement (the "Fairness Hearing") including, but not limited to, the following issues: (1) to determine whether to grant final approval to (a) the certification of the Class, (b) the designation of Plaintiffs as representatives of the Class, (c) the designation of Class Counsel as counsel for the Class, and (d) the settlement; (2) to rule on Class Counsel's request for an award of attorneys' fees and reimbursement of costs and (3) to consider whether to enter the Final Approval Order. The Fairness Hearing may be adjourned by the Court and the Court may address matters set out above, including final approval of the Settlement, without further notice to the Class other than notice that may be posted at the Court and on the Court's and Settlement Claims Administrator's websites.

14.     The Court directs that no later than fourteen (14) days prior to the Final Fairness Hearing, Class Counsel shall file all memoranda, including affidavits, declarations, and other evidence in support of the request for final approval of the Settlement; Class Counsels' request for approval of attorneys' fees, costs, and reimbursement of expenses. The Court further directs that

no later than seven (7) days prior to the Final Fairness Hearing, Class Counsel shall file any supplemental memoranda addressing any objections and/or opt-outs.

15.    Persons wishing to object to the proposed Settlement and/or be heard at the Fairness hearing shall follow the following procedure: (a) To object, a member of the Class, individually or through counsel, must file a written objection with the Court, and (b) must serve a copy of the objections on Class Counsel and Defendants Counsel no later than 75 days after the date that Class Notice was mailed.  No objector may exclude themselves from the settlement and any person who files an objection must agree to be bound by the settlement if finally approved.

16.    Any objection must contain the following information about the Class Member: (i) name; (ii) current address; (iii) telephone number; (iv) dates of employment and location worked; (v) last 4-digits of his or her social security number; (vi) identify whether the objection applies to the individual Objector, a subset of the Class or to the Class as a whole; and (vii) state the basis of the objection with specificity.

17.    Subject to the approval of the Court, any objecting Class Member may appear, personally or by counsel, at the final fairness hearing to explain why the proposed settlement should not be approved as fair, reasonable, and adequate, or to object to any motion for Class Counsel Fees and Expenses. Any Class Member who does not provide a notice of intention to appear at the hearing in accordance with the deadlines and other specifications set forth in the Settlement Agreement and Class Notice, or who has not filed an objection in accordance with the deadlines and other specifications set forth in the Settlement Agreement and the Class Notice, may be deemed to have waived any objections to the settlement and any adjudication or review of the Settlement, by appeal or otherwise.

18.    Any Class Member who does not make his or her objection in the manner provided herein shall be deemed to have waived his or her right to object to any aspect of the proposed Settlement and/or Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses. Such Class Member shall forever be barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, or the requested attorneys' fees and litigation expenses, and otherwise from being heard concerning the Settlement, or the attorneys' fees and expenses request in this or any other proceeding.

19.    All Class members shall have the right to opt out of the Class at any time during the opt-out period. The opt-out period shall run for 75 days from the Notice Date. Any  Class Member who elects to opt out of the Class (i) shall not be bound by any orders or judgments entered in this Action; (ii) shall not be entitled to relief under, or be affected by, the Settlement Agreement; (iii) shall not gain any rights by virtue of this Settlement Agreement; and (iv) shall not be entitled to object to any aspect of this Settlement Agreement. Any Class Member who wishes to opt out of the Class may do so by submitting an Exclusion Form to the Settlement Claims Administrator as provided in the Notice. To be effective, the Exclusion Form must be sent via first-class U.S. mail to the specified address, emailed, or uploaded to the Claims Administrator's Website in the form attached as Exhibit D to the Settlement Agreement. The Claims Administrator shall tabulate communications from Class Members asking to be excluded from the Class and shall report the names and addresses of such persons to the Court, Class Counsel, and Defense Counsel no less than seven (7) days before the Fairness Hearing.

20.    Any member of the Class failing to properly and timely submit the Exclusion Form shall be automatically included in the Class and shall be bound by all terms and provisions of the

7

Settlement Agreement and the Settlement, including but not limited to the release, and the Final Order and Judgment.

21.    Upon Final Approval of the Settlement, all Class Members who do not timely and properly opt out of the Settlement by submitting the Exclusion Form shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully and completely released, acquitted, and discharged the Released Parties from all Released Claims as set forth in the Settlement Agreement, and the Action will be deemed dismissed with prejudice.

22.    If the Settlement Agreement is not finally approved, this Preliminary Approval Order shall be rendered null and shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement. If the Settlement Agreement is not finally approved, the Defendants and any other Released Parties shall have retained any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). This action shall thereupon revert immediately to their respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed. In addition, the Third Amended Complaint shall be dismissed and deemed void ab initio.

23.    The Court shall retain continuing jurisdiction over the Action, the Parties and the Class, and the administration, enforcement, and interpretation of the Settlement. Any unresolved disputes or controversies arising with respect to the Settlement shall be presented by motion to the Court, provided however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights as described above.

24.     Pending final determination of the joint application for approval of this Settlement Agreement, all proceedings in this Litigation other than settlement approval proceedings shall be stayed and all Class Members who do not validly request exclusion from the Class shall be enjoined from commencing, continuing, or prosecuting any action, suit, proceeding, claim, or cause of action in any court or before any tribunal based on any of the claims at issue in this matter.

IT IS SO ORDERED.


Dated: _____          _____
                                        United States District Court Judge

4859-2627-2095, v. 2

# EXHIBIT D

**EXHIBIT D**

### UNITED STATES DISTRICT COURT, THE WESTERN DISTRICT OF MICHIGAN
### ALBRIGHT V. ASCENSION MICHIGAN ET AL.
### CASE NO. 1-22-CV-00638-JMB-SJB

## <u>EXCLUSION FORM</u>

_____    _____
NAME                                      LAST FOUR DIGITS OF SOCIAL SECURITY
                                          NUMBER

_____    _____
CURRENT ADDRESS                           BEST PHONE NUMBER

_____    _____
CURRENT CITY, STATE, ZIP CODE             EMAIL

_____
Location Worked

You received the Class Notice. To exclude yourself from the Class and its Settlement, you must sign and return this Exclusion Form, which must be submitted online or **postmarked** no later than [DATE TO BE INSERTED].  This form must be mailed or submitted electronically to the Claims Administrator at the below address:

CLAIMS ADMINISTRATOR
[INSERT NAME]
Address

**BY SUBMITTING THIS FORM, I AM CONFIRMING THAT IT IS MY DECISION <u>NOT</u> TO PARTICIPATE IN THIS CLASS ACTION AND <u>NOT</u> TO BE INCLUDED AS A CLASS MEMBER IN THIS CLASS ACTION. <u>I UNDERSTAND THAT I WILL RECEIVE NO MONEY FROM THIS SETTLEMENT FOR ANY LOSS OR DAMAGES I MAY HAVE SUFFERED AS A RESULT OF BEING DENIED A RELIGIOUS ACCOMMODATION.</u>**

I confirm that (a) I have received notice of the proposed settlement including its class definition, (b) I have decided to be excluded from the Class, and (c) I have decided not to participate in the proposed settlement. By excluding myself, I understand that I am waiving my right to object to the settlement.

_____    _____
Print Name

_____    _____
Signature                                 Date

4883-7679-4207, v. 1

# <u>EXHIBIT E</u>

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAREN ALBRIGHT,
LISA ALLEN, SARAH ANDREWS,
MELISSA ARAI, MARY AUDIA-VALLIER,
AUSTIN BOYES, LISA BRANNON,
MARC BRANNON, KIRK BROWN,
STACEY BUC, KAREN BUCHANAN,
LUKE BUECHE,
GRETCHEN CABRAL, NANCY CALLOW,
 DAZHIA CHAVEZ,
MICHAEL CORMIER, MARY CORNISH,
TABATHA CRONANDER, OLIVIA DAIS,
TERESA DEMERELL,
DAVID EDWARDS, TRACY EMORY, LINDA ENNIS,
CHELSEA FORREST,
DEBORAH FRY, TONIA FULTS,
GISELLA GAMICCHIA,
MOLLY GORNIEWICZ,
MICHELLE HAMILTON, CHRISTINE HASKIN,
KATHLEEN HAWLEY, THOMAS HOWARD,
MARY HRECHO,
BREANNE HUNTER, CHRISTY HUPMAN,
MAUREEN HUSTED, MICHELE IGRAM,
ROSE IRISH, ROSEMARY JONES,
STACI KANISZEWSKI, BARBARA KEHOE,
JARED KOPYDLOWSKI, TAMMY KRAUSE,
CHERIE LACKOWSKI, BETTY LAWRIE, JENNA LEGGET,
MARY LEMERISE, HEATHER LIPKOWITZ,
CINDY MCMURPHY,
KRISTEN MEASEL-MILLER, SHANDA MIDDLETON,
RACHEL MOORE, LYNN MORRISON, LUKE MYERS,
GRETA NATZEL, CHERRIE NEES,
ANNA NEUNER,
KATHLEEN NUGENT, LAURIE O'MEARA,
SCOTT OBERTEIN, TRACEY OLLDASHI,
RENEE OSTRANDER,
MICHELLE OWEN, CAROLE PALAZZOLO,
BRITA PIETIILA,
BEVERLY POST, JULIE POTERACKI,
PAWEL PULAWSKI, CODY REED, MICHELLE ROSSIE,
KAITLYN RUSSCHER, DONA RUTHERFORD,
NANCY RUONAVAARA-INGRAM,
PETER SAGMOE,

1

JENNIFER SEALS, ALLORE SHARP,
THERESA SHAW,
ADRIENNE SILVESTRI,
DAWN SPENCER, SUE STORY, ANDREA STROBEL,
MARIA SYJUD, DOROTHY THOMPSON,
EMMY TUTTLE, ROBERT TWOREK,
KIMBERLY TYLENDA, SANDRA VANDER LUGT,
DONNETTE VANDERMEER,
CAMERON VANDER STEL,
SCOTT WALKER, LAURA WALTZ,
AMY WEBB,
LISA WILCZAK, CINDIA WONG,
DANIEL YODER,
CHERYL ZABARONI, SARAH ZUZIAK,
On behalf of themselves and others similarly situated,

Plaintiffs,

v.                                              Case No. 1-22-cv-00638-JMB-SJB
                                                Hon: Jane M. Beckering

ASCENSION MICHIGAN, ASCENSION HEALTH ALLIANCE,
ASCENSION HEALTH,
ST. VINCENT'S HEALTH SYSTEM,
PROVIDENCE HOSPITAL, ST. VINCENT'S
HEALTH SYSTEM, INC., ST. VINCENT HEALTH, INC,
ASCENSION VIA CHRISTI HEALTH, INC.,
ST. AGNES HEALTHCARE, INC.,
OUR LADY OF LOURDES MEMORIAL HOSPITAL, INC.,
ST. JOHN HEALTH SYSTEM, INC., SAINT THOMAS HEALTH,
ASCENSION TEXAS, COLUMBIA ST. MARY'S, INC,
MINISTRY HEALTH CARE, INC.,
WHEATON FRANCISCAN HEALTH CARE –SOUTHEAST WISCONSIN, INC,
US HEALTH AND LIFE INSURANCE COMPANY, INC.,
AUTOMATED BENEFIT SERVICES, INC,
ASCENSION CARE MANAGEMENT, LLC, ASCENSION HEALTH-IS, INC.,
MEDXCEL FACILITIES MANAGEMENT, LLC,
ASCENSION HEALTH MINISTRY SERVICE CENTER, LLC,
ASCENSION MEDICAL GROUP, LLC,
ASCENSION HEALTH RESOURCE AND SUPPLY MANAGEMENT GROUP, LLC d/b/a
THE RESOURCE GROUP,
ASCENSION HEALTH SENIOR CARE d/b/a ASCENSION LIVING,
ASCENSION CONNECT, LLC,
ASCENSION PROVIDENCE,
ASCENSION BORGESS ALLEGAN HOSPITAL,
ASCENSION BORGESS HOSPITAL, ASCENSION

2

BORGESS-LEE HOSPITAL, ASCENSION BORGESS-PIPP
HOSPITAL, ASCENSION BRIGHTON CENTER FOR
RECOVERY, ASCENSION GENESYS HOSPITAL,
ASCENSION MACOMB-OAKLAND HOSPITAL,
ASCENSION PROVIDENCE HOSPITAL,
ASCENSION PROVIDENCE ROCHESTER HOSPITAL,
ASCENSION RIVER DISTRICT HOSPITAL,
ASCENSION ST. JOHN HOSPITAL,
ASCENSION ST. JOSEPH HOSPITAL,
ASCENSION ST. MARY'S HOSPITAL, and
ASCENSION STANDISH HOSPITAL
including all subsidiaries and affiliates, of each named entity.

     Defendants.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| HURWITZ LAW PLLC | JACKSON LEWIS P.C. |
| Attorneys for Plaintiffs | 2000 Town Center, Ste. 1650 |
| 617 Detroit Street, Suite 125 | Southfield, MI 48075 |
| Ann Arbor, MI 48103 | (248) 936-1900 |
| (844) 487-9489 | maurice.jenkins@jacksonlewis.com |
| noah@hurwitzlaw.com | allan.rubin@jacksonlewis.com |
| grant@hurwitzlaw.com | elyse.culberson@jacksonlewis.com |
| kara@hurwitzlaw.com | Attorneys for Defendants |
| | |
| James A. Thomas (P80931) | Patricia Pryor |
| JIMMY THOMAS LAW | Jackson Lewis P.C. |
| Attorneys for Plaintiffs | 201 E. Fifth Street, 26th Floor |
| 1925 Breton Rd SE Ste 250 | Cincinnati, OH 45202 |
| Grand Rapids, MI 49506 | (513) 898-0050 |
| (616) 747-1188 | Patricia.pryor@jacksonlewis.com |
| jimmy@jimmythomaslaw.com | |

## **THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

     Lynn Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard, individually

and on behalf of the Class as defined below along with Plaintiffs Karen Albright, Lisa Allen, Sarah

Andrews, Melissa Arai, Mary Audia-Vallier, Austin Boyes, Lisa Brannon, Marc Brannon, Kirk

Brown, Stacey Buc, Karen Buchanan, Luke Bueche, Gretchen Cabral, Nancy Callow, Dazhia

Chavez, Michael Cormier, Mary Cornish, Tabatha Cronander, Olivia Dais, Teresa DeMerell,

David Edwards, Tracy Emory, Linda Ennis, Chelsea Forrest, Deborah Fry, Tonia Fults, Gisella Gamicchia, Molly Gorniewicz, Michelle Hamilton, Christine Haskin, Kathleen Hawley, Mary Hrecho, Breanne Hunter, Christy Hupman, Maureen Husted, Michele Igram, Rose Irish, Rosemary Jones, Staci Kaniszewski, Barbara Kehoe, Jared Kopydlowski, Tammy Krause, Cherie Lackowski, Betty Lawrie, Jenna Leggett, Mary LeMerise, Heather Lipkowitz, Cindy McMurphy, Kristen Measel-Miller, Shanda Middleton, Rachel Moore, Lynn Morrison, Luke Myers, Greta Natzel, Carrie Nees, Anna Neuner, Kathleen Nugent, Scott Obertein, Tracey Olldashi, Renee Ostrander, Michelle Owen, Carole Palazzolo, Brita Pietila, Beverly Post, Julie Poteracki, Pawel Pulawski, Cody Reed, Michelle Rossie, Kaitlyn Russcher, Dona Rutherford, Nancy Ruonavaara-Ingram, Peter Sagmoe, Jennifer Seals, Allore Sharp, Theresa Shaw, Adrienne Silvestri, Dawn Spencer, Sue Story, Andrea Strobel, Maria Myjud, Dorothy Thompson, Emmy Tuttle, Robert Tworek, Kimberly Tylenda, Sandra Vander Lugt, Donnette VanderMeer, Cameron Vander Stel, Scott Walker, Laura Waltz, Amy Webb, Lisa Wilczak, Cindia Wong, and Daniel Yoder, ("Plaintiffs") or "Class Representatives"), by and through the undersigned attorneys, and state the following:

## **INTRODUCTION**

1.      There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII"), and all applicable state statutes.  Defendants deliberately flouted both laws by blanketly denying religious exemptions from their mandatory COVID-19 policy, telling employees that they would "not grant exemptions, except under extreme circumstances." Consequently, over 500 hundred healthcare workers who bravely served the public during the worst days of the pandemic were placed on an involuntary, indefinite, unpaid leave of absence in November 2021.  In December 2021, Defendants acknowledged the illegality of their actions and recalled the wrongfully disciplined employees back to work due to "legal challenges" and "staffing

challenges." However, Defendants refuse to pay Plaintiffs backpay for the period they were unlawfully denied wages. Accordingly, this class action lawsuit seeks compensatory damages, punitive damages, and reasonable attorney's fees for all of Defendants' employees who were temporarily denied a religious accommodation from the COVID-19 vaccine and suspended without pay nationwide.

<div align="center">

**PARTIES, JURISDICTION, AND VENUE**

</div>

2.      Karen Albright resides in Grand Blanc, Michigan.

3.      Ms. Albright received a Right to Sue letter from the EEOC on August 31, 2022.

4.      Lisa Allen resides in Waterford, Michigan

5.      Ms. Allen received a Right to Sue letter from the EEOC on June 1, 2022.

6.      Sarah Andrews resides in Saginaw, Michigan.

7.      Ms. Andrews received a Right to Sue letter from the EEOC on July 28, 2022.

8.      Melissa Arai resides in Livonia, Michigan.

9.      Ms. Arai received a Right to Sue letter from the EEOC on June 8, 2022.

10.     Mary Audia-Vallier resides in Clinton Township, Michigan.

11.     Ms. Audia-Vallier received a Right to Sue letter from the EEOC on May 26, 2022.

12.     Austin Boyes resides in Woodhaven, Michigan.

13.     Mr. Boyes received a Right to Sue letter from the EEOC on September 29, 2022.

14.     Lisa Brannon resides in Davison, Michigan.

15.     Ms. Brannon received a Right to Sue letter from the EEOC on August 3, 2022.

16.     Marc Brannon resides in Davison, Michigan.

17.     Mr. Brannon received a Right to Sue letter from the EEOC on June 28, 2022.

18.     Kirk Brown resides in Fenton, Michigan.

19.    Mr. Brown received a Right to Sue letter from the EEOC on June 28, 2022.

20.    Stacey Buc resides in Warren, Michigan.

21.    Ms. Buc received a Right to Sue letter from the EEOC on May 9, 2022.

22.    Karen Buchanan resides in Lapeer, Michigan.

23.    Ms. Buchanan received a Right to Sue letter from the EEOC on August 15, 2022.

24.    Luke Bueche resides in Flint, Michigan.

25.    Mr. Bueche received a Right to Sue letter from the EEOC on September 29, 2022.

26.    Gretchen Cabral resides in Warren, Michigan.

27.    Ms. Cabral received a Right to Sue letter from the EEOC on July 30, 2022.

28.    Nancy Callow resides in Livonia, Michigan.

29.    Ms. Callow received a Right to Sue letter from the EEOC on June 2, 2022.

30.    Dahzia Chavez resides in VanBuren Township, Michigan.

31.    Ms. Chavez received a Right to Sue letter from the EEOC on April 26, 2022.

32.    Michael Cormier resides in Grand Blanc, Michigan.

33.    Mr. Cormier received a Right to Sue letter from the EEOC on June 28, 2022.

34.    Mary Cornish resides in Mussey, Michigan.

35.    Ms. Cornish received a Right to Sue letter from the EEOC on July 28, 2022.

36.    Tabatha Cronander resides in Rochester, Michigan.

37.    Ms. Cronander received a Right to Sue letter from the EEOC on July 28, 2022.

38.    Olivia Dais resides in Richland, Michigan.

39.    Ms. Dais received a Right to Sue letter from the EEOC on July 30, 2022.

40.    Teresa DeMerell resides in Portage, Michigan.

41.    Ms. DeMerell received a Right to Sue letter from the EEOC on June 22, 2022.

42.    David Edwards resides in Grand Ledge, Michigan.

43.    Mr. Edwards received a Right to Sue letter from the EEOC on May 25, 2022.

44.    Tracy Emory resides in Flushing, Michigan.

45.    Ms. Emory received a Right to Sue letter from the State of Michigan Department of Civil Rights on October 4, 2022.

46.    Linda Ennis resides in Wolverine Lake, Michigan.

47.    Ms. Ennis received a Right to Sue letter from the EEOC on July 5, 2022.

48.    Chelsea Forrest resides in Commerce Township, Michigan.

49.    Ms. Forrest received a Right to Sue letter from the EEOC on July 5, 2022.

50.    Deborah Fry resides in Gobles, Michigan.

51.    Ms. Fry received a Right to Sue letter from the EEOC on June 6, 2022.

52.    Tonia Fults resides in Burton, Michigan.

53.    Ms. Fults received a Right to Sue letter from the EEOC on September 13, 2022.

54.    Gisella Gamicchia resides in St. Clair Shores, Michigan.

55.    Ms. Gamicchia received a Right to Sue letter from the EEOC on July 30, 2022.

56.    Molly Gorniewicz resides in Grand Rapids, Michigan.

57.    Ms. Gorniewicz received a Right to Sue letter from the EEOC on June 28, 2022.

58.    Michelle Hamilton resides in Grand Blanc, Michigan.

59.    Ms. Hamilton received a Right to Sue letter from the EEOC on April 14, 2022.

60.    Christine Haskin resides in Rochester, Michigan.

61.    Ms. Haskin received a Right to Sue letter from the EEOC on June 9, 2022.

62.    Kathleen Hawley resides in Fenton, Michigan.

63.    Ms. Hawley received a Right to Sue letter from the EEOC on July 5, 2022.

64.    Thomas Howard resides in Kalamazoo, Michigan.

65.    Mr. Howard received a Right to Sue letter from the EEOC on May 24, 2022.

66.    Mary Hrecho resides in St. Clair, Michigan.

67.    Ms. Hrecho received a Right to Sue letter from the EEOC on June 5, 2022.

68.    Breanne Hunter resides in Byron, Michigan.

69.    Ms. Hunter received a Right to Sue letter from the EEOC on June 10, 2022.

70.    Christy Hupman resides in Troy, Michigan.

71.    Ms. Hupman received a Right to Sue letter from the EEOC on July 28, 2022.

72.    Maureen Husted resides in Beverly Hills, Michigan.

73.    Ms. Husted received a Right to Sue letter from the EEOC on September 29, 2022.

74.    Michele Igram resides in Flint, Michigan.

75.    Ms. Igram received a Right to Sue letter from the EEOC on April 28, 2022.

76.    Rose Irish resides in Birch Run, Michigan.

77.    Ms. Irish received a Right to Sue letter from the EEOC on June 8, 2022.

78.    Rosemary Jones resides in Oxford, Michigan.

79.    Ms. Jones received a Right to Sue letter from the EEOC on June 2, 2022.

80.    Staci Kaniszewski resides in Au Gres, Michigan.

81.    Ms. Kaniszewski received a Right to Sue letter from the EEOC on July 30, 2022.

82.    Barbara Kehoe resides in St. Clair, Michigan.

83.    Ms. Kehoe received a Right to Sue letter from the EEOC on September 29, 2022.

84.    Jared Kopydlowski resides in Fenton, Michigan.

85.    Mr. Kopydlowski received a Right to Sue letter from the EEOC on June 7, 2022.

86.    Tammy Krause resides in Linden, Michigan.

87.    Ms. Krause received a Right to Sue letter from the EEOC on June 27, 2022.

88.    Cherie Lackowski resides in Oakland Center Township, Michigan.

89.    Ms. Lackowski received a Right to Sue letter from the EEOC on June 7, 2022.

90.    Betty Lawrie resides in Schwartz Creek, Michigan.

91.    Ms. Lawrie received a Right to Sue letter from the EEOC on September 29, 2022.

92.    Jenna Leggett resides in Kalamazoo, Michigan.

93.    Ms. Leggett received a Right to Sue letter from the EEOC on September 29, 2022.

94.    Mary LeMerise resides in Canton, Michigan.

95.    Ms. LeMerise received a Right to Sue letter from the EEOC on June 23, 2022.

96.    Heather Lipkowitz resides in Davison, Michigan.

97.    Ms. Lipkowitz received a Right to Sue letter from the EEOC on May 16, 2022.

98.    Cindy McMurphy resides in Schwartz Creek, Michigan.

99.    Ms. McMurphy received a Right to Sue letter from the EEOC on September 13, 2022.

100.    Kristen Measel-Miller resides in Macomb, Michigan.

101.    Ms. Measel-Miller received a Right to Sue letter from the EEOC on July 28, 2022.

102.    Shanda Middleton resides in Marcellus, Michigan.

103.    Ms. Middleton received a Right to Sue letter from the EEOC on May 27, 2022.

104.    Rachel Moore resides in Ortonville, Michigan.

105.    Ms. Moore received a Right to Sue letter from the EEOC on June 2, 2022.

106.    Lynn Morrison resides in Kalamazoo, Michigan.

107.    Ms. Morrison received a Right to Sue letter from the EEOC on June 6, 2022.

108.    Luke Myers resides in Kalamazoo, Michigan.

109.    Mr. Myers received a Right to Sue letter from the EEOC on June 6, 2022.

110.    Greta Natzel resides in Lennon, Michigan.

111.    Ms. Natzel received a Right to Sue letter from the EEOC on August 15, 2022.

112.    Carrie Nees resides in Holly, Michigan.

113.    Ms. Nees received a Right to Sue letter from the EEOC on June 22, 2022.

114.    Anna Neuner resides in Macomb, Michigan.

115.    Ms. Neuner received a Right to Sue letter from the EEOC on August 19, 2022.

116.    Kathleen Nugent resides in Algonac, Michigan.

117.    Ms. Nugent received a Right to Sue letter from the EEOC on June 28, 2022.

118.    Scott Obertein resides in Pinconning, Michigan.

119.    Mr. Obertein received a Right to Sue letter from the EEOC on May 12, 2022.

120.    Tracey Olldashi resides in Macomb, Michigan.

121.    Ms. Olldashi received a Right to Sue letter from the EEOC on June 24, 2022.

122.    Laura O'Meara resides in Lake Orion, Michigan.

123.    Ms. O'Meara received a Right to Sue letter from the EEOC on July 5, 2022.

124.    Renee Ostrander resides in Armada, Michigan.

125.    Ms. Ostrander received a Right to Sue letter from the EEOC on May 25, 2022.

126.    Michelle Owen resides in Mattawan, Michigan.

127.    Ms. Owen received a Right to Sue letter from the EEOC on June 30, 2022.

128.    Carole Palazzolo resides in Fraser, Michigan.

129.    Ms. Palazzolo received a Right to Sue letter from the EEOC on July 21, 2022.

130.    Brita Pietila resides in Howell, Michigan.

131.    Ms. Pietila received a Right to Sue letter from the EEOC on September 29, 2022.

132.    Beverly Post resides in Wayland, Michigan.

133.    Ms. Post received a Right to Sue letter from the State of Michigan Department of

Civil Rights on July 6, 2022.

134.    Julie Poteracki resides in Saint Clair Shores, Michigan.

135.    Ms. Poteracki received a Right to Sue letter from the EEOC on June 7, 2022.

136.    Pawel Pulawski resides in Clinton Township, Michigan.

137.    Mr. Pulawski received a Right to Sue letter from the EEOC on September 30, 2022.

138.    Cody Reed resides in Vicksburg, Michigan.

139.    Mr. Reed received a Right to Sue letter from the EEOC on April 28, 2022.

140.    Michelle Rossie resides in Grand Blanc, Michigan.

141.    Ms. Rossie received a Right to Sue letter from the EEOC on June 24, 2022.

142.    Nancy Ruonavaara-Ingram resides in Garden City, Michigan.

143.    Ms. Ruonavaara-Ingram received a Right to Sue letter from the EEOC on July 28,

2022.

144.    Kaitlyn Russcher resides in Hamilton, Michigan.

145.    Ms. Russcher received a Right to Sue letter from the EEOC on May 17, 2022.

146.    Dona Rutherford resides in Clarkston, Michigan.

147.    Ms. Rutherford received a Right to Sue letter from the EEOC on September 29,

2022.

148.    Peter Sagmoe resides in Holland, Michigan.

149.    Mr. Sagmoe received a Right to Sue letter from the EEOC on April 28, 2022.

150.    Jennifer Seals resides in Paw Paw, Michigan.

151.    Ms. Seals received a Right to Sue letter from the EEOC on June 16, 2022.

152.    Allore Sharp resides in Fenton, Michigan.

153.    Ms. Sharp received a Right to Sue letter from the EEOC on June 30, 2022.

154.    Sue Story resides in Kalamazoo, Michigan.

155.    Ms. Story received a Right to Sue letter from the EEOC on September 29, 2022.

156.    Theresa Shaw resides in Flint, Michigan.

157.    Ms. Shaw received a Right to Sue letter from the EEOC on June 1, 2022.

158.    Adrienne Silvestri resides in Harrison Township, Michigan.

159.    Ms. Silvestri received a Right to Sue letter from the EEOC on August 4, 2022.

160.    Dawn Spencer resides in Lapeer, Michigan.

161.    Ms. Spencer received a Right to Sue letter from the EEOC on June 6, 2022.

162.    Andrea Strobel resides in Leonard, Michigan.

163.    Ms. Strobel received a Right to Sue letter from the EEOC on June 1, 2022.

164.    Maria Syjud resides in Shelby Township, Michigan.

165.    Ms. Syjud received a Right to Sue letter from the EEOC on June 5, 2022.

166.    Dorothy Thompson resides in Flint, Michigan.

167.    Ms. Thompson received a Right to Sue letter from the EEOC on May 16, 2022.

168.    Emmy Tuttle resides in Rochester Hills, Michigan.

169.    Ms. Tuttle received a Right to Sue letter from the EEOC on June 1, 2022.

170.    Robert Tworek resides in Livonia, Michigan.

171.    Mr. Tworek received a Right to Sue letter from the EEOC on May 27, 2022.

172.    Kimberly Tylenda resides in Goodrich, Michigan.

173.    Ms. Tylenda received a Right to Sue letter from the EEOC on April 22, 2022.

174.    Sandra Vander Lugt resides in Richland, Michigan,

175.    Ms. Vander Lugt received a Right to Sue letter from the EEOC on August 5, 2022.

176.    Donnette VanderMeer resides in Kalamazoo, Michigan.

177.    Ms. VanderMeer received a Right to Sue letter from the EEOC on August 4, 2022.

178.    Cameron Vander Stel resides in Grand Rapids, Michigan.

179.    Mr. Vander Stel received a Right to Sue letter from the EEOC on May 10, 2022.

180.    Scott Walker resides in South Haven, Michigan.

181.    Mr. Walker received a Right to Sue letter from the EEOC on May 31, 2022.

182.    Laura Waltz resides in Pinckney, Michigan.

183.    Ms. Waltz received a Right to Sue letter from the EEOC on June 6, 2022.

184.    Amy Webb resides in Schoolcraft, Michigan.

185.    Ms. Webb received a Right to Sue letter from the EEOC on July 30, 2022.

186.    Lisa Wilczak resides in Holly, Michigan.

187.    Ms. Wilczak received a Right to Sue letter from the EEOC on April 20, 2022.

188.    Cindia Wong resides in Livonia, Michigan.

189.    Ms. Wong received a Right to Sue letter from the EEOC on June 28, 2022.

190.    Daniel Yoder resided in Owosso, Michigan.

191.    Mr. Yoder received a Right to Sue letter from the EEOC on August 4, 2022.

192.    Defendant Ascension Health Alliance is a domestic nonprofit corporation that instituted a COVID-19 Vaccination Policy that applied to many of its affiliated and related entities.

193.    Defendants Ascension Michigan, St. Vincent's Health System, Providence Hospital, St. Vincent's Health System, Inc., St. Vincent Health, Inc, Ascension Via Christi Health, Inc., St. Agnes Healthcare, Inc., Our Lady of Lourdes Memorial Hospital, Inc., St. John Health System, Inc., Saint Thomas Health, Ascension Texas, Columbia St. Mary's, Inc, Ministry Health

Care, Inc., Wheaton Franciscan Health Care –Southeast Wisconsin, Inc, Us Health And Life Insurance Company, Inc., Automated Benefit Services, Inc, Ascension Care Management, LlLC, Ascension Health-Is, Inc., Medxcel Facilities Management, LLC, Ascension Health Ministry Service Center, Llc, Ascension Medical Group, LLC, Ascension Health Resource And Supply Management Group, LLC d/b/a The Resource Group, Ascension Health Senior Care D/B/A Ascension Living, and Ascension Connect, LLC are entities owned in whole or part by Ascension Health Alliance and they own and/or operate hospitals and medical facilities in the states of Alabama, the District of Columbia, Florida, Indiana, Kansas, Maryland, Michigan, Missouri, New York, Oklahoma, Tennessee, Texas, and Wisconsin and adopted the Ascension Health Alliance COVID-19 Vaccination Policy at all of their facilities.

194.    For avoidance of doubt this Complaint is intended to be against all entities affiliated or related to any of the named Defendants, who adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy.

195.    The Western District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over any applicable state law claim claims pursuant to 28 U.S.C. § 1367.

196.    Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which one or more Defendant operates its businesses.

197.    The "single-filing" rule allows plaintiffs to "piggyback" onto the timely and valid charge of a named plaintiff with the U.S. Equal Employment Opportunity Commission (EEOC). *Calloway v. Partners National Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993).  Plaintiffs have all received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") within the past 90 days.

## FACTUAL ALLEGATIONS

**Defendants' Mandatory Vaccine Policy**

198.    On July 27, 2021, Defendants announced a COVID-19 vaccine mandate for all employees, without regard to level of patient interaction.

199.    Defendants utilized a "portal" for handling religious accommodation requests wherein employees were made to provide information to assist it in determining which employees were sufficiently religious.

200.    Employees applying for accommodation were instructed to write a "description of how use of this vaccination is a violation of your moral conscience," and their descriptions were "not to exceed 4,000 characters."   The portal contained a check box stating: "I understand that should I fail to be vaccinated or granted exemption on or before 5:00 pm on November 12, 2021, I will be suspended . . . Continued failure to comply will be deemed voluntary resignation."

201.    Defendants did not require independent contractors, vendors, temporary staff, patients, visitors, or any other individuals on Defendants' premises to be vaccinated.

202.    The last day for employees to be vaccinated was November 12, 2021:

203.    Defendants' policy stated:

> Ascension will require that all associates be vaccinated against COVID-19, *whether or not they provide direct patient care, and whether they work in our sites of care or remotely* . . . In those instances when someone may not be able to get vaccinated due to a medical condition or *strongly held religious belief*, Ascension will provide its associates a process for requesting an exemption similar to the process we use for the annual influenza vaccine.

204.    Initially after introducing the COVID-19 vaccine mandate, Defendants granted both religious and medical accommodation to the first employees that applied for the same.

205.    However, Defendants then switched course and violated its own policy by implementing a blanket prohibition on COVID-19 vaccine accommodation.

206.    Employees protested the vaccine mandate *en masse*.

207.    The Secretary of Health and Human Services issued an interim final rule on November 5, 2021 that hospitals must "ensure that staff are fully vaccinated for COVID-19." 86 Fed. Reg. 61568 (2021).

208.    Defendants assert they relied on this November 5, 2021 rule in enforcing the vaccine mandate, even though the rule was issued fifteen (15) weeks after Defendants announced the vaccine mandate.

209.    "The [interim final] rule requires providers to offer medical and religious exemptions." *Biden v. Missouri*, 142 S. Ct. 647, 651 (Jan. 13, 2022). The interim final rule states:

> In implementing the COVID-19 vaccination policies and procedures required by this IFC, however, employers must comply with applicable Federal anti-discrimination laws and civil rights protections . . . In other words, employers following . . . the new requirements . . . *may also be required* to provide appropriate accommodations . . . for employees who request and receive exemption from vaccination because of a *sincerely held religious belief, practice, or observance* . . . Under Federal law, including . . . *Title VII of the Civil Rights Act of 1964* . . . workers who cannot be vaccinated or tested because of . . . *sincerely held religious beliefs, practice, or observance* may in some circumstances be granted an exemption from their employer . . . *Employers must also follow Federal laws protecting employees from retaliation for requesting an exemption on account of religious belief.*

86 Fed. Reg. 61569, 61572 (2021).

210.    The federal vaccine mandate was never intended to apply to remote employees or contractors: "Facilities that employ or contract for services by staff who *telework full-time* (that is, 100 percent of their time is remote from sites of patient care, and remote from staff who do work

at sites of care) should identify and monitor these individuals . . . but *those individuals need not be subject to the vaccination requirements.*" *Id.* at 61571 (emphasis added).

211.    Defendants' practices *directly contravene* the rule it purportedly relied on.

212.    Defendants actively coerced employees to abandon their religious convictions.

213.    Employees who were denied religious accommodation to the vaccine mandate were forced into the horrible position of choosing between vaccination or unpaid suspension.

214.    "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

### Plaintiffs' Religious Accommodation Requests

215.    Plaintiffs and the Class submitted religious accommodations requests before the deadline.

216.    Their requests for accommodation were denied in emails that were three (3) sentences in length: "*Your request for a religious exemption . . . has been denied.*"

217.    Plaintiffs were given seven (7) days to "add information."

218.    Plaintiffs were told that failure to "add information" before the arbitrary deadline would result in the decision becoming final.

219.    Plaintiffs and the Class all worked safely and successfully for Defendants prior to the vaccine mandate.

220.    There are a host of reasonable accommodations that Defendants failed to consider.

221.    Plaintiffs and the Class could have tested daily to confirm whether they were not ill.

222.    Plaintiffs and the Class could have engaged in frequent sanitizing and disinfecting.

223.    Plaintiffs and the Class could have worn gloves and respirators in the workplace.

224.    Plaintiffs and the Class  could have transferred to more solitary positions.

225.    Defendants made employees work in-person throughout the pandemic. Before any vaccine was developed, the following safety measures were deemed sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures, including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

226.    Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

227.    "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

228.    Defendants did not explain to Plaintiffs why accommodation could not be granted.

229.    Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).

230.    Defendants' religious animus is evidenced by the fact that, while it refused to accommodate employees who rejected the vaccine on religious grounds, it readily accommodated

18

employees who sought medical exemptions to the COVID-19 vaccine, including pregnant employees.

231.    Defendants' religious animus is further evidenced by the fact that, while it refuses to accommodate employees who reject the vaccine on religious grounds, it did not require independent contractors, vendors, patients or their visitors to be vaccinated, even though they interact with Defendants' staff and providers.

232.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence. "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

233.    Defendants' accommodation process was arbitrary and inconsistent.

234.    Members of the Putative Class were told by management that Defendants would not grant any religious accommodations.

235.    Defendants granted some accommodation requests based on pure favoritism.

236.    Defendants unnecessarily shared the private health information of Plaintiffs with coworkers.

237.    Defendants did not explore available reasonable accommodations from the vaccine.

238.    Plaintiffs and Class Members  were placed on unpaid suspensions on November 12, 2021.

239.    Plaintiffs and  Class Members  were gradually recalled to work beginning approximately five (5) weeks later due to "legal challenges" and "staffing challenges."

240.    Plaintiffs and Class Members were told the following over the telephone: "The reason that we are contacting you is to let you know the vaccine suspension that you were placed on has been recalled and they are asking you to return to work."

241.    Inexplicably, many employees who were denied religious accommodations were not recalled to work.  Defendants instead used the religious accommodation denials as a method to reduce headcount in some departments.

242.    Many employees who had been suspended were told that their positions had been filled during their absence and were told they could only apply for new jobs.

243.    Defendants refused to provide unlawfully suspended employees with back pay.

**Defendants Did Not Base Its Decision on Undue Hardship,
Nor Could It Establish Undue Hardship**

244.    The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship."  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

245.    The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc*., 571 F.2d 338, 341 (6th Cir.1978).

246.    An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co*., 527 F.2d 515, 520 (6th Cir.1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required.  *Id.*

247.    Defendants cannot satisfy its burden of proving undue hardship.

248.    Defendants, without citing any scientific evidence, alleges that unvaccinated employees pose a substantial "risk of infection or death to hospital patients, staff, and visitors."

249.    Defendants' allegations are based in religious animus rather than science.

250.    Defendants cannot allege undue hardship when some of its employees, including pregnant employees, were granted *medical* accommodations to the vaccine mandate.

251.    Defendants cannot allege undue hardship when it began recalling unvaccinated employees approximately five (5) weeks after initially suspending them, meaning that any undue hardship must have seemingly disappeared for no apparent reason in the meantime.

252.    Plaintiffs and the Class were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

253.    Plaintiffs and the Class were more than willing to comply with all safety protocols.

254.    Defendant's allegations of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, BRIT. MED. J (2021).

255.    Plaintiffs had been engaging in these alternative practices, which had been deemed effective throughout the pandemic for approximately eighteen (18) months before the mandate.

## CLASS ACTION ALLEGATIONS

256.    Plaintiffs Lynn Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard assert claims on behalf of the "Putative Class," defined as follows:

> **Class:**  All Ascension Associates for whom all of the following apply: (a) the Associate applied for a religious exemption to the COVID-19 Vaccination Policy and has a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) the Associate was denied the requested religious exemption, and (c) the Associate either (i) was suspended or otherwise removed

21

from employment by Ascension in November 2021 or (ii) claims they were forced to leave their employment with Ascension before February 28, 2022, after and as a result of their denied religious exemption to the COVID 19-Vaccination Policy.[1]

257.    **Class Representatives.** Dr. Thomas Howard asserts claims on behalf of Class Members who worked as Physicians, Physician Assistants, and Nurse Practitioners at any of Defendants' facilities nationwide. Lynn Morrison R.N. asserts claims on behalf of all registered and licensed practical nurses at any of Defendants' facilities nationwide. Laurie O'Meara and Jennifer Seals assert claims on behalf of all other employees of Defendants at any of Defendants' facilities nationwide.

258.    **Numerosity**.  The Putative Class is so numerous that joinder of all Class members is impracticable.  Upon information and belief, more than five hundred of Defendants' employees satisfy the definition of the Putative Classes.

259.    **Typicality**.  Plaintiffs' claims are typical of the members of the Putative Class.  For all members of the Putative Class, Defendants did not conduct an individualized assessment of the religious accommodation requests submitted.  Instead, Defendants imposed a policy blanketly denying all religious accommodation requests and then suspended members of the Putative Class without pay.  The legal violations suffered by the Plaintiffs are typical to those suffered by other Putative Class members, and Defendants treated Plaintiffs consistent with other Putative Class members in accordance with its standard policies and practices.

---

[1] "Ascension" means "all Defendants in the Action, including Ascension Health Alliance, and all their related and affiliated entities that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy."  To avoid any doubt, Ascension as used herein is intended to include each and every Ascension Health Alliance affiliate or related entity that adopted the Ascension Health Alliance, or a substantially similar, COVID-19 Vaccination Policy."

260.    **Adequacy.**  Plaintiffs are adequate representatives of the Putative Class.  Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class.   Plaintiffs have retained counsel competent and experienced in complex class action litigation.

261.    **Commonality**.  Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

  a.  Whether Defendants imposed a blanket policy denying religious accommodations to the COVID-19 vaccine to all employees;

  b.  Whether Defendants violated Title VII and various state laws by failing to consider whether members of the Putative Class had sincerely held religious beliefs;

  c.  Whether Defendants violated Title VII and various state laws by failing to consider whether there were reasonable accommodations for members of the Putative Class that would not pose an undue burden on Defendants.

  d.  Whether Defendants suspended members of the Putative Class.

  e.  Whether members of the Putative Class felt they were forced to leave Defendants employment and as a result were constructively discharged;

  f.  Whether Defendants reversed the religious accommodation denials and recalled members of the Putative Class back to work;

  g.  The proper measure of statutory and punitive damages; and

  h.  The proper form of declaratory relief.

262.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.  Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

263.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds that apply generally to the Putative Classes, so that relief is appropriate respecting the Class as a whole.

264.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods of the fair and efficient adjudication of this litigation.  Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of Title VII and state law. Members of the Putative Class do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any members of the Putative Class on an individual basis. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

265.    Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendants' records.

### COUNT I
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
### RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE
### ON BEHALF OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED

266.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

267.    Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).  Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

268.    Plaintiffs and the Class can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

269.    Plaintiffs hold sincere religious beliefs that conflict with the vaccine mandate.

270.    Plaintiffs and the Class  informed their employer of same.

271.    Plaintiffs and the Class  were disciplined for failing to comply with the vaccine mandate or felt like they were forced to resign.

272.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence, which is not an accommodation at all.  Defendants have thereby violated the law.

273.    Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

25

274.    Defendants never explained why they could not be accommodated.

275.    Defendants never explained why no accommodations could have worked.

276.    Plaintiffs and the Class have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

277.    Plaintiffs and the Class have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

278.    Plaintiffs have been required to employ the services of an attorney as a result.

279.    Defendants' actions were intentional and/or reckless.

280.    Involuntary, indefinite unpaid leave is not a religious accommodation.

**COUNT II**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**RELIGIOUS DISCRIMINATION–RETALIATION**
**ON BEHALF OF PLAINTIFFS AND OTHERS SIMILARLY SITUATED**

281.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

282.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

283.    Plaintiffs engaged in protected activity when they requested accommodations.

284.    Defendants retaliated against them by suspending them on November 12, 2021.

285.    Defendants' threat of unpaid suspension was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

286.    Plaintiffs and the Class have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects

associated therewith because of the unlawful retaliatory conduct, and she will so suffer in the future.

287.    Plaintiffs and the Class have been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and she will so suffer in the future.

288.    Plaintiffs and the Class have been required to employ the services of an attorney as a result.

289.    Defendants' actions were intentional and/or reckless.

**COUNT III**
**RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE UNDER STATE LAW ON BEHALF OF ALL PLAINTIFFS AND OTHERS SIMILARLY SITUATED**

290.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

291.    Plaintiffs and the Class hold sincere religious beliefs that conflict with the vaccine mandate.

292.    Plaintiffs and the Class informed their employer of same.

293.    Plaintiffs and the Class were disciplined for failing to comply with the vaccine mandate or felt like they were forced to resign.

294.    Defendants evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986), when it granted a false "accommodation" of an unpaid leave of absence, which is not an accommodation at all.  Defendants therefore violated the law.

295.    Multiple reasonable accommodations could have been offered without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and testing.

296.    Defendants never explained why they could not accommodate Plaintiffs.

297.    Defendants never explained why no accommodations could have worked.

298.    The Class Representatives assert on behalf of the class that that Defendants, through their actions as set forth above individually and/or collectively discriminated and failed to accommodate the religious beliefs of the Class though the adoption and implementation of  the Ascension Health Alliance COVID-19 Vaccination Policy and in doing so violated the laws regarding religious accommodation and/or vaccination requirements for health care workers in the states of in the states of  Alabama, the District of Columbia, Florida, Indiana, Kansas, Maryland, Michigan, Missouri, New York, Oklahoma, Tennessee, Texas, and Wisconsin

299.    Class Representatives assert that Defendants, individually and collectively violated the following laws through their failure to accommodate the religious beliefs of the putative class:

a.  District of Columbia – 56 DCR 006029 and D.C. Code 2-1402.11(a)(c)

b.   Florida – Florida Statute §760.10

c.  Indiana – I.C. 22-5-4.6-7(b)

d.  Kansas – Kansas Act Against Discrimination, K.S. 44-1001 et seq.

e.  Maryland – State Gov. Code 20-603(2) and 20-606

f.  Michigan - The Elliot Larsen Civil Rights Act, M.C.L. § 37.2201, et seq.,

g.  Missouri - Missouri Human Rights Act, M.R.S. §213.010 et seq.

h.  New York – NY CLS Exec. 296(10)(a)

i.  Oklahoma – Okla Admin. Code § 335:15-5-**2**

j.  Tennessee – Tennessee Human Rights Act, T.C. Code 4-21-401 et seq.

k.  Texas - Tex. Lab. Code § 21.108

l.  Wisconsin - Wis. Stat. § 111.337

300.    Plaintiffs and the Class have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and they will so suffer in the future.

301.    Plaintiffs and the Class have been denied employment and placed in financial distress and they have suffered a loss of earnings and benefits, loss of health insurance coverage, and a loss of and impairment of their earning capacity and ability to work because of the denial of their request.

302.    Plaintiffs and the Class have been required to employ the services of an attorney as a result.

303.    Defendants' actions were intentional and/or reckless.

304.    Involuntary unpaid leave is not a religious accommodation.

### COUNT IV
### VIOLATION OF RELIGIOUS DISCRIMINATION–RETALIATION
### ON BEHALF OF ALL PLAINTIFFS UNDER STATE LAW INDIVIDUALLY AND ON BEHALF OF ALL PLAINTIFFS AND OTHERS SIMILARLY SITUATED

305.    Plaintiffs restate the foregoing paragraphs as set forth fully herein.

306.    It is unlawful for an employer to retaliate against employees who communicate about employment discrimination or request accommodation for a religious practice.

307.    Plaintiffs and the Class engaged in protected activity when they requested accommodations.

308.    Defendants retaliated against them by suspending them on November 12, 2021.

309.    Defendants' threat of unpaid suspension was clearly intended to force employees to abandon their religious beliefs and receive the vaccine.

310.    The Class Representatives assert on behalf of the class that that Defendants, through their actions as set forth above individually and/or collectively retaliated against the Plaintiffs and the Class when the suspended Class Members after they requested accommodations the Ascension Health Alliance COVID-19 Vaccination Policy and in doing so violated the laws regarding retaliated against health care workers in the states of in the states of  Alabama, the District of Columbia, Florida, Indiana, Kansas, Maryland, Michigan, Missouri, New York, Oklahoma, Tennessee, Texas, and Wisconsin

311.    Class Representatives assert that Defendants, individually and collectively violated the state law regarding retaliation, including but not limited to, the following laws by retaliation against Class Members:

    a.  District of Columbia – 56 DCR 006029 and D.C. Code 2-1402.11(a)(c)

    b.   Florida – Florida Statute §760.10

    c.  Indiana – I.C. 22-5-4.6-7(b)

    d.  Kansas – Kansas Act Against Discrimination, K.S. 44-1001 et seq.

    e.  Maryland – State Gov. Code 20-603(2) and 20-606

    f.  Michigan - The Elliot Larsen Civil Rights Act, M.C.L. § 37.2201, et seq.,

    g.  Missouri - Missouri Human Rights Act, M.R.S. §213.010 et seq.

    h.  New York – NY CLS Exec. 296(10)(a)

    i.  Oklahoma – Okla Admin. Code § 335:15-5-**2**

    j.  Tennessee – Tennessee Human Rights Act, T.C. Code 4-21-401 et seq.

    k.  Texas - Tex. Lab. Code § 21.108

    l.  Wisconsin - Wis. Stat. § 111.337

312.    Plaintiffs and the Class have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the unlawful retaliatory conduct, and she will so suffer in the future.

313.    Plaintiffs and the Class have been denied employment and placed in financial distress and she has suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work because of the retaliatory conduct, and she will so suffer in the future.

314.    Plaintiffs and the Class have been required to employ the services of an attorney as a result.

315.    Defendants' actions were intentional and/or reckless.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs and the Class Representatives on behalf of the Class request the following relief:

a.    Compensatory damages for monetary and non-monetary loss;

b.    Exemplary and punitive damages;

c.    Prejudgment interest;

d.    Reasonable attorney's fees; and

e.    Such other relief as in law or equity may pertain.

<div style="margin-left: 40%;">

Respectfully Submitted,
HURWITZ LAW, PLLC

<u>/s/ Noah S. Hurwitz</u>
Noah Hurwitz (P74063)
Attorney for Plaintiffs
617 Detroit Street, Suite 125
Ann Arbor, MI 48103

</div>

(844) 487-9489

Dated: _____, 2023                    noah@hurwitzlaw.com

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| HURWITZ LAW PLLC | JACKSON LEWIS P.C. |
| Attorneys for Plaintiffs | 2000 Town Center, Ste. 1650 |
| 617 Detroit Street, Suite 125 | Southfield, MI 48075 |
| Ann Arbor, MI 48103 | (248) 936-1900 |
| (844) 487-9489 | maurice.jenkins@jacksonlewis.com |
| noah@hurwitzlaw.com | allan.rubin@jacksonlewis.com |
| grant@hurwitzlaw.com | elyse.culberson@jacksonlewis.com |
| kara@hurwitzlaw.com | Attorneys for Defendants |
| | |
| James A. Thomas (P80931) | Patricia Pryor |
| JIMMY THOMAS LAW | Jackson Lewis P.C. |
| Attorneys for Plaintiffs | 201 E. Fifth Street, 26th Floor |
| 1925 Breton Rd SE Ste 250 | Cincinnati, OH 45202 |
| Grand Rapids, MI 49506 | (513) 898-0050 |
| (616) 747-1188 | Patricia.pryor@jacksonlewis.com |
| jimmy@jimmythomaslaw.com | |

## **DEMAND FOR TRIAL BY JURY**

Lynn Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard, individually

and on behalf of others similarly situated, along with the other Plaintiffs by and through their

attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ Noah S. Hurwitz
Noah Hurwitz (P74063)
Attorney for Plaintiffs

Dated: _____, 2023
4883-6211-4143, v. 1

33