# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN ALBRIGHT, et al.
on behalf of themselves and
others similarly situated,

      Plaintiffs,

Case No. 1-22:cv-00638-JMB-SJB
Hon: Jane M. Beckering

v.

ASCENSION MICHIGAN, et al.

      Defendants.

---

| | |
|---|---|
| Noah S. Hurwitz (P74063)<br>Grant M. Vlahopoulos (P85633)<br>Kara F. Krause (P85487)<br>HURWITZ LAW PLLC<br>617 Detroit Street, Suite 125<br>Ann Arbor, MI 48103<br>(844) 487-9489<br>noah@hurwitzlaw.com<br>grant@hurwitzlaw.com<br>kara@hurwitzlaw.com | Maurice G. Jenkins (P33083)<br>Allan S. Rubin (P44420)<br>Elyse K. Culberson (P82132)<br>JACKSON LEWIS P.C.<br>2000 Town Center, Ste. 1650<br>Southfield, MI 48075<br>(248) 936-1900<br>maurice.jenkins@jacksonlewis.com<br>allan.rubin@jacksonlewis.com<br>elyse.culberson@jacksonlewis.com |
| James A. Thomas (P80931)<br>JIMMY THOMAS LAW<br>Attorneys for Plaintiffs<br>1925 Breton Rd SE Ste 250<br>Grand Rapids, MI 49506<br>(616) 747-1188<br>jimmy@jimmythomaslaw.com | Patricia Pryor<br>JACKSON LEWIS P.C.<br>201 E. Fifth Street, 26th Floor<br>Cincinnati, OH 45202<br>(513) 898-0050<br>Patricia.pryor@jacksonlewis.com |
| Attorneys for Plaintiffs | Attorneys for Defendants |

---

# DEFENDANTS' MEMORADUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES ............................................................................................. ii

I.  INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................ 2

    A.  Background of Litigation ......................................................................... 2

    B.  Settlement Fund ....................................................................................... 4

        1.  Class Notice ................................................................................ 5

        2.  Class Members, Opt-Outs, and Objectors ................................... 6

        3.  Anticipated Costs of Settlement Administration and Attorney Fees .......... 6

        4.  Compliance with the Class Action Fairness Act, 28 U.S.C. §1711, et seq. ("CAFA") ....................................................................... 7

III.  LEGAL ARGUMENT ...................................................................................... 8

    A.  Standard For Approval ............................................................................ 8

    B.  Plaintiffs' Limited Likelihood of Success on The Merits Weighs in Favor of Approval. ................................................................................. 11

        1.  By Settling the Case, Plaintiffs Eliminate the Risk that Defendants Could Prevail on the Merits. ....................................................... 12

        2.  The Settlement Provides Significant Relief to the Class ............ 16

    C.  There was No Fraud or Collusion ......................................................... 18

    D.  The Complexity, Expense, and Likely Duration of the Litigation Favor Approval. ................................................................................... 20

    E.  Amount of Discovery Engaged in by the Parties. ................................. 22

    F.  The Opinions of Class Counsel and Class Representatives ................... 23

    G.  The Reaction of Absent Class Members ............................................... 23

    H.  The Public Interest ................................................................................ 25

IV.  CONCLUSION ............................................................................................... 26

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Algarin v. NYC Health + Hospitals Corp.*, Case No. 1:22-cv-8340, 2023 U.S.
    Dist. LEXIS 108666 (S.D.N.Y. June 23, 2023 ......................................................14

*Aliano v. Township of Maplewood*,
    No. 22-cv-5598, 2023 U.S. Dist. LEXIS 116652 (D.N.J. July 7, 2023) ................13

*Alvarado v Memphis-Shelby Co Airport Auth*,
    Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259 (6th Cir. Aug. 15,
    2000) .........................................................................................................................9

*Athan v. United States Steel Corp.*,
    523 F.Supp. 3d 960 (E.D. Mich. 2021).................................................................11

*Aukamp-Corcoran v Lancaster Gen. Hosp.*,
    No. 19-5734, 2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 17, 2022) ................12

*Barrington v. United Airlines*,
    566 F. Supp. 3d 1102 (D. Colo. 2021)...................................................................14

*Berardinelli v. General Am. Life Ins. Co.*,
    357 F.3d 800 (8th Cir. 2004) .................................................................................20

*Bert v. AK Steel Corp.*,
    No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711 (S.D. Ohio, Oct. 23, 2008) ......19

*Biden v. Missouri*,
    ___ U.S.___, 142 S. Ct. 647, 211 L. Ed. 2d 433 (2022).......................................16

*Blackwell v Lehigh Val. Health Network*,
    No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa. Jan. 23, 2023).........13

*Bobbitt v. Acad. of Court Reporting, Inc.*,
    No. 07-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. July 21, 2009) ............10

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................11

*Bryan v. Pittsburgh Plate Glass Co.*,
    494 F.2d 799 (3d Cir.1974)....................................................................................25

ii

*Cagle v. Weill Cornell Medicine*,
    Case No. 22-cv-6951, 2023 U.S. Dist. LEXIS 113687 (S.D.N.Y. June 30,
    2023) ................................................................................................................12, 15

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860 (8th Cir. 2017) .........................................................................................6

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D.Mich.2003) ............................................................................25, 26

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*,
    803 F.2d 878 (6th Cir. 1986) ......................................................................................10

*Conner v. Raver*,
    2023 U.S. Dist. LEXIS 149360 (N.D. Ca. Aug. 24, 2023)..........................................15

*Creger v. United Launch All. LLC*,
    571 F. Supp. 3d 1256 (N.D. Ala. 2021) ......................................................................14

*D'Cunha v. Northwell Health Systems*,
    Case No. 1:22-cv-0988-MKV, 2023 U.S. Dist. LEXIS 33343 (S.D.N.Y. Feb.
    28, 2023) .........................................................................................................................13

*Detwiler v. Mid Columbia Medical Center*,
    Case No. 3:22-cv-01306-JR, 2023 U.S. Dist. LEXIS 92510 (D. Or. May 26,
    2023) ...............................................................................................................................13

*Diemond v. Mich. Dep't of Corr.*,
    No. 1:20-cv-473, 2020 U.S. Dist. LEXIS 112259 (W.D. Mich. June 26, 2020)....................16

*Divine Equal. Righteous v. Overbrook School For The Blind*,
    Case No. 23-846, 2023 U.S. Dist. LEXIS 128805 (E.D. Pa. July 26, 2023)...........................12

*Doe v. Déjà Vu Consulting, Inc.*,
    925 F.3d 886 (6th Cir. 2019) ...............................................................................10, 20

*Does v. Hochul*,
    Case No. 21-cv-5067, 2022 U.S. Dist. LEXIS 180025 (E.D.N.Y. Sep. 30,
    2022) .........................................................................................................................13, 15

*Does v. Northshore University Health System*,
    Case No. 1:21-cv-5683 (N.D. Ill. 2022) ...................................................................18

*Dover Glen Condo. Ass'n, v. Oakland Cnty.*,
    No. 22-11468, 2022 U.S. Dist. LEXIS 215745 (E.D. Mich. Nov. 30, 2022)............8, 9, 18, 22

*Draper v United States Pipe & Foundry Co*,
    527 F.2d 515 (6th Cir., 1975) ......................................................................................15

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y.2010) .................................................................... 25

*EEOC v. Geo Grp., Inc.*,
   616 F.3d 265 (3d Cir. 2010) .................................................................................... 15

*EEOC v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir.1985) .................................................................................... 25

*Ellison v. Inova Health Care Services*,
   Case No. 1:23-cv-00132, 2023 U.S. Dist. LEXIS 124861 (E.D. Va. July 19,
   2023) ........................................................................................................................ 13

*Finkbeiner v. Geisinger Clinic*,
   623 F.Supp. 3d 458 (M.D. Pa. 2022) ...................................................................... 13

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
   104 F. Supp. 3d 290 (E.D.N.Y. 2015) .................................................................... 25

*Friend v. Astrazeneca Pharmaceuticals LP*,
   Civil No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749 (D. Md. May 11,
   2023) ........................................................................................................................ 12

*Gage v. Mayo Clinic*,
   No. CV-22-02091-PHX-SMM, 2023 U.S. Dist. LEXIS 77304 (D. Ariz. May
   3, 2023) .................................................................................................................... 12

*Garczynski v. Accident Fund Insurance Co.*,
   Case No. 22-cv-12615, 2023 U.S. Dist. LEXIS 84101 (E.D. Mich. May 12,
   2023) ........................................................................................................................ 16

*Geerlings v Tredyffrin/Easttown Sch. Dist.*,
   No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sept. 27, 2021) .......... 13

*Gooch v. Life Investors Ins. Co. of America*,
   672 F.3d 402 (6th Cir. 2012) ............................................................................. 6, 19

*Graham v. Peltz*,
   44 F.4th 527 (6th Cir. 2022) .................................................................................... 20

*Granada Invest., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ................................................................................. 18

*Grant v. Bethlehem Steel Corp.*,
   823 F.2d 20 (2d Cir.1987) ........................................................................................ 25

*Griffin v. Massachusetts Department of Revenue*,
   Case No. 22-cv-11991-FDS, 2023 U.S. Dist. LEXIS 125845 (D. Mass. 2023) ...... 12

*Groff v. DeJoy*,
    143 U.S. 2279 (2023) ........................................................................................15

*Halczenko, et al. v. Ascension Health Inc., et al.*,
    Case No. 1:21-cv-2816 (S.D. Ind.) .............................................................6, 20, 24

*Hammon v. Barry*,
    752 F. Supp. 1087 (D.D.C.1990) .......................................................................25

*Hospitals
Corp.*, Case No. 1:22-cv-8340, 2023 U.S. Dist. LEXIS 108666 (S.D.N.Y.
    June 23, 2023) ...........................................................................................14, 15

*Huguley v. Gen. Motors Corp.*,
    No. 89-2172, 1991 U.S. App. LEXIS 2993 (6th Cir. Feb. 22, 1991) (per
    curiam) .......................................................................................................25

*Int'l Union v. Ford Motor Co.*,
    No. 07-CV-14845, 2008 U.S. Dist. LEXIS 66899 (E.D. Mich. Aug. 29, 2008) ...................11

*Int'l Union v. GMC*,
    No. 07-CV-14074, 2008 U.S. Dist. LEXIS 92590 (E.D. Mich. July 31, 2008) .....................11

*IUE-CWA v. General Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ............................................................... iii, 8, 10

*Kalsi v. New York City Transit Authority*,
    62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999) .............................15

*Kiel v. Mayo Clinic Health System Southeast Minn.*,
    Case No. 22-1319, 2023 U.S. Dist. LEXIS 135595 (D. Minn. Aug. 4, 2023) ......................13

*Kogan v. AIMCO Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ......................................................................9

*Leigh v. Artis-Naples, Inc.*,
    No. 2:22-cv-606, 2022 U.S. Dist. LEXIS 233789 (M.D. Fla. Dec. 30, 2022) ......................14

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)................................................................18

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015)................................................................8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ...........................................................................9

*Lucky v. Cobx. Co.*,
    Case No. 22-12514, 2023 U.S. Dist. LEXIS 81969 (E.D. Mich. May 10, 2023) ................... 16

*Mace v. Crouse Health Hospital*,
    Case No. 5:22-cv-1153 (N.D.N.Y. Aug. 8, 2023) .................................................... 15

*McKinley v. Princeton University*,
    No. 22-5069, 2023 U.S. Dist. LEXIS 75602 (D.N.J. 2023) ...................................... 12

*Nat'l Rural Telecomm. Corp. v. Directv, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 11

*Negrete v. Allianz Life Ins. Co.*,
    523 F.3d 1091 (9th Cir. 2008) .............................................................................. 20

*O'Hailpin v. Hawaiian Airlines, Inc.*,
    583 F. Supp. 3d 1294 (D. Haw. 2022) ................................................................. 14

*Officers For Justice v. Civil Service Commissions, etc.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................... 12

*In re Oil Spill by the Oil Rig "Deepwater Horizon.*
    910 F. Supp. 2d 891 (E.D. La. 2012) ................................................................... 25

*In re Omnivision Tech., Inc.*,
    2008 WL 123936 (N.D. Cal. Jan. 9, 2008) ............................................................ 11

*Passarella v Aspirus, Inc.*,
    Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 U.S. Dist. LEXIS 40958 (W.D.
    Wis. Mar. 9, 2023) ............................................................................................ 13

*In re Polyurethane Foam Antitrust Litigation*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) .................................................................. 9

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ............................................................................... 11

*Reed v General Motors Corp.*,
    703 F.2d 170 (5th Cir.1983) ................................................................................ 25

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*,
    No. 07-2784, 2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016) .................................... 18, 20, 23

*Reichert v. Infusion Partners LLC*,
    22-cv-05450, 2023 U.S. Dist. LEXIS 125765 (E.D. La July 20, 2023) ........................ 12

*Rogers v. Neb. Urban Indiana Health Coal., Inc.*,
    No. 8:22-CV-410, 2023 U.S. Dist. LEXIS 67266 (D. Neb. Apr. 18, 2023) .................... 12

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18,
   2010) ..................................................................................................................22

*In re Sinus Buster Prods. Consumer Litig.*,
   No. 12–CV–2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415 (E.D.N.Y.
   Nov. 10, 2014) ....................................................................................................25

*South Carolina Nat'l Bank v. Stone*,
   139 F.R.D. 335 (D.S.C. 1991) ...........................................................................10

*Sweet v. Gen Tire & Rubber Co.*,
   No. C75-181A, 1982 U.S. Dist. LEXIS 12371 (N.D. Ohio Mar. 17, 1982)............................9

*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................8, 18, 21

*Thomsen v. Morley Co., Inc.*,
   No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703 (E.D. Mich., Nov. 4,
   2022) ..................................................................................................................19

*Together Emples. v. Mass Gen. Brigham Inc.*,
   573 F. Supp. 3d 412 (D. Mass. 2021) ................................................................14

*UAW v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .................................................................... *passim*

*Ulrich v. Lancaster Gen. Health*,
   No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa. Apr. 13, 2023) ...................13

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................... iii

*Villareal v. Rocky Knoll Health Care Center*,
   No. 21-CV-729, 2022 U.S. Dist. LEXIS 210267 (E.D. Wisc. Nov. 21, 2022) .....................13

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir.2005)...................................................................................25

*Whitford v. First Nationwide Bank*,
   147 F.R.D. 135 (W.D. Ky. 1992)........................................................................10

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) .......................................................................10, 23

*Winans v Cox Auto, Inc.*,
   No. 22-3826, 2023 U.S. Dist. LEXIS 66444 (E.D. Pa. Apr. 17, 2023) ...................13

*Wolff v. Cash 4 Titles*,
　　No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012) .................... 19

**Statutes**

28 U.S.C. §1711, et seq. ................................................................................................. 7

28 U.S.C. § 1715(b) ....................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 5, 24

Fed. R. Civ. P. 23(c)(2) ................................................................................................. 5

Fed. R. Civ. P. 23(e) ................................................................................................... 23

Fed. R. Civ. P. 23(e)(1) ......................................................................................... 5, 10

Fed. R. Civ. P. 23(e)(2) ................................................................................................. 8

**Other Authorities**

86 Fed. Reg. 61568 (2021) ............................................................................................ 2

## I.   __INTRODUCTION__

The Settlement Agreement is fair, reasonable, and adequate.  Plaintiffs' claims, stemming from the global pandemic, have significant risk of being dismissed, face lengthy and expensive litigation, and/or years of appeals.  Indeed, prior to the settlement, Defendants had moved to dismiss this case.  (ECF 38) Defendants have obtained dismissals in at least nine other cases in which similar claims were made.  Across the country approximately 150 cases alleging claims like those made in this case have been dismissed, in whole or in part, on the pleadings and several others that have reached summary judgment have similarly been dismissed. See examples in Section III, B below.

Settlement discussions in this case occurred only because the Court ordered the parties to participate in a settlement conference with Magistrate Judge Berens.  (ECF 30, PageID 209) The parties continued discussions for several months before Defendants agreed to a settlement proposal substantially similar to Plaintiffs' original demand.   This Court preliminarily approved the Settlement on April 26, 2023 finding that it was "fair, reasonable, adequate".  (ECF 63, PageID 575) Notice has been provided to the potential class members and 2,703 class members submitted claims confirming that the individuals the agreement was designed to assist also found it fair, reasonable and adequate.

The law favors the settlement of class action lawsuits.  *UAW v. General Motors Corp*., 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"); *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (noting "the general federal policy favoring the settlement of class actions"); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976) (Settlement of class actions favored when substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation).  Given the uncertainties of the litigation, the complexity of issues, the value of the settlement to class members, the strong

1

support of the class, and the absence of meaningful objections to the settlement, the Court should approve the settlement as the settlement is "fair, reasonable, and adequate".

## II.    **FACTUAL BACKGROUND**

### A.    **Background of Litigation**

No one needs a recap of the COVID-19 pandemic; it was bad.  It was particularly dangerous for vulnerable populations (the very individuals healthcare employers and hospitals, like Defendants, care for).

Like many healthcare employers, Defendants adopted a COVID-19 Vaccine Policy ("CVP") to protect its patients and workforce from COVID-19.  Its policy was similar to the requirements announced by President Biden on September 9, 2021 https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ and the Interim Final Rule issued on November 5, 2021, by the Centers for Medicare & Medicaid Services ("CMS"), 86 Fed. Reg. 61568 (2021).

Under the CVP, employees had to be fully vaccinated against COVID-19 by November 12, 2021.  Employees with medical contraindications or religious beliefs could seek an exemption from the CVP.  Employees who remained unvaccinated and who had not received an exemption were placed on unpaid leave or suspension on November 12, 2021.  (Exhibit A, Pratt Decl. ¶ 3)  Due to a variety of changing circumstances, Defendants recalled the vast majority of employees who had requested medical or religious exemptions anywhere from 1 day to roughly 6 weeks from the start of any suspension.  (ECF 1, Complaint, PageID 3: alleging from the start that Defendants recalled employees in December 2021) A number of individuals obtained other employment prior to being recalled.  (Exhibit A, Pratt Decl. ¶ 6)

According to Plaintiffs, they submitted, and were denied, religious exemption requests to the vaccine requirement.  Plaintiffs filed this lawsuit seeking to represent a class of employees who

were denied a religious exemption from the COVID-19 vaccine and either suspended without pay or forced to resign.  (ECF 1, Complaint ¶88)  On November 17, 2022, Defendants moved to dismiss Plaintiffs' Second Amended Complaint.  (ECF 38)

On January 13, 2023, the parties attended a court-ordered settlement conference with Magistrate Judge Berens.  (ECF 30, ¶6) While the conference did not resolve the matter, the parties ultimately reached a settlement along terms substantially similar to the original demand of Plaintiffs, but on a nationwide basis.  Although Plaintiffs originally only sued the Michigan entities of Ascension Health Alliance, the policy challenged extended throughout the Ascension Health Alliance system.  Ascension Health Alliance and its many subsidiaries still employ many of the class members.  Ascension Health Alliance recognized that only providing an offer of settlement to individuals in one state would create the potential for more disruption and disgruntlement among its employees.  On April 24, 2023, the parties filed a Joint Motion for Preliminary Approval of the settlement.  (ECF 60)  The settlement included an agreement to a Third Amended Complaint ("TAC") for purposes of the settlement.  The TAC asserts substantially the same claims as asserted in the prior complaint but extended it to all Ascension Health Alliance entities nationwide who adopted the CVP or a substantially similar vaccination policy.  (ECF 65, ¶¶ 193-194)

After finding the settlement: (a) resulted from the parties' good-faith negotiations; (b) was entered into by experienced counsel after extensive arm's length negotiations; (c) allowed the parties to adequately assess the case's strengths and weaknesses; and (d) reasonably accounts for the parties' strengths and weaknesses, the Court approved the filing of the TAC, certified the class and preliminarily approved the settlement.  (ECF 63) At the same time, the Court approved the dissemination of the class notice and provided procedures for Class Members to object or opt out from the settlement.  (*Id.*)  The Court set a final approval hearing for October 5, 2023.  (ECF 64)

### B.    <u>Settlement Fund</u>

Under the settlement agreement, Class Members could submit a claim form if they believed they were entitled to payment, could object to the settlement, or could opt out of the settlement entirely.  (ECF 60-1) Class members who opt out of the settlement, are not bound by the settlement. (ECF 60-1, PageID 520)

Those who wished to receive a settlement payment were required to timely submit a Valid Claim. For each State Subclass[1], the Claims Administrator will take the Average Weekly Salary for the Class Members in that State Subclass that submit Valid Claims and multiply that by the Total Number of Claims Weeks for those Class Members (up to a maximum of 5 weeks for any Class Member), to arrive at the State Subclass Total Settlement Fund.  (ECF 60-1, Settlement Agreement, Art. III (d)-(f), PageID 469-70) The Average Weekly Salary will be determined by multiplying the average hourly wage, as of November 12, 2021, for Class Members in the State Subclass who submit Valid Claims by the average full-time equivalent ("FTE") hours for the positions held by those Class Members as of November 12, 2021.  (ECF 60-1, Settlement Agreement, Art. II(d), PageID 502)  After attorney fees and Claims Administrator fees are deducted from the Total Settlement Fund, the remaining Net Settlement Fund will be proportionally divided among the State Subclasses and the Claims Administrator will distribute proportionate shares to each Settlement Class Member who submitted a Valid Claim considering the FTE and number of Claim Weeks for the Settlement Class Member, up to a maximum of five weeks.  Employer employment taxes will be paid separately by Ascension (*Id.*, Art. IV (h)) and employee-based employment taxes on wages will be withheld by the Claims Administrator.  (*Id.*, Art. IV (f)) Settlement Checks will be calculated and mailed by the Claims Administrator and will

---

[1] For ease of administration with respect to calculating and distributing the settlement, the class was divided into state and job subclasses for purposes of the settlement.

be valid for 60 days after issuance.  (*Id*, Art. IV(g))  No Class Representative is seeking or will receive an incentive payment for their service as a Class Representative in this matter.

### 1.  Class Notice

Rust Consulting, Inc. (www.rustconsulting.com) ("Rust") was retained as the Claims Administrator.  On June 9, 2023, in accordance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order, Rust mailed class notices (along with claim forms and exclusion forms) to 4,642 potential class members and also emailed 5,708[2] class notices (along with claim forms and exclusion forms).  In addition, another 338 notices were mailed at the request of individuals, and 114 notices were remailed after receipt of a forwarding address or the result of a skip-trace being performed by Rust.  (Exhibit B, Declaration of Claims Administrator, ¶¶ 13-18)

A copy of the Notice, Claim and Exclusion forms are attached as Exhibits A-C of the Declaration of the Claims Administrator.  (See Exhibit B (A-C), Class Notice)

A website was also created by Rust, www.religiousclaim.com, where class members could view the: (a) class notice, (b) settlement agreement, with exhibits, (c) Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement; (d) Preliminary Approval Order, (e) Claim Form, and (f) Exclusion form.  (See, Exhibit B, ¶12).  Class members could complete the claim and exclusion forms online, or mail or email the forms to the Claims Administrator.  *Id, see also* ECF 60-1, PageIDs 480-481, Art. IV, ¶¶(b)(c)(d).  This process satisfies both due process and Rule 23.[3]

---

[2] There were more email notices than mailed notices because Defendants had multiple email addresses for some potential class members.  (Exhibit B, ¶13)

[3] The notice and methods of providing notice, complied with those this Court approved and had determined satisfied the requirements of due process and conformed with the requirements of Fed. R. Civ. P. 23(c)(2) and (e)(1) and provides the best notice practicable under the circumstances. (ECF 63, PageID 578).  To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'"  *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 422-23 (6th Cir. 2012).  All that the notice must do is "'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests."  *Id*.  When a class has

### 2.    <u>Class Members, Opt-Outs, and Objectors</u>

Of the 4,642 individuals receiving notice, only 281 (6%) have requested exclusion from the class and settlement (121, or 43% of those who requested exclusion, have their own cases pending against one or more of the Defendants), and only nine individuals (.19%) have filed objections to the settlement. Eight of the nine individuals who have filed objections are represented by William Bock and Kroger Gardis & Regas, LLP ("KGR"). Bock and KGR also represented proposed intervenor Paul Halczenko; they are the subject of the Motion for Contempt because class members were being solicited to let Bock file objections to the settlement on behalf of the plaintiffs in the *Halczenko* case (see ECF 80); and they represent the 87 plaintiffs in the *Halczenko, et al. v. Ascension Health Inc., et al.*, Case No. 1:21-cv-2816 (S.D. Ind.) case, who all opted out of this settlement.  2,703 (58%) of the class members have filed a claim.[4]

### 3.    <u>Anticipated Costs of Settlement Administration and Attorney Fees</u>

The current cost of administration, according to Rust is $54,171.27.  (Exhibit B (D))  The cost of administration is a "Settlement Cost" that will be paid from the Settlement Fund before distribution of the remaining sums to the various settlement subclasses.  (ECF 60-1, Art. II, ¶hh, PageID 475)

---

settled its claims, "[t]he contents of a ... notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, ... that any class member may appear and be heard at the hearing," *id.,* citing Newberg on Class Actions, § 8:32, and "information [about] the class members' right to exclude themselves and the results of failure to do so." *Id.* § 8:33.

[4]  The Claims Administrator is in the process of reviewing the claims to determine validity and determine the total amount that will be placed in the settlement fund.  While there "is no requirement for a court to know the final amount received by the class before approving a settlement" *see Caligiuri v. Symantec Corp.*, 855 F.3d 860, 864 (8th Cir. 2017) ("it is [also] common for courts to approve settlements after receiving only estimates of administrative costs."), Defendants currently expect to be able to estimate the Total Settlement Fund by the time of the fairness hearing.  Amounts to individuals will then be apportioned by the Claims Administrator according to the terms of the Agreement after this Court approves the settlement and decides the attorney fees and cost to be approved.

Under Article V of the Settlement Agreement, Defendants take no position on the award of attorney fees and costs to Class Counsel, provided that any award for fees and costs does not exceed one-third (33.33%) of the Total Settlement Fund and that the award of attorney fees and costs do not cause Defendants to be required to pay more than the Total Settlement Fund.  (ECF 60-1, PageIDs.483-484, Art. V) The Settlement Agreement leaves it to the Court's discretion to award some, all, or none of the attorney fees and costs requested by Class Counsel.

**4.      Compliance with the Class Action Fairness Act, 28 U.S.C. §1711, et seq. ("CAFA")**

28 U.S.C. § 1715(b) requires that within 10 days after a proposed settlement of a class action is filed in Court a copy of certain documents related to the proposed settlement be served on federal and state officials, as those terms are defined in the Act.  These include the Attorney General of the United States and the either the primary official in a state that licenses, authorizes or who has supervisory authority over a defendant or the state attorney general.  *Id.*  Notice under the Act must be given at least 90 days before the final approval notice.  *Id.* subd. D.

On May 4, 2023 a Notice of Class Action Settlement, along with the required exhibits was served on the Attorney General of the United States and the Attorney General's and State Regulatory Agencies for the States of Alabama, Arkansas, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Michigan, Mississippi, Missouri, New York, North Carolina, New Mexico, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Wisconsin, Wyoming, and the District of Columbia.  (ECF 66).  Defendants served the CAFA notice with required Exhibits 154 days before the fairness hearing.  No federal or state official has objected to the settlement.[5]

---

[5] This factor favors settlement.  *In re LinkedIn User Privacy Litig*., 309 F.R.D. 573, 588-589 (N.D. Cal. Sept. 15, 2015) (When federal or state officials do not raise concerns about a class settlement, this factor favors settlement).

7

## III.    LEGAL ARGUMENT

### A.    Standard For Approval

Under Rule 23(e)(2), a class action settlement requires a district court's approval after a hearing and after the court has found that the settlement is fair, reasonable, and adequate.  "In making this determination, the court evaluates the proposed class action settlement in light of the general federal policy favoring the settlement of class action." *IUE-CWA,* 238 F.R.D. at 593; *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001) (noting the "strong presumption" in favor of settlement).

The evaluation and approval of a class settlement is committed to the sound discretion of the district court.  *Garner Props & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655, *10 (E.D. Mich. Aug. 14, 2020).  "In exercising that discretion, the Court may limit the fairness hearing to whatever is necessary to aid it in reaching an informed, just and reasoned decision" on whether the proposed settlement is fair, reasonable, and adequate.  *Id., citing Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 U.S. Dist. LEXIS 70471, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006).  The Court must determine if the settlement falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation.  *Dover Glen Condo. Ass'n*, *v. Oakland Cnty.*, No. 22-11468, 2022 U.S. Dist. LEXIS 215745 at *6 (E.D. Mich. Nov. 30, 2022) (citations omitted).  Thus, "[a]n appropriate range of reasonableness 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*, citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  Because the Court must consider risk factors and the uncertainty of the outcome of the litigation as well as the potential recovery, a proposed class settlement may be fair, just, and reasonable even though it amounts to only a fraction of the potential recovery in a fully litigated

case. *Alvarado v Memphis-Shelby Co Airport Auth,* Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259, at **15-16 (6th Cir. Aug. 15, 2000) (A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case) (citations omitted); *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (risk of going to trial would have been significant); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000)("Approval should also not be withheld merely because the amount of settlement is less than what a successful plaintiff would have received at the conclusion of a fully litigated case."); *Sweet v. Gen Tire & Rubber Co.*, No. C75-181A, 1982 U.S. Dist. LEXIS 12371, at *20 (N.D. Ohio Mar. 17, 1982) (it is not necessary, nor expected, that class plaintiffs obtain through a settlement the same or the identical relief that would have been realized through a victorious trial); *In re Polyurethane Foam Antitrust Litigation*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."), citing *In re Bear Stearns Cos., Inc. Sec. Litig*., 909 F. Supp. 2d 259, 270 (S.D.N.Y.2012) (citations and internal quotation marks omitted). Under this standard, "[a] just result is often no more than an arbitrary point between competing notions of reasonableness." *Dover Glen.*, 2022 U.S. Dist. LEXIS 215745 at *6.

Courts must bear in mind the limited scope of its task and resist the temptation to convert the fairness hearing into a trial on the merits. *Garner Props. & Mgmt., LLC*, 2020 U.S. Dist. LEXIS 146655 at *10; *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (quoting *Officers For Justice v. Civil Service Commissions, etc.*, 688 F.2d 615, 615 (9th Cir. 1982); *See also Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) ("The Court has no occasion to determine the merits of the controversy or the factual underpinning of the legal

authorities advanced by the parties.").  The court "is not to decide whether one side is right or even whether one side has the better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement."  *UAW*, 497 F.3d at 632.  "[T]here is a strong initial presumption that the compromise is fair and reasonable.'"  *South Carolina Nat'l Bank v. Stone,* 139 F.R.D. 335, 339 (D.S.C. 1991).

In the Sixth Circuit, several factors guide the court's inquiry to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e): (1) the likelihood of success on the merits; (2) the risk of fraud or collusion; (3) the complexity, expense and likely duration of the litigation; (4) the amount of discovery engaged in by the parties; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *Doe v. Déjà Vu Consulting, Inc.,* 925 F.3d 886, 894-895-96 (6th Cir. 2019), citing *UAW,* 497 F.3d at 631 (citation omitted); *see also, Bobbitt v. Acad. of Court Reporting, Inc.*, No. 07-10742, 2009 U.S. Dist. LEXIS 62365, **4-5 (E.D. Mich. July 21, 2009).  But these factors should not be applied in a "formalistic" fashion.  *Whitford v. First Nationwide Bank,* 147 F.R.D. 135, 140 (W.D. Ky. 1992) ("A class action settlement cannot be measured precisely against any particular set of factors.").  The court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case."  *IUE-CWA,* 238 F.R.D. at 594-595, citing *UAW v. Ford*, 2006 U.S. Dist. LEXIS 70471, 2006 WL 1984363, *22 (E.D. Mich. July 13, 2006) (citing *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

Each of these factors is discussed below.

**B.      Plaintiffs' Limited Likelihood of Success on The Merits Weighs in Favor of Approval.**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Id., citing In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (citations omitted). All class action settlements involve a balancing of competing interests.  To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *See Athan v. United States Steel Corp.*, 523 F.Supp. 3d 960, 966-67 (E.D. Mich. 2021); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).  District courts recognize that the reasonableness of a settlement is not dependent upon it approaching the potential recovery plaintiffs might receive if successful at trial.  *See Int'l Union v. Ford Motor Co.*, No. 07-CV-14845, 2008 U.S. Dist. LEXIS 66899, *71 (E.D. Mich. Aug. 29, 2008)("[i]n assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation."); *Int'l Union v. GMC*, No. 07-CV-14074, 2008 U.S. Dist. LEXIS 92590, **69-70 (E.D. Mich. July 31, 2008) (same); *In re Omnivision Tech., Inc.*, 2008 WL 123936 (N.D. Cal. Jan. 9, 2008); *Nat'l Rural Telecomm. Corp. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it's "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *Officers for Justice,* 688 F. 2d at 628 (it is "the complete package, taken as a whole rather than the individual component parts, that must be examined for overall fairness").

The Court's role is not to "decide the merits of the case or resolve unsettled legal questions," but rather to weigh "the plaintiff's likelihood of success on the merits against the

amount and form of the relief offered in settlement." *UAW*, 497 F.3d at 631.  Based on the uncertainty of Plaintiffs' claims, and the complexity and magnitude of the litigation, the proposed settlement agreement is more than fair.

### 1.      By Settling the Case, Plaintiffs Eliminate the Risk that Defendants Could Prevail on the Merits.

If this case proceeded to dispositive motion or to trial, Defendants believe they would have prevailed.  Each Plaintiff and class member would have to establish that they have a sincerely held religious belief that conflicted with the vaccine requirement.  Many courts have dismissed similar claims on this basis alone.  *See Rogers v. Neb. Urban Indiana Health Coal., Inc*., No. 8:22-CV-410, 2023 U.S. Dist. LEXIS 67266 (D. Neb. Apr. 18, 2023) (dismissing claims for failure to establish religious belief); *McKinley v. Princeton University*, No. 22-5069, 2023 U.S. Dist. LEXIS 75602 (D.N.J. 2023) (same); *Gage v. Mayo Clinic*, No. CV-22-02091-PHX-SMM, 2023 U.S. Dist. LEXIS 77304 (D. Ariz. May 3, 2023) (same); *Friend v. Astrazeneca Pharmaceuticals LP*, Civil No. SAG-22-03308, 2023 U.S. Dist. LEXIS 83749 (D. Md. May 11, 2023)(same); *Griffin v. Massachusetts Department of Revenue*, Case No. 22-cv-11991-FDS, 2023 U.S. Dist. LEXIS 125845 (D. Mass. 2023)(same); *Cagle v. Weill Cornell Medicine,* Case No. 22-cv-6951, 2023 U.S. Dist. LEXIS 113687 (S.D.N.Y. June 30, 2023) (same); *Divine Equal. Righteous v. Overbrook School For The Blind*, Case No. 23-846, 2023 U.S. Dist. LEXIS 128805 (E.D. Pa. July 26, 2023)(same); *Reichert v. Infusion Partners LLC,* 22-cv-05450, 2023 U.S. Dist. LEXIS 125765 (E.D. La July 20, 2023)(same); *Aukamp-Corcoran v Lancaster Gen. Hosp*., No. 19-5734, 2022 U.S. Dist. LEXIS 29355 (E.D. Pa. Feb. 17, 2022) (same); *Winans v Cox Auto, Inc.*, No. 22-3826, 2023 U.S. Dist. LEXIS 66444 (E.D. Pa. Apr. 17, 2023) (same) *Blackwell v Lehigh Val. Health Network*, No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747 (E.D. Pa. Jan. 23, 2023)(same); *Passarella v Aspirus, Inc.,* Nos. 22-cv-287, 22-cv-342, 22-cv-392, 2023 U.S. Dist. LEXIS 40958

(W.D. Wis. Mar. 9, 2023) (same); *Detwiler v. Mid Columbia Medical Center*, Case No. 3:22-cv-01306-JR, 2023 U.S. Dist. LEXIS 92510 (D. Or. May 26, 2023)(same); *Kiel v. Mayo Clinic Health System Southeast Minn*., Case No. 22-1319 (JRT/ECW), 2023 U.S. Dist. LEXIS 135595 (D. Minn. Aug. 4, 2023)(same); *Geerlings v Tredyffrin/Easttown Sch. Dist*., No. 21-cv-4024, 2021 U.S. Dist. LEXIS 183966 (E.D. Pa. Sept. 27, 2021)(same); *Ellison v. Inova Health Care Services*, Case No. 1:23-cv-00132, 2023 U.S. Dist. LEXIS 124861  (E.D. Va. July 19, 2023)(same); *Aliano v. Township of Maplewood,* No. 22-cv-5598, 2023 U.S. Dist. LEXIS 116652 (D.N.J. July 7, 2023) (same); *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 U.S. Dist. LEXIS 64750 (E.D. Pa. Apr. 13, 2023) (same); *Finkbeiner v. Geisinger Clinic*, 623 F.Supp. 3d 458 (M.D. Pa. 2022) (same).

Second, Defendants can establish that the requested religious accommodations to its vaccine policy posed an undue hardship as a matter of law.  *See Does v. Hochul*, Case No. 21-cv-5067, 2022 U.S. Dist. LEXIS 180025, at *45 (E.D.N.Y. Sep. 30, 2022) (granting motion to dismiss finding that "exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship."); *D'Cunha v. Northwell Health Systems*, Case No. 1:22-cv-0988-MKV, 2023 U.S. Dist. LEXIS 33343 (S.D.N.Y. Feb. 28, 2023) (granting motion to dismiss where reporting unvaccinated to a worksite providing direct patient care posed an unacceptable health and safety threat to patients);  *Villareal v. Rocky Knoll Health Care Center,* No. 21-CV-729, 2022 U.S. Dist. LEXIS 210267, *16 (E.D. Wisc. Nov. 21, 2022) (employer acted reasonably where it acted in accordance with federal COVID-19 guidance; "[A]n accommodation can be an undue hardship if it causes or increases safety risks or the risk of legal liability for the employer.  'The inquiry ultimately boils down to whether the employer acted reasonably [in

determining that a potential accommodation would cause it undue hardship].'"); *Algarin v. NYC Health + Hospitals Corp.*, Case No. 1:22-cv-8340, 2023 U.S. Dist. LEXIS 108666, *23 (S.D.N.Y. June 23, 2023)("Furthermore, tracking compliance with testing, permitting Plaintiff to potentially expose other workers at H+H to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all significant hardships that create an undue burden on Defendant with the requested accommodation."); *Together Emples. v. Mass Gen. Brigham Inc.,* 573 F. Supp. 3d 412, 433 (D. Mass. 2021) ("Under the circumstances, it was reasonable for MGB to conclude that unvaccinated employees—who are more likely to become infected—pose a direct threat to patients and others. '[T]his court should not second-guess the hospital's judgment in matters of patient safety.'"); *Barrington v. United Airlines,* 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (recognizing the undue hardship created by the potential risk of the unvaccinated associates exposing co-workers to heightened risk of COVID-19); *Creger v. United Launch All. LLC,* 571 F. Supp. 3d 1256, 1264 (N.D. Ala. 2021) (denying injunctive relief based on the undue hardship posed by the added cost and administrative burden of providing weekly testing, and the risk of employee hospitalizations and deaths); *O'Hailpin v. Hawaiian Airlines, Inc.,* 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) (recognizing undue hardship from increased risk of COVID-19 that unvaccinated employees pose to other employees and passengers); *Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606, 2022 U.S. Dist. LEXIS 233789, at *31 (M.D. Fla. Dec. 30, 2022) (recognizing undue hardship in non-healthcare setting where providing accommodation "might compel other employers to accept less favorable working conditions by forcing them to rehearse and perform for extended periods of time in close proximity to individuals who were at higher risk of transmitting COVID-19").

Title VII does not require that safety be subordinated to the religious beliefs of an employee. *Draper v United States Pipe & Foundry Co*, 527 F.2d 515, 521 (6th Cir., 1975). *See also Kalsi v. New York City Transit Authority*, 62 F. Supp. 2d 745, 758 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999); *EEOC v. Geo Grp., Inc.*, 616 F.3d 265, 273 (3d Cir. 2010) ("A religious accommodation that creates a genuine safety or security risk can undoubtedly constitute an undue hardship."). Even after *Groff v. DeJoy,* 143 U.S. 2279 (2023), courts have found an undue hardship when the accommodation requested was an exemption to a vaccine policy. *See Cagle v. Weill Cornell Medicine*, Case No. 22-cv-6951 (S.D.N.Y. 2023) (finding undue hardship in vaccine case post *Groff*); *Mace v. Crouse Health Hospital*, Case No. 5:22-cv-1153 (N.D.N.Y. Aug. 8, 2023) (same); *Conner v. Raver*, 2023 U.S. Dist. LEXIS 149360, *15 (N.D. Ca. Aug. 24, 2023)(same). And even the cases pre-*Groff* made clear that the burden was significant, courts were not relying on a mere de minimis burden when they found undue hardship. *See e.g. Does v. Hochul*, 2022 U.S. Dist. LEXIS 180025 at *145 (granting motion to dismiss finding that "exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a ***significant hardship***.")(emphasis added); *Algarin, 2023 U.S. Dist. LEXIS 108666 at *23* ("Furthermore, tracking compliance with testing, permitting Plaintiff to potentially expose other workers at H+H to the COVID-19 virus, and facing legal consequences if someone should be infected with COVID-19 due to exposure from Plaintiff, are all ***significant hardships*** that create an undue burden on Defendant with the requested accommodation.")(emphasis added). As the Supreme Court recognized in *Biden v. Missouri*, ___ U.S.___, 142 S. Ct. 647, 652, 211 L. Ed. 2d 433 (2022), the Secretary of Health & Human Services ("HHS") determined that vaccination for healthcare workers was "necessary for the health and safety of individuals to whom care and

15

services are furnished" and that unvaccinated staff pose a **"*serious threat*"** to the health and safety of patients, based on data showing that the COVID–19 virus can spread rapidly among healthcare workers and from them to patients, and that such spread is more likely when healthcare workers are unvaccinated.  Absent settlement, it is likely Plaintiffs' claims would be dismissed, and Plaintiffs and the class would receive nothing.[6]

Finally, even if dismissal and summary judgment could be avoided, Plaintiffs would have to convince a jury that Defendants should have allowed the doctors, nurses, and other healthcare professionals to go unvaccinated, in the midst of a global and deadly pandemic, even though they were caring for the most vulnerable patients (and potentially even caring for the jurors' loved ones).

Plaintiffs' had (and if settlement is not approved) have a lengthy and uphill battle, which would likely end up in appellate challenges.  And if Defendants prevail, Plaintiffs receive nothing. But by virtue of the settlement, Plaintiffs will receive a significant portion of any lost wages caused by the suspensions.

## 2.    The Settlement Provides Significant Relief to the Class

This settlement provides significant relief to the class.  Under the settlement, Defendants are providing up to five weeks of average salary for each class member who submitted a valid

---

[6] Plaintiffs' retaliation claims fare no better. "[T]he Sixth Circuit has recently stated, 'A request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation.' *Garczynski v. Accident Fund Insurance Co*., Case No. 22-cv-12615, 2023 U.S. Dist. LEXIS 84101 (E.D. Mich. May 12, 2023)(dismissing retaliation claim), quoting *Stanley v. ExpressJet Airlines, Inc.,* 808 F. App'x 351, 358 (6th Cir. 2020); *see also  Diemond v. Mich. Dep't of Corr.*, No. 1:20-cv-473, 2020 U.S. Dist. LEXIS 112259, at **23-24 (W.D. Mich. June 26, 2020)(plaintiff cannot assert retaliation claim based on failed accommodation request); *Lucky v. Cobx. Co.*, Case No. 22-12514, 2023 U.S. Dist. LEXIS 81969, *7 (E.D. Mich. May 10, 2023) ("Lucky's amended complaint makes clear that she was terminated because she refused the vaccine, not because she requested a religious exemption.").

16

claim.  For many class members this amounts to full lost wages.[7]  These amounts are added into one total settlement fund.  After deducting approved attorney fees and costs from the total settlement fund, the claims administrator then distributes the remaining amount proportionally to the claiming class members.

The amount is intended as a settlement, not a make whole remedy.  The merits of the claims are highly disputed by the parties.  And due to the number of class members involved and the varying reasons for why someone may have experienced a longer gap in employment, five weeks was a reasonable compromise.  For individuals who were out longer, mitigation likely occurred.  Indeed, many employees had obtained other employment before they were recalled.  Moreover, the five-week cap was clear in all the settlement communications.  With that knowledge, roughly 1,000 individuals who claimed to be out longer than five weeks filed claims agreeing this was a fair settlement and they did not want to opt out.  And roughly 1,000 individuals who claimed to be out less than five weeks, and who will receive smaller settlement amounts, similarly filed claims, agreeing this was a fair settlement.  As is often typical, the settlement was based off the claimed economic damages without adding on for alleged emotional distress or other damages that potentially could be recovered at trial.  Notably, the only other settlement of a similar class vaccine case of which Defendants are aware, is *Does v. Northshore University Health System*, Case No. 1:21-cv-5683 (N.D. Ill. 2022).  In *Northshore*, the class members had been terminated and the court approved a class settlement even though the settlement payments would not fully cover lost

---

[7] Defendants recognize that there may be some class members who claim to have been out longer than the typical suspension period.  Due to the high demand for employees during this period, it is reasonable to conclude that most individuals were able to find other employment during this period.  Indeed, many employees that Defendants tried to recall did not return because they found other employment.  Regardless, to the extent any individual believed their circumstances were different or that they could obtain a better result, they had the option to opt out of the class and settlement agreement.

wages (let alone emotional distress).  Indeed, each class member, regardless of position or rate of pay, were slated to receive $24,225.  Considering the substantial risk of losing by motion, at trial or on appeal and receiving nothing, and the significant delay before litigation would end, the class has secured meaningful relief by virtue of this settlement.  Thus, this factor strongly favors approval of the settlement.

### C.     There was No Fraud or Collusion

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Dover Glen Condo. Ass'n*, 2022 U.S. Dist. LEXIS 215745, at *7 ("[C]ourts presume the absence of fraud or collusion in class settlements unless there is evidence to the contrary. … Here, there is no evidence to the contrary."), citing *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411,  at *19 (E.D. Mich. Oct. 18, 2010), citing *IUE-CWA v. GMC*, 238 F.R.D. at 598 ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."); *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008) ("Courts presume the absence of fraud of collusion in class action settlements unless there is evidence to the contrary."); *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *3 (W.D. Tenn. Aug. 2, 2016); *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered").  *See also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.").

Courts      customarily    demand     evidence     of     improper     incentives     for the class representatives or class counsel—such as a promise of excessive attorney fees in return for     a     low-cost,     expedited settlement—before     abandoning     the     presumption     that

the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands. *UAW*, 497 F.3d at 628. And where settlement discussions occur with the assistance of a mediator (or here, the Magistrate Judge), this factor favors approval. *Thomsen v. Morley Co., Inc.*, No. 1:22-cv-10271, 2022 U.S. Dist. LEXIS 201703, at **14-15 (E.D. Mich., Nov. 4, 2022) ("No evidence of fraud or collusion exists here); *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 U.S. Dist. LEXIS 111711, at **6-7 (S.D. Ohio, Oct. 23, 2008) ("The participation of an independent mediator in the settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."). Here, the settlement arose out of the mandatory settlement conference before Magistrate Berens. The settlement lacks any element of collusiveness such as excessive (or any) incentive payments, or excessive attorney fees. And while Defendants have agreed not to contest a fee award of up to 33.33%, the settlement agreement is not contingent on the award of any attorney fees. (ECF No. 60-1, Art. V, PageID 484) The attorney fee provision permits, but does not require, the Court to award up to one-third of the common fund of the settlement in attorney fees. Any fees awarded to counsel are subject to Court approval.[8] (*See* Settlement Agreement, ECF 60-1) There is no "clear sailing" provision or collusion to obtain higher fees for Plaintiffs' counsel. Ultimately, the Court can set whatever fee it determines is appropriate. There is simply no evidence of fraud or collusion and, thus, the settlement is not one to be trifled with. *Graham v. Peltz*, 44 F.4th 527, 536 (6th Cir. 2022).

---

[8] Common fund fee awards of 20-30% are common in class actions. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012); *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 U.S. Dist. LEXIS 153786, at *13 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

Similarly, the mere fact that there were other cases proceeding at the same time, does not throw into question the legitimacy of this settlement.  Just because a deal could be reached in this case, does not mean a reverse auction or any improper conduct occurred.  *Negrete v. Allianz Life Ins. Co.,* 523 F.3d 1091, 1100-1101 (9th Cir. 2008) ("[I]f Negrete's argument were accepted, the 'reverse auction argument would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction.'") (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)).  Individuals who believe they could get a better deal or who think their claims are worth more had the ability to opt out.  Indeed, one of the plaintiffs in the *Halczenko* case was actively encouraging individuals to opt out. (ECF 105-1)

Finally, there is no impropriety in including in a settlement a description of claims broader than those that have been specifically pleaded.  *Berardinelli v. General Am. Life Ins. Co*., 357 F.3d 800, 805 (8th Cir. 2004).  *See also Doe v. Déjà Vu Consulting, Inc*., 925 F.3d at 900 ("This court has held that 'the question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a "factual predicate" with the claims pled in the complaint.'").  There is simply no evidence of fraud or collusion in this case and, thus, the settlement should not be disturbed.

### D.    The Complexity, Expense, and Likely Duration of the Litigation Favor Approval.

In evaluating a proposed settlement, the Court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal.  *In re Regions*, 2016 WL 8290089, at *4 (*citing UAW*, 497 F.3d at 631; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)).

First, "most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1013.  This case is no exception as it involves novel questions about Plaintiffs' religious beliefs, and whether those beliefs were sincerely held and conflicted with the vaccine requirement.  Extensive discovery on each individual's beliefs to determine whether they even could qualify as a class member, would be required in the absence of the settlement.  In addition, with respect to undue hardship, Plaintiffs would likely need to expend significant resources on experts and expert discovery to counter the statements and conclusions of CMS with respect to the importance of having healthcare workers vaccinated.  Because each position may require analysis as to whether there is an undue hardship, discovery, motions, and trial would be extensive.  Class certification in a case like this would also be challenging and likely result in protracted disputes, discovery issues and legal challenges. Moreover, Defendants already had a pending Motion to Dismiss.  Even if Plaintiffs could survive that motion, they would subsequently face other dispositive motions including a motion for summary judgment and opposition to any class certification.  In addition to the many individual issues concerning religious beliefs and undue hardship, even a successful trial would result in extensive fact intensive review of mitigation and damages for each class member, resulting in further delay and expense.  And due to the novel nature of the issues raised, and the early stages of the new religious accommodation standard, it is likely that any decision would be subject to appeal, possibly even to the Supreme Court.

Given the nature of these claims, litigating this case through trial would be complex, costly, and long.  By reaching a favorable settlement before dispositive motions or trial, the parties avoid significant expense and delay, and instead ensure recovery for Plaintiffs and the class and allow everyone to largely put this matter behind them.  Thus, this factor likewise favors approval.

**E.**   **Amount of Discovery Engaged in by the Parties.**

The relevant inquiry over this factor is whether the plaintiff has obtained an adequate understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *Dover Glen,* 2022 U.S. Dist. LEXIS 215745, *7-8, *citing In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1015. "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions." *Scheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *19 n.3 (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

The parties had sufficient discovery to evaluate the merits of their claims.  The underlying facts are largely undisputed: there was a global pandemic.  The President of the United States, OSHA, CDC and CMS recommended that employees be vaccinated and discussed the significant risk in the absence of vaccination.  Plaintiffs and many others across the country opposed vaccines. Defendants, like many other employers, particularly healthcare employers, instituted a vaccine policy.  The policy required vaccination and provided that employees who were not vaccinated and had not received a religious or medical exemption would be removed from the workplace. Most individuals who were removed, but had requested an accommodation, were recalled to work somewhere between 24 hours and roughly 6 weeks after the suspension.  The primary issues in the case are whether Plaintiffs can establish they had sincerely held religious beliefs that conflicted with the vaccine requirement (which Plaintiffs have the relevant information to assess) and whether allowing Plaintiffs to work unvaccinated posed an undue hardship on Defendants (the facts of which are largely undisputed, the parties just have different views as to whether it qualifies as an undue hardship).  Plaintiffs are fully aware of their accommodation requests, their job duties and the denial of the accommodations.  Plaintiffs, who are connected through social media and

otherwise, to other class members, were generally aware of the period of time most were off work. Plaintiffs were also well aware of Defendants' position on both the merits and class certification. They had already faced a Motion to Dismiss, which was pending at the time settlement discussion occurred.  As such, Defendants believe Plaintiffs had sufficient information to evaluate their position relative to Defendants' defenses and to decide on the reasonableness of the settlement. Thus, this factor favors final approval.

### F.    The Opinions of Class Counsel and Class Representatives

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *In re Regions*, 2016 WL 8290089, at *6 (*citing Thacker*, 695 F. Supp. 2d at 532-33)); *see also Vukovich*, 720 F.2d 909 at 922–23 ("[T]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs). Class Counsel and the Class Representatives strongly support this settlement, and their recommendation is entitled to deference. *See In re Regions*, 2016 WL 8290089, at *6.  (ECF 60, Joint Mot.  To Approve Settlement, PageIDs 463-464).

Similarly, Defendants' counsel, who are experienced in litigation and resolution of class actions, had sufficient information to evaluate the strength of Plaintiffs' claims and believes the settlement is fair and reasonable for the class, and the Defendants.

Thus, this factor favors approval of the settlement.

### G.    The Reaction of Absent Class Members

The settlement is fair to absent class members.  The interests of absent class members are served by the protections of Rule 23(e).  Under Rule 23(e), a class action case can only be settled "with the court's approval."  Class members who are bound by the settlement proposal are entitled to "reasonable" notice.  The Court must conduct a hearing and any class member may object.  The

Court must make an affirmative determination that the settlement is "fair, reasonable, and adequate."

All of the requirements of Rule 23 are satisfied here.  All potential class members were sent a notice packet, including a plain language explanation of the settlement, claim and exclusion forms and a website with additional details including the full and complete copy of the settlement agreement.  (Exhibit B, Claims Administrator Decl., ¶¶ 8-18)  The notice was approved by this Court as the best notice practicable under the circumstances.  (ECF 63)  Consistent with the Sixth Circuit's requirements, the class notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections."  *UAW v. GMC*, 497 F.3d at 629.  Notice was distributed to 4,642 potential class members.

The reaction to this settlement has been strong.  Only 6% of the potential class members have opted out of the settlement.  Notably, 87 of the 281 of the opt-outs (about 31% of the opt-outs) are Plaintiffs in the *Halczenko* action in Indiana.  Excluding the *Halczenko* opt-outs, only 4.2% of the potential class members have opted out of the settlement.  And other than the eight individuals that Halczenko's attorney has filed an objection through, only one other individual has filed an objection.[9]  Meanwhile, 2,703 (58%) have timely filed a claim.[10]

---

[9] Defendants will separately respond to the objections in accordance with the timeline set forth in the Court's preliminary approval order.

[10] Notably, the 4,642 individuals who received notice were ***potential*** Class Members. Notice was provided to all individuals who had been denied a religious accommodation and were not compliant with the vaccine requirement by November 12, 2021.  (Exhibit A, Pratt Decl. ¶ 7) Not all persons who received notice are Class Members.  Some individuals may have requested an exemption but are unable to certify that they actually have a sincerely held religious belief that conflicted with the vaccine requirement.  Others may have left employment for other reasons or immediately found other employment.  Others may have been in jurisdictions where individuals either were never suspended or were recalled before the individual lost any pay.  That 58% of the potential class members affirmatively made a claim strongly favors settlement.

The "small percentage of class members objecting to the Settlement supports the Court's approval of it." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 300 (E.D.N.Y. 2015) ("Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement."); *In re Sinus Buster Prods. Consumer Litig.,* No. 12–CV–2429 (ADS)(AKT), 2014 U.S. Dist. LEXIS 158415, at *9, *20-21 (E.D.N.Y. Nov. 10, 2014); *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 118 (2d Cir.2005) ("But here, the absence of substantial opposition is indicative of class approval"); *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 239 (E.D.N.Y.2010); *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C.1990) (alteration in original) (quoting 2 H. Newberg, Newberg on Class Actions § 11.47, at 463 (2d ed.) ("[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D.Mich.2003) ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'")).[11]  Thus, this factor favors settlement.

## H.    The Public Interest

The law favors the settlement of class action litigation.  *See UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions").  This is particularly true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost,

---

[11] Courts have approved settlements with far higher objection and opt-out rates than present here.  *See e.g., In re Oil Spill by the Oil Rig "Deepwater Horizon.* 910 F. Supp. 2d 891, 937 (E.D. La. 2012); *Reed v General Motors Corp.,* 703  F.2d 170, 174-175 (5th Cir.1983) (objections by 40% of class); *Huguley v. Gen. Motors Corp.*, No. 89-2172, 1991 U.S. App. LEXIS 2993, *9 (6th Cir. Feb. 22, 1991) (table) (per curiam) (15% of the class); *Grant v. Bethlehem Steel Corp*., 823 F.2d 20, 23 (2d Cir.1987) (36% of the class); *EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 891 (7th Cir.1985) (15% of the class); *Bryan v. Pittsburgh Plate Glass Co*., 494 F.2d 799, 803 (3d Cir.1974) (20% of the class).

and rigors of prolonged litigation.  Class action suits are "notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  Thus, the public's interest in judicial economy and amicable dispute resolution favors settlement on the terms voluntarily agreed to by the Parties.  Thus, this factor also favors approval.

In this case, all factors the Court is to consider in determining whether a settlement is "fair and reasonable" favor approval of the settlement.

## IV.   CONCLUSION

The settlement should be approved.

Respectfully Submitted,
**JACKSON LEWIS P.C.**

/s/ Allan S. Rubin
Allan S. Rubin (P44420)
Elyse K. Culberson (P82132)
2000 Town Center, Ste. 1650
Southfield, MI 48075
(248) 936-1900
Allan.rubin@jacksonlewis.com
Elyse.culberson@jacksonlewis.com

Patricia Pryor
201 E. Fifth Street, 26th Floor
Cincinnati, OH 45202
(513) 898-0050
Patricia.pryor@jacksonlewis.com

Dated:  September 21, 2023          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of September, he did file this document using the CM/ECF system which will send notice of its filing to all counsel of record.

/s/ Allan S. Rubin
Allan S. Rubin (P44420)

4886-8128-1663, v. 7