# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KAREN ALBRIGHT, et al,
on behalf of themselves and others
similarly situated,

      Case No. 1-22-cv-00638-JMB-SJB

          Plaintiffs,

      Hon. Jane M. Beckering

v.

      **CLASS ACTION**

ASCENSION MICHIGAN, et al,

          Defendants.

---

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| Brendan J. Childress (P85638) | JACKSON LEWIS P.C. |
| HURWITZ LAW PLLC | 2000 Town Center, Ste. 1650 |
| *Attorneys for Plaintiffs* | Southfield, MI 48075 |
| 340 Beakes St., Ste. 125 | (248) 936-1900 |
| Ann Arbor, MI  48104 | Maurice.jenkins@jacksonlewis.com |
| (844) 487-9489 | Allan.rubn@jacksonlewis.com |
| Noah@hurwitzlaw.com | Elyse.culberson@jacksonlewis.com |
| Grant@hurwitzlaw.com | Attorneys for Defendants |
| Kara@hurwitzlaw.com | |
| Brendan@hurwitzlaw.com | Patricia Pryor |
| | JACKSON LEWIS P.C. |
| James A. Thomas (P80931) | 201 E. Fifth Street, 26th Floor |
| JIMMY THOMAS LAW | Cincinnati, OH 45202 |
| Attorneys for Plaintiffs | (513) 898-0050 |
| 1925 Breton Rd. SE, Ste. 250 | Patricia.pryor@jacksonlewis.com |
| Grand Rapids, MI 49506 | |
| (616) 747-1188 | |
| jimmy@jimmythomaslaw.com | |

---

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND LITIGATION EXPENSES

PLEASE TAKE NOTICE that on October 5, 2023 at 11 a.m., or as soon thereafter as

counsel may be heard, Plaintiffs will move before the Honorable Jane M. Beckering, United States

District Court for the Western District of Michigan, at the United States Courthouse, 601 Federal Building, Grand Rapids, MI, for an order granting final approval of this class action settlement, attorneys' fees, and litigation expenses.

PLEASE TAKE FURTHER NOTICE that in support of this motion, Plaintiffs rely on the memorandum of law incorporated below, the declarations of Noah S. Hurwitz (**Ex. 1**), the 100 declarations of putative class members (**Ex. 2**), the declaration of Claims Administrator (**Ex. 6**), and further arguments provided at the hearing on this motion.  Moreover, in support of their attorneys' fees request, Plaintiffs rely in part on the attached information invoice (**Ex. 3**).  A proposed Order is also being submitted herewith (**Ex. 4**.)

PLEASE TAKE FURTHER NOTICE that oral argument is hereby requested on this motion.

Respectfully Submitted,

HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: September 21, 2023         noah@hurwitzlaw.com

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KAREN ALBRIGHT, et al,
on behalf of themselves and others
similarly situated,                                   Case No. 1-22-cv-00638-JMB-SJB

           Plaintiffs,                                Hon. Jane M. Beckering

v.                                                    **CLASS ACTION**

ASCENSION MICHIGAN, et al,

           Defendants.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Maurice G. Jenkins (P33083) |
| Grant M. Vlahopoulos (P85633) | Allan S. Rubin (P44420) |
| Kara F. Krause (P85487) | Elyse K. Culberson (P82132) |
| Brendan J. Childress (P85638) | JACKSON LEWIS P.C. |
| HURWITZ LAW PLLC | 2000 Town Center, Ste. 1650 |
| *Attorneys for Plaintiffs* | Southfield, MI 48075 |
| 340 Beakes St., Ste. 125 | (248) 936-1900 |
| Ann Arbor, MI  48104 | Maurice.jenkins@jacksonlewis.com |
| (844) 487-9489 | Allan.rubn@jacksonlewis.com |
| Noah@hurwitzlaw.com | Elyse.culberson@jacksonlewis.com |
| Grant@hurwitzlaw.com | Attorneys for Defendants |
| Kara@hurwitzlaw.com | |
| Brendan@hurwitzlaw.com | Patricia Pryor |
| | JACKSON LEWIS P.C. |
| James A. Thomas (P80931) | 201 E. Fifth Street, 26th Floor |
| JIMMY THOMAS LAW | Cincinnati, OH 45202 |
| Attorneys for Plaintiffs | (513) 898-0050 |
| 1925 Breton Rd. SE, Ste. 250 | Patricia.pryor@jacksonlewis.com |
| Grand Rapids, MI 49506 | |
| (616) 747-1188 | |
| jimmy@jimmythomaslaw.com | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND LITIGATION EXPENSES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

INDEX OF EXHIBITS ......................................................................................... v

CONCISE STATEMENT OF ISSUES PRESENTED .................................................. vi

MEMORANDUM OF LAW .................................................................................. 1

    I.      THE CLASS WARRANTS FINAL CERTIFICATION APPROVAL. ................. 1

    II.    THE AGREEMENT WARRANTS FINAL SETTLEMENT APPROVAL. ......... 2

        A.    The Rule 23(e)(2) Factors Weigh in Favor of Approving the Agreement.  3

            1.    Class Counsel Adequately Represents the Class and the Agreement Provides Adequate Relief. .............................................. 3

            2.    The Agreement was Contentiously Negotiated at Arms-Length. ... 6

            3.    The Agreement Treats Class Members Equitably Relative to Each Other. ....................................................................... 6

        B.    The Sixth Circuit Factors Weigh in Favor of Approving the Agreement... 6

            1.    There was no Fraud or Collusion Between Counsel..................... 6

            2.    Litigation Through Trial Would Be Onerous. ............................. 7

            3.    The Parties Engaged in Some Discovery...................................... 8

             4.    Plaintiffs Would Be Prejudiced if the Case Proceeded.................. 9

            5.    Class Counsel and Class Representatives Support the Settlement. .............................................................................. 10

            6.    Absent Class Members Support The Agreement and Therefore Plaintiffs Adequately Support the Class. ..................................... 11

            7.    The Agreement Aligns with Public Interest................................. 11

    III.   ATTORNEYS' FEES AND EXPENSES........................................................... 12

        A.    The Proposed Attorney's Fees and Costs are Reasonable. ...................... 12

        B.    The Proposed Attorney's Fees and Costs Compare Favorably with Other Matters in the Sixth Circuit....................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................ 13

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) .................................. 12

*Does 1-6 v. Mills*, 16 F.4th 20 (1st Cir. 2021) ............................................................ 5

*Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ................................................................................ 18, 19

*Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir.1992) ............................ 6

*Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992) ............................. 3

*Hainey v. Parrot*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ........................................... 18

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11-14275, 2013 WL 692856 (E.D. Mich. Feb 26, 2013) ..................................................................................................... 2

*Hebrew v. Texas Dep't of Crim. Just.*, No. 22-20517, 2023 WL 5989580 (5th Cir. Sept. 15, 2023) ............................................................................................................... 5

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) .................... 11, 13

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ....... 12

*In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089 (W.D. Tenn. Aug 2, 2016) .......................................................................... 7, 10

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) ...................................................................................................................... 7

*In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ...................... 8

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ....................................................................... passim

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) .................. 6

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) ................ 14, 16, 17

*Ramey v. Cincinati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ............................ 14

*Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993) ....................... 13

*Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ........... 7

*Swigert v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014).... 19

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521 (E.D. Ky. 2010) .............. 7

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ........................................ 4

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ................................................. 3, 10

**Rules**

Fed. R. Civ. P. 23(e) ................................................................................................. 2

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 3

Fed. R. Civ. P. 23(h) ....................................................................................................... 13

## <u>INDEX OF EXHIBITS</u>

1.    Declaration of Noah S. Hurwitz

2.    Declarations of 100 Putative Class Members

3.    Information Invoice

4.    Proposed Order

5.    Declaration of Class Administrator

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.      Whether the Settlement Class should be certified under Federal Rule of Civil Procedure 23(a) and (b) where this Court has conditionally certified the Class for settlement purposes and since then an overwhelming majority of eligible putative class members opted into the class and failure to certify the class would likely prevent class members who have not submitted a charge of discrimination with the Equal Employment Opportunity Commission from having any recourse for their claims.

Plaintiffs Answer: "Yes"

II.    Whether this Court should grant final approval to the Settlement Agreement after finding that the Agreement is fair, reasonable, and adequate because the Agreement delivers meaningful monetary damages to the Settlement Class that match the economic damages sustained by Class Members.

Plaintiffs Answer: "Yes"

## MEMORANDUM OF LAW

I.      **THE CLASS WARRANTS FINAL CERTIFICATION APPROVAL.**

This Court's Order Granting Preliminary Approval to Class Action Settlement certified a class, for settlement purposes, of:

> All Ascension Associates for whom all of the following apply: (a) the Associate applied for a religious exemption to the COVID-19 Vaccination Policy and has a sincerely held religious belief that conflicted with the COVID-19 Vaccination Policy; and (b) the Associate was denied the requested religious exemption, and (c) the Associate either (i) was suspended or otherwise removed from employment by Ascension in November 2021 or (ii) claims they were forced to leave their employment with Ascension before February 28, 2022, after and as a result of their denied religious exemption to the COVID 19-Vaccination Policy.  ECF No. 63, PageID.576.

The Order also expressly noted that "[e]xcluded from this Class are all persons who elicit to exclude themselves from the Class by filing a timely Exclusion Form with the Claims Administrator or any person who does not meet the class definition above."  ECF No. 63, PageID.576.  This Court's preliminary approval order certified the Settlement Class and appointed Class Counsel and the following Plaintiffs as Class Representatives: Lynn Morrison, Laurie O'Meara, Jennifer Seals, and Dr. Thomas Howard.  ECF No. 63, PageID.577.  Moreover, this Court's preliminary approval order properly analyzed the propriety of certification under Rule 23(a) and 23(b).  ECF No. 63, PageID.575.  This Court was correct to conditionally certify the Class for settlement purposes pursuant to Rules 23(a) and (b), and nothing has changed to alter the propriety of this Court's certification.   In fact, at the conclusion of the Notice Period, an overwhelming majority of the eligible putative class members opted into the settlement, less than 7% of putative class members excluded themselves from the settlement, and only nine putative class members objected to the settlement (**Ex. 1**, Declaration of Noah S. Hurwitz at ¶¶17-29),

thereby demonstrating overwhelming support for the settlement by eligible individuals, *i.e.*, those current and former employees of Defendants who were denied religious accommodation and at least temporarily relieved from their work duties.  For the reasons explained below, this Court should now grant final certification of the Settlement Class.

## II.    THE AGREEMENT WARRANTS FINAL SETTLEMENT APPROVAL.

"The Federal Rules of Civil Procedure require court approval of settlements in class actions." *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11-14275, 2013 WL 692856, at *1 (E.D. Mich. Feb 26, 2013) (quoting Fed. R. Civ. P. 23(e)).  Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Rule 23(e) further provides "that a settlement that would bind class members may be approved 'only after a hearing on and finding that is fair, reasonable, and adequate.'"  *Halliday*, 2013 WL 692856, at *1 (quoting Fed. R. Civ. P. 23(e)).  Courts within the Sixth Circuit acknowledge the strong "federal policy favoring settlement of class actions."  *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007).

"Rule 23(e)(2) states that a settlement that would bind class members may be approved 'only after a hearing and on finding that it is fair, reasonable, and adequate.'"  *Halliday*, 2013 WL 692856, at *1.  The Rule 23(e) factors are: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of the proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, and finally whether there is any agreement

required to be identified under Rule 23(e)(3) and; (D) whether the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

In addition to the Rule 23(e)(2) factors, courts within the Sixth Circuit weigh these additional factors when determining whether to issue final approval of a settlement agreement: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d 615 at 631; *see also Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).  Here, as more fully described below, each and every factor under both Rule 23 and the additional Sixth Circuit factors affirms the fairness, reasonableness, and adequacy of the Settlement Agreement (hereafter the "Agreement") and weighs in favor of final approval.

A.    **The Rule 23(e)(2) Factors Weigh in Favor of Approving the Agreement.**

1.    **Class Counsel Adequately Represents the Class and the Agreement Provides Adequate Relief.**

Mr. Hurwitz, owner of Hurwitz Law PLLC, has vast experience in the employment law realm.  Indeed, prior to managing Hurwitz Law PLLC, which operates exclusively in the employment law space, Mr. Hurwitz was a member of the Labor and Employment Group at Dykema Gossett PLLC and Senior Counsel for Employment Law at a Fortune 500 company.  **Ex. 1** at ¶ 2.  Currently, Mr. Hurwitz oversees a voluminous caseload of at least 250 religious accommodation denial lawsuits.  **Ex. 1** at ¶ 4.  Here, Hurwitz Law PLLC and Jimmy Thomas Law combined resources to adequately serve the needs of over 400 putative class members and named Plaintiffs in Michigan.  **Ex. 1** at ¶ 5.  Here, Hurwitz Law PLLC and Jimmy Thomas Law proved their worth by securing for putative class members a nationwide settlement to recover an amount

equal to the compensation lost during the suspensions at issue in the face of Defendants' argument that the suspensions were warranted based on unvaccinated putative class members posing an "undue hardship" on the business, which at the time of the filing of this lawsuit needed only to be a "*de minimis* undue hardship" pursuant to *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 66, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977).  Indeed, Plaintiffs' Third Amended Complaint alleges that "Plaintiffs and Class Members were gradually recalled to work beginning approximately five (5) weeks later due to 'legal challenges' and 'staffing challenges.'"  ECF No. 65, PageID.602.  Put simply, Plaintiffs and Class Members were suspended for five weeks on average, and therefore missed out on five weeks of pay.  The Agreement allows those who submit a valid claim to receive up to five weeks of pay for the time the Class Member was suspended.  *See* ECF No. 60-1, PageID.502-03.  By achieving a settlement that would compensate thousands of putative class members for the entirety of the five weeks (*i.e.*, full economic damages) during which they were suspended by Defendants after being denied religious accommodation requests, it is indisputable that Class Counsel more than adequately represented the class and its interests.   Moreover, Class Counsel insured relief for hundreds (if not thousands) of individuals who would otherwise be left without recourse because they did not timely file charges of discrimination with the Equal Employment Opportunity Commission against Defendants, thereby failing to timely exhaust the administrative remedy that is necessary to prosecute a claim for failure to accommodate a religious belief under Title VII of the Civil Rights Act.  **Ex. 2**, Declarations of 100 Putative Class Members. 100 Class Members, on very short notice, attest that this Agreement is likely their only recourse for a recovery against Defendants and that they support the relief requested in this Motion.

Additionally, the minimal number of opt-outs and objections demonstrate the Settlement's adequacy.  Of the estimated 3,000 eligible putative class members, the Settlement Administrator

has indicated that 2,703 putative class members opted into the settlement, which is an astoundingly supportive 90.1% of estimated class members.  (**Ex. 5**, Declaration of Claims Administrator).  And as of September 19, 2023, only nine members have objected to the settlement, and eight of those objected at the behest of Kroger, Gardis, & Regas LLP, an Indiana Law Firm that solicited putative class members.  *See* Plaintiffs' Response in Opposition to Dr. Paul Halczenko's Motion to Intervene as Plaintiff [ECF No. 71]; Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Motion to Strike previously Corrected False Allegations in the Plaintiffs' Response in Opposition to Proposed Intervenor Paul Halczenko's Emergency Motion for Stay Pending Appeal [ECF No. 105].  Finally, of the 4,576 eligible putative class members, less than 7% excluded themselves from the Agreement.  **Ex. 1** at ¶ 29.  Such strong support from putative class members speaks to the adequacy of the Agreement.

And as this Court is aware, the prerogative of an employer to require that employees receive the COVID-19 vaccine and deny religious accommodation as an "undue hardship" is being hotly contested in this Circuit and abroad.  Courts have held that it would impose an undue hardship on hospital employers to employee unvaccinated employees.  See *Does 1-6 v. Mills*, 16 F.4th 20, 35-36 (1st Cir. 2021) ("hospitals need not provide [a COVID-19 **vaccination**] exemption . . . because doing so would cause them to suffer undue hardship."  And yet just last week the Fifth Circuit in *Hebrew v. Texas Dep't of Crim. Just.*, No. 22-20517, 2023 WL 5989580, at *6 (5th Cir. Sept. 15, 2023) opined that the United States Supreme Court's "decision in *Groff* enables Americans of all faiths to earn a living without checking their religious beliefs and practices at the door," when it reversed a lower court's religious accommodation claim based on the employer's claim of an "undue hardship."  Meaning, there is not clear authority to either bolster Plaintiffs' claims or support Defendants' defenses, which justifies the kind of compromise achieved by virtue of this

settlement in which Class Members are receiving economic damages but foregoing the battle for other compensatory damages.

### 2.    The Agreement was Contentiously Negotiated at Arms-Length.

Here, as this Court understands because of prior briefing, the Agreement was contentiously negotiated at arms-length.  As Defendant's counsel can attest, Hurwitz Law engaged with Ascension's counsel in a settlement conference before the Honorable Sally J. Berens that ended in an impasse.  ECF No. 71-2, PageID.818.  Indeed, the parties only agreed to the terms of the Agreement when Ascension later *agreed to the final settlement offer that Hurwitz Law PLLC presented at the settlement conference*.  **Ex. 1** at ¶ 11.

### 3.    The Agreement Treats Class Members Equitably Relative to Each Other.

The Agreement treats all class members equally because each class member who opts-in to the Agreement will receive up to five weeks pay, less attorney fees, depending on the duration of each class members' individual suspension.  *See* ECF No. 60-1, PageID.503-504.  No one category of employee is treated any better under the Agreement than any other category of employee.  The only distinct factor in determining each individual class member's settlement figure is the average salary of the class member's position within the class member's state of residence.  *See* ECF No. 60-1, PageID.502-503.

### B.    The Sixth Circuit Factors Weigh in Favor of Approving the Agreement.

### 1.    There was no Fraud or Collusion Between Counsel.

"Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *see also Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with."); *In re Se.*

*Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) ("The Court must also make sure that any settlement is the product of arm's length negotiations as opposed to collusive bargaining."); *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). The question of "collusion" has been raised, but it is an absurd theory. Not only because the parties participated in a contentious settlement conference before the Honorable Sally J. Berens that ended in an impasse (**Ex. 1** at ¶ 11) but because Hurwitz Law PLLC has seven other active litigations against Jackson Lewis P.C. involving religious accommodation claims that are embroiled in litigation and not near a resolution (*e.g.*, *Brown, et al v. MGM Grand Casino*, Case No. 22-cv-12978; *Bass v. T-Mobile USA, Inc.*, Case No. 22-cv-11975; *Allen v. Henry Ford Health System*, Case No. 22-cv-10705; *Lucky v. Landmark Medical of Michigan, P.C.*, Case No. 22-cv-11827; *Johnson v. American Society for Prevention of Cruelty to Animals*, Case No. 23-cv-10018; *Ramirez v. Walker Miller Energy Services*, Case No. 23-cv-11405; and *Flueck v. T-Mobile USA Inc.*, Case No. 23-cv-486). When Defendants eventually accepted the final settlement offered by Hurwitz Law PLLC at the settlement conference, it was without any additional settlement communications between the parties. **Ex. 1** at ¶ 11.

## 2. Litigation Through Trial Would Be Onerous.

In evaluating a proposed settlement, the Court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal. *In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 07-2784, 2016 WL 8290089, at *4 (W.D. Tenn. Aug 2, 2016) (*citing Int'l Union*, 497 F.3d at 631; *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)). Most class actions "are inherently complex

and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics Pacing Sys*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no different. Defendants asserted numerous defenses in response to Plaintiffs' Complaints. *See, e.g.,* ECF No. 26. Moreover, Defendant initially filed a Motion to Dismiss pursuant to Rule 12(b)(6) and/ or Fed R. Civ. P. 12(c) arguing that Plaintiff's Second Amended Complaint should be dismissed because "Plaintiffs fail to state a legally cognizable claim." ECF No. 38, PageID.287. Plaintiffs feel strongly in their claims and are confident that they can defeat Defendants' Motion to Dismiss. Nevertheless, the parties would then need to engage in discovery with a myriad of legal obstacles due to (a) the new "undue hardship" standard; (b) the fact that Defendants provide healthcare services; (c) having to meet class action requirements of commonality and typicality across state lines; and (d) having to satisfy the procedural prerequisites of a Title VII claim.

The Settlement seeks to avoid the above time and expense by allowing for a prompt resolution of this action on terms that are fair, reasonable, and adequate to all Class Members. The Settlement will help Class Members (and Defendants) put this issue behind them years earlier than if the case proceeded to discovery, trial, and even possibly an appeal. Moreover, the Agreement provides certainty, whereas litigation could always result, despite Plaintiffs' best efforts, in defeat. In sum, this factor weighs in favor of final approval of the Agreement.

### 3. The Parties Engaged in Some Discovery.

The Third Factor weighed by Sixth Circuit courts is "the amount of discovery engaged in by the parties." *Int'l Union*, 497 F.3d at 631. Here, Plaintiffs issued written discovery requests to Defendants on or about December 1, 2022. However, before responses were served, the parties participated in an early settlement conference on January 13, 2023. ECF No. 34, PageID.245. After Defendants accepted the final settlement offer made by Plaintiffs' counsel at the early

settlement conference, the parties had no need for additional discovery and/or depositions.  The efforts made by counsel on both sides to be fully apprised of the factual circumstances through informal discovery allowed for sound decision-making.

### 4.    Plaintiffs Would Be Prejudiced if the Case Proceeded.

The fourth factor this Court must weigh is "the likelihood of success on the merits." *Int'l Union*, 497 F.3d at 631.    As discussed above, Defendants will likely re-file their Motion to Dismiss, absent settlement approval.  *See* ECF No. 38.  Moreover, absent settlement approval, discovery will commence and pose great uncertainty.  As previously explained in Plaintiffs' Response in Opposition to Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss Second Amended Complaint, the key event initiating this lawsuit occurred over two years ago on July 27, 2021, when Defendants initially announced their COVID-19 vaccine mandate.  *See* ECF No. 65, PageID.598.  The delay caused by the settlement discussions as well as any additional delay would be detrimental to Class Members.  For example, Plaintiffs would wish to depose several of Defendants' employees and decision-makers.  The personal knowledge of those individuals has faded with the matter being paused.

Moreover, Defendants hinted in their Motion to Stay that they will be objecting to several of Plaintiffs' discovery requests.  ECF No. 42, PageID.306.  Defendants even acknowledged in their Motion to Stay that the objections will "result in legal challenges."  ECF No. 42, PageID.306.  Should this lawsuit continue and formal discovery commence, Plaintiffs will suffer even further prejudice because Plaintiffs will need to wait for this Court to rule on ensuing motions regarding Defendants' discovery objections.  And this is all before the certification of a litigation class and the summary judgment stage.  Here, the risk to Plaintiffs of the case getting dismissed, the additional expenses involved with litigating an action on behalf of hundreds of individuals, and

further delay would prejudice Plaintiffs.  The proposed Agreement eliminates that prejudice.

Finally, Plaintiffs will be prejudiced if the case proceeded because the majority putative class members did not timely file a charge of discrimination with EEOC and therefore may not be able to prosecute a Title VII claim against Defendants if settlement is not approved.  **Ex. 1** at ¶ 27; **Ex. 2** at ¶¶ 2-3.  Indeed, 100 putative class members in a very short time frame have voluntarily submitted an affidavit explaining that they did not file a charge of discrimination.  **Ex. 2**.  And during the notice period, Plaintiffs' counsel learned that the majority of putative class members did not even know of the administrative requirement to file a charge of discrimination with the Equal Employment Opportunity Commission in order to eventually prosecute a Title VII claim.  **Ex. 1** at ¶ 26.  Meaning, denial of settlement at this stage would potentially prevent thousands of Class Members from having any recourse against Defendants.  Accordingly, there is a certainty of great  prejudice to Class Members if settlement is not approved, which favors this Court granting final approval.

### 5.    Class Counsel and Class Representatives Support the Settlement.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."  *In re Regions*, 2016 WL 8290089, at *6 (*citing Thacker*, 695 F. Supp. 2d at 532-33));  *see also Vukovich*, 720 F.2d 909 at 922–23 ("[T]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").  Here, both Class Counsel and Class Representatives support The Settlement.  **Ex. 1**; **Ex. 2** at ¶7.

Moreover, as previously stated by Defendants in the Joint Motion for Settlement, "Defendants' counsel, who are experienced in litigation and resolution of class actions, had

sufficient information to evaluate the strength of Plaintiffs' claims. Thus, all Parties and their counsel agree that Plaintiffs' and Defendants' counsel have engaged in an independent evaluation of the strengths and weaknesses of their respective claims and defenses and believe that entering into this settlement is in the best interests of Plaintiffs." ECF No. 60, PageID.462. Here, counsel for both parties, Class Representatives, and 100 Class Members from numerous states, all support this settlement. This factor therefore weighs in favor of final approval.

### 6.   Absent Class Members Support The Agreement and Therefore Plaintiffs Adequately Support the Class.

The sixth factor courts in the Sixth Circuit weigh is "the reaction of absent class members." *Int'l Union*, 497 F.3d at 631. In typical class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Agreement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). Here, to date, nine class members out of 5,708 putative class members who opted into the Agreement objected to the Agreement (and eight of those nine were solicited to do so. *See* **Ex. 1** at ¶ 16). Moreover, 2,703 of the putative class members who received notice opted into the Agreement. Because the total number of putative class members was far less than the number of mailings, in fact the vast majority of putative class members opted into the Agreement, and this factor weighs in favor of final approval.

### 7.   The Agreement Aligns with Public Interest.

The final Sixth Circuit factor for approval is "public interest." *Int'l Union*, 497 F.3d at 631. In the Sixth Circuit, "[c]ourts have held that 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.'" *Does 1-2 v. Deja Vu Servs., Inc.*,

925 F.3d 886, 899 (6th Cir. 2019) (citation omitted); *see also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources."). Here, to conserve judicial resources as well as align with strong public interest favoring class action settlement, this Court should approve the Agreement.

## III.    ATTORNEYS' FEES AND EXPENSES.

The parties' April 24, 2023 Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement stated "[u]nder the Settlement Agreement, Class Counsel will receive up to one-third of the Total Settlement Fund for Attorney Fees and Costs for all current and future services provided in this matter subject to approval or modification by the Court." ECF No. 60, PageID.455. Moreover, the Joint Motion stated "Defendants have agreed not to object to the award of the fees and costs up to the amount stated in the Settlement Agreement." ECF No. 60, PageID.455. Based on the incredible risk borne by Plaintiffs' counsel in prosecuting a Title VII class action lawsuit with over 100 named plaintiffs, involving novel legal issues, prelitigation administrative hurdles, a concurrent appellate action, and myriad other challenges, Plaintiffs request an award of one-third of the Total Settlement Fund, which has yet to be fully calculated by the Settlement Administrator, and costs for the Settlement Administrator, which currently stand at $54,171.27. The attorney's fees and costs proposed are the same agreed to by the named Plaintiffs at the outset of this litigation and abundantly reasonable within the parameters of Fed. R. Civ. P. 23(h).

### A.    <u>The Proposed Attorney's Fees and Costs are Reasonable.</u>

Fed. R. Civ. P. 23(h) allows for "reasonable attorney's fees and nontaxable costs that are

12

authorized by law or parties' agreement." Fed. R. Civ. P. 23(h).  A common fund is appropriate

when "each member of a certified class has an undisputed an mathematically ascertainable claim

to part of a lumpsum judgment recovered on his behalf." *Boeing Co. v. Van Gemert*, 444 U.S.

472, 478-79 (1980) ("[T]his Court has recognized consistently that a litigant or lawyer who

recovers a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole.").  Courts in the Sixth Circuit require only that

"awards of attorney's fees by federal courts in common fund cases be reasonable under the

circumstances."). *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993).

To determine whether a requested fee is reasonable, courts often "analyze a host of factors in

deciding whether a particular percentage of the fund is a reasonable award of attorney's fees.

      Here, Plaintiffs request that this Court enter an Order granting Plaintiffs' requested one-

third of the Settlement Fund as a reasonable attorney fee.  "The Sixth Circuit has acknowledged

that the trend of the courts in different federal judicial circuits has been to employ the percentage

of the fund method to calculate attorneys' fees in common fund cases." *Rawlings*, 9 F.3d 513 at

515-16.  Courts in the Sixth Circuit weigh six factors when determining whether a percentage fee

is reasonable: "(1) the value of the benefit rendered to the plaintiff class; (2) the value of services

on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's

stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved

on both." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 537 (E.D. Mich. 2003).  These six

factors are commonly referred to as the *Ramey* factors. *See Ramey v. Cincinati Enquirer, Inc.*, 508

F.2d 1188, 1196 (6th Cir. 1974).  Here, the factors easily weigh in favor of granting Plaintiffs'

one-third fee request.

"The most important *Ramey* factor is the first-the value of the benefit to the class." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 795 (N.D. Ohio 2010).  Here, the value of the benefit rendered to the settlement class is substantial.  Indeed, members of the putative class who opted into the Agreement will receive up to five weeks' pay (the duration of their suspension). *See* ECF No. 60-1, PageID.502-03.  And the benefit rendered to those putative class members is even more substantial because had it not been for this settlement agreement, class members who did not submit an EEOC Charge of Discrimination may have been left without recourse.  **Ex. 1**; **Ex. 2**.  Furthermore, the attorney fees and expenses recuperated by Plaintiffs' counsel will come directly out of the settlement fund and therefore will result in no out-of-pocket cost to members of the class.  And finally, the limited number of objections to the Agreement, which are vastly outnumbered by the declarations of those in support of the Agreement (**Ex. 2**), further demonstrate the intrinsic value of the settlement.  *See Lonardo*, 706 F. Supp. 2d at 795 ("the paucity of objections suggest that the Settlement Class Members believe the Settlement Agreement is beneficial.").

The second *Ramey* factor is the value of services on an hourly basis.  There is no question that Hurwitz Law PLLC and Jimmy Thomas Law have expended thousands of hours on the logistical and legal aspects of this litigation.  In November 2021, Jimmy Thomas Law was inundated with desperate communications from putative class members fearing that they would be terminated due to Defendants denying them a religious accommodation to be exempt from the COVID-19 vaccine.  Ex. 1 at ¶¶6-15.  It was back in January 2021 that Hurwitz Law PLLC and Jimmy Thomas Law began the process of assisting hundreds of putative class members to file charges of discrimination with the Equal Employment Opportunity Commission.  *Id*.  Hurwitz Law PLLC and Jimmy Thomas Law eventually would represent over 200 clients, with over 90

clients receiving a right to sue letter from the Equal Employment Opportunity Commission and becoming named plaintiffs in the Third Amended Complaint (ECF No. 65) that contains 315 paragraphs.  *Id*.  Hurwitz Law PLLC hired five law clerks and four additional attorneys to meet the demands of this class action lawsuit and conferred weekly with Jimmy Thomas Law on the litigation.  *Id*.  Prior to settlement, Hurwitz Law PLLC communicated with Plaintiffs for over 12 months, researched religious accommodation law, tracked religious accommodation litigation throughout the country, presented on religious accommodation law to large groups of interested persons, propounded discovery requests, and responded to Defendants' dispositive motions.  *Id*. Then during the Notice Period, Hurwitz Law PLLC fielded questions from an estimated 1000 putative class members, responded to copious motions and legal challenges from foreign counsel attempting to derail the class action settlement, and communicated extensively with the Settlement Administrator to ensure that all putative class members had been notified of the settlement and received a fair opportunity to be included or excluded from the settlement.  *Id*.  Hurwitz Law PLLC also advocated for putative class members by requesting that notification be sent to hundreds of putative class members who were confused that the notice they received was a "scam" or duplicative of a wage and hour class action settlement that many putative class members had received earlier in the year.  With thousands of hours being expended by Plaintiffs' counsel to shepherd the named Plaintiffs through the administrative hurdles of filing EEOC charges and initiating the lawsuit, conducting discovery, engaging in settlement negotiation, navigating the notice period, appellate practice, and an attempted intervention by third parties, Hurwitz Law PLLC and Jimmy Thomas Law have provided an excellent value to all Class Members for the services rendered.

The third *Ramey* factor is whether Plaintiffs' services were undertaken on a contingency basis. "This factor accounts for the substantial risk an attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed." *Lonardo*, 706 S. Supp. 2d at 796. Here, Plaintiffs' counsel took the case on a contingent basis, thereby taking on significant risk. Moreover, as described by the Declaration of Noah S. Hurwitz (**Ex. 1**), Hurwitz Law PLLC filed EEOC charges, communicated with Plaintiffs for over twelve months, researched religious accommodation law, tracked religious accommodation cases throughout the country, and responded to several motions. Moreover, Hurwitz Law PLLC hired five law clerks and four additional attorneys to meet the demands of this case. **Ex. 1** at ¶¶ 9-10. The risk taken on by Plaintiffs' counsel was significant and prosecuting the case has been a massive undertaking for Plaintiffs' counsel from immediately after Class Members were suspended up until the present, with the docket entries in this case above 100 and having to battle appellate motions and appellate briefing deadlines concurrently with the trial court proceedings.

The fourth *Ramey* factor is society's stake in rewarding attorneys who produce such benefits. Here, Plaintiffs' counsel deserves to be rewarded because they have achieved fantastic results for the putative class. Indeed, without Defendants admitting liability, Plaintiffs have secured a settlement agreement that allows up to five weeks' pay for the period of class members' suspensions (*i.e.* full economic damages for most Class Members). And but for this litigation, the members of the putative class who did not submit EEOC charges of discrimination would likely have no recourse against Defendants. **Ex. 1; Ex. 2**. Indeed, Hurwitz Law PLLC and Jimmy Thomas Law identified alleged wrongs being committed by employers all over the Midwest in regard to vaccine mandates and have fought tirelessly to reaffirm the rights of employees to

exercise religious and medical accommodation in the workplace.  Plaintiffs' counsel does not believe that these cases are just COVID-19 cases.  Cases like this one present an opportunity to bolster rights afforded to employees under Title VII.  There is thus a benefit to society because this case other similar cases apprise employees of their statutory rights and draw attention to the employment practices of large companies like Defendants in this case.

The fifth and sixth *Ramey* factors "deal with the complexity of the litigation and expertise and performance of counsel." *Lonardo*, 706 F. Supp. 2d at 796. Here, the expertise of Plaintiffs' counsel is well-established. *See* **Ex. 1**, ¶¶2-5.  Prior to managing Hurwitz Law PLLC, which exclusively operates in the employment law space, Mr. Hurwitz was a Member of the Labor and Employment Group at Dykema Gossett PLLC and Senior Counsel for Employment Law at a Fortune 500 company. *Id*.  Based on a review of federal court dockets through Courthouse News Service, Hurwitz Law PLLC represents more employees denied religious accommodations than any other law firm in the country. *Id*.  In fact, Hurwitz Law PLLC has filed over 250 federal court actions in six federal district courts in an effort to protect employee religious accommodation requests. *Id*.  To date, Hurwitz Law PLLC and Jimmy Thomas Law combined resources to serve the needs of over 400 putative class members and named Plaintiffs in Michigan and never failed to meet any prelitigation, litigation, or appellate deadlines/requirements.  And this case was not easy.  Hurwitz Law PLLC had to hire five law clerks and four additional attorneys to meet the demands of this case, as well as coordinating the involvement of over 100 named Plaintiffs, and eventually answering a flood of inquiries regarding the settlement during the notice period. *Id*. at ¶¶9-10.  Accordingly, the *Ramey* factors all support granting the requested attorney's fees.

**B.    The Proposed Attorney's Fees and Costs Compare Favorably with Other Matters in the Sixth Circuit.**

Further, a one-third attorney fee is reasonable for class action lawsuits for courts in the

Sixth Circuit.  *See Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (awarding class counsel one-third of $130,000.000 Settlement fund).  The *Garner* court provided the following rundown in support of its 33% attorney fee award:

> Plaintiff here employs the percentage of the fund method and Class Counsel requests an award of $43,333.33 in attorneys' fees, which represents 33% of the $130,000.00 Settlement Fund . . . This requested fee is unopposed, is consistent with standard fee awards in class actions generally, and there is authority supporting the proposition that awarding proportional attorney fees of around one third of a settlement fund is not an abuse of discretion.  *See, e.g., Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("The 'majority of common fund fee awards fall between 20% and 30% of the fund.'"); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351-52 (6th Cir. 2009) (noting in *dicta* that a 30% attorney fee of $1.335 million out of a total settlement figure of $4.45 million was not facially "unreasonable"); *Hillison v. Kelly Servs., Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *9 (E.D. Mich. Jan. 23, 2017) (Michaelson, J.) (finding plaintiffs' anticipated attorneys' fee request of 33% of the settlement fund, or approximately $2.245 million, "in the ballpark of a reasonable award" for purposes of preliminary approval); *American Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 09-01162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (determining that a 30% attorney fee of $800,000 out of a total settlement figure of $2,400,000 was reasonable); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MCL No. 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (Rosen, J.) (observing that "more commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund").

*Garner*, 2020 WL 4726938, at *10.  Other courts in the Sixth Circuit agree that a one-third contingency attorney fee from the settlement fund is reasonable.  *See Hainey v. Parrot*, 617 F. Supp. 2d 668, 678 (S.D. Ohio 2007):

> Here, class counsel has submitted a brief requesting attorney's fees of one-third of the common fund, equivalent to his contingency fee agreement with the class representatives.  In *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001), Judge Spiegel observed that in common fund cases attorney's fees between

> 10% to 30% of the fund are generally considered reasonable. *Id.* at 1042; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("[A] review of similar cases reveals that a majority of common fund class action fee awards fall between twenty and thirty percent." . . . Thus, in this case, class counsel's request for 33% of the common fund . . is not unreasonable per se.

*See also Swigert v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014):

> An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See e.g.*, *Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritzer*, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime.

Here, the complexity of the class action warrants the one-third attorney fees that Plaintiffs are requesting, and the 33.33% figure is well in line with attorney fees deemed reasonable by other courts within the Sixth Circuit.

Class counsel also seeks at least $54,171.27 in litigation costs based on the September 19, 2023 Information Invoice submitted by the Settlement Administrator. **Ex. 3**, Information Invoice. As these costs were necessary to manage the logistics of sending notice to Class Members, creating the notice website, tallying opt-in numbers, and myriad other services described in the attached invoice, the expenses are reimbursable. *See Garner*, 2020 WL 4726938, at *11 (awarding costs to Plaintiffs' counsel for claims administrator cost).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses and enter Final Judgment in accordance with the attached Proposed Order. (**Ex. 4**).

Respectfully Submitted,

HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: September 21, 2023            noah@hurwitzlaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7</u>

Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, and Litigation Expenses contains 6,252 words, excluding the Caption, Table of Contents, Index of Authorities, Index of Exhibits, Concise Statement of Issues Presented, and signature blocks.  The Word processing software used to generate word count was Microsoft Word for Microsoft Office, Version 2210.

Respectfully Submitted,

HURWITZ LAW, PLLC

<u>/s/ *Noah S. Hurwitz*</u>
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: September 21, 2023          noah@hurwitzlaw.com

## **CERTIFICATE OF CONCURRENCE REQUEST**

Defendants concurred in the relief requested by Plaintiffs in this Motion.

Respectfully Submitted,

HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: September 21, 2023        noah@hurwitzlaw.com

**<u>PROOF OF SERVICE</u>**

I hereby certify that on September 21, 2023, I served or caused to be served the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the attorney(s) of record.

<em>/s/  Noah S. Hurwitz</em> (P74063)